**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**(EASTERN DIVISION)**

LEVINE HAT CO., on behalf of itself and
all others similarly situated,

            Plaintiff,

      v.

INNATE INTELLIGENCE, LLC d/b/a
INNATE WELLNESS CENTERS,
NEPUTE ENTERPRISES LLC,

JEREMY L. BRIA,
Serve:
Jeremy L. Bria
450 Mill St. Ste 102
Fontana, WI 53125

GARY ROBERT EYLER,
Serve:
Gary Robert Eyler
450 Mill St. Ste 102
Fontana, WI 53125

JLB, INC.
Serve:
Jeremy Bria
450 Mill St. Ste 102
Fontana, WI 53125

PURE FAMILY CHIROPRACTIC, LLC,
Serve:
Rob Eyler
450 Mill St. Ste 102
Fontana, WI 53125

EYLER INVESTMENTS, LLC,
Serve:
G. Robert Eyler
N3188 Williams St
Lake Geneva, WI 53147

Civil Action No. 4:16-cv-1132


<u>**JURY TRIAL DEMANDED**</u>

1

WELL ADJUSTED INVESTMENTS,
LLC,
Serve:
Jeremy Bria
450 Mill St. Ste 102
Fontana, WI 53125

BRIA INVESTMENTS, LLC,
Serve:
Jeremy Bria
450 Mill St. Ste 102
Fontana, WI 53125

PROFAX, INC., and
Serve:
Andrew Barnett
20 Max Avenue
Hicksville, NY 18801

REDMOXY COMMUNICATIONS, INC.,
Serve:
United States Corporation Agents, Inc.
2761 Allied St., 1st Fl.
Green Bay, WI 54304-5501

        Defendants.

## FIRST AMENDED CLASS ACTION COMPLAINT

COMES NOW Plaintiff Levine Hat Co., on behalf of itself and all others similarly situated, and for its First Amended Class Action Complaint, states as follows:

### PRELIMINARY STATEMENT

1.      This case challenges Defendants' practice of sending facsimile advertisements without the proper opt-out notice as required by 47 C.F.R. § 64.1200.

2.      The Federal Telephone Consumer Protection Act, 47 USC § 227 ("TCPA"), prohibits a person or entity from sending or having an agent send fax advertisements without the

proper opt-out notice, even for faxes sent by consent or pursuant to an established business relationship. The TCPA provides a private right of action and provides statutory damages of $500.00 per violation for a violation of the statue or the regulations promulgated by the FCC.

3.      Plaintiff, as well as each member of the proposed Class, was sent fax advertisements from Defendants with opt-out notices that failed to comply with the minimum requirements for opt-out notices.

4.      On behalf of itself and all others similarly situated, Plaintiff brings this case as a class action asserting claims against Defendants under the TCPA.

5.      Plaintiff seeks an award of statutory damages for each violation of the TCPA.

## JURISDICTION, VENUE AND PARTIES

6.      This Court has personal jurisdiction over Defendants because Defendants transact business within this state, have made contracts within this state, or have committed tortious acts within this state, and otherwise have sufficient minimum contacts with the State of Missouri.

7.      Plaintiff Levine Hat Co. is a Missouri corporation with its principal place of business in Missouri.

8.      Defendant Innate Intelligence, LLC d/b/a Innate Wellness Centers is a Wisconsin corporation with its principal places of business in Wisconsin, and doing business in Missouri.

9.      Defendant Nepute Enterprises LLC is a Missouri corporation with its principal place of business in Missouri.

10.     Defendant Jeremy Bria is a natural person and a citizen of Wisconsin.

11.     Defendant Gary Robert Eyler is a natural person and a citizen of Wisconsin.

12.     Defendant JLB, Inc. is a Wisconsin corporation with its principal place of business in Wisconsin.

13.     Defendant Pure Family Chiropractic, LLC is a Wisconsin corporation with its principal place of business in Wisconsin.

14.     Defendant Eyler Investments, LLC is a Wisconsin corporation with its principal place of business in Wisconsin.

15.     Defendant Well Adjusted Investments, LLC is a Wisconsin corporation with its principal place of business in Wisconsin.

16.     Defendant Bria Investments, LLC is a Wisconsin corporation with its principal place of business in Wisconsin.

17.     Defendant ProFax is a New York corporation with its principal place of business in New York, and doing business in Missouri.

18.     Defendant RedMoxy Communications is a Wisconsin corporation with its principal place of business in Wisconsin, and doing business in Missouri.

19.     This Court has federal question jurisdiction pursuant to 28 U. S. C. §1331.

20.     Venue is proper in this District under 28 U.S.C. § 1391 as Plaintiff received and Defendants sent faxes in the Eastern District of Missouri, and Plaintiff's facsimile machine is located in the Eastern District of Missouri.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

21.     Defendants sent multiple advertising facsimiles to Plaintiff and members of the proposed Class, all without an opt-out notice compliant with 47 C.F.R. § 64.1200, throughout the time period covered by the class definition.

22.     On or about July 5, 2016, Defendants sent an advertisement to Plaintiff in the County of St. Louis, Missouri, by facsimile transmission. A true and correct copy of the facsimile is attached as Exhibit A, and incorporated herein by reference.

4

23.     Defendants distributed Exhibit A, and other documents of the same form, to Plaintiff and others via facsimile transmission (collectively "Subject Faxes").

24.     Defendants approved, authorized and participated in the plan to broadcast the Subject Faxes.

25.     Defendants directed a list of recipients of the Subject Faxes to be purchased or assembled.

26.     Defendants directed or supervised employees or third parties to send the Subject Faxes.

27.     Defendants created and approved the form of the Subject Faxes.

28.     Defendants determined the number and frequency of transmissions of the Subject Faxes.

29.     Defendants sent the Subject Faxes to recipients in Missouri and throughout the United States.

30.     Defendants did not have an existing business relationship with any of the recipients of the Subject Faxes.

31.     All of the Subject Faxes failed to include an opt-out notice compliant with 47 C.F.R. § 64.1200.

32.     The Subject Faxes are a part of the work or operations to market goods or services of Defendants Innate Intelligence, LLC d/b/a Innate Wellness Centers, Nepute Enterprises LLC, Jeremy L. Bria, Gary Robert Eyler, JLB, Inc., Pure Family Chiropractic LLC, Eyler Investments, LLC, Well Adjusted Investments, LLC, Bria Investments, LLC (collectively "Advertiser Defendants"), to be performed by the Advertiser Defendants.

33.     The Subject Faxes were sent on behalf of the Advertiser Defendants.

5

34.     The Subject Faxes constitute material furnished in connection with the Advertiser Defendants' work or operations.

35.      The Subject Faxes constitute material advertising of the commercial availability of property, goods, or services.

36.     The transmissions of the Subject Faxes to Plaintiff and members of the proposed Class did not contain a notice compliant with 47 C.F.R. § 64.1200(a)(4)(iii) that informs the recipient of the ability and means to avoid future fax advertisements.

37.     The transmissions of the Subject Faxes to Plaintiff and members of the proposed Class did not contain a notice compliant with 47 C.F.R. § 64.1200(a)(4)(iii)(A) that is clear and conspicuous.

38.     The transmissions of the Subject Faxes to Plaintiff and members of the proposed Class did not contain a notice compliant with 47 C.F.R. § 64.1200(a)(4)(iii)(B) that states that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and stating that the sender's failure to comply within 30 days would be unlawful.

39.     The transmissions of the Subject Faxes to Plaintiff and members of the proposed Class did not contain a notice compliant with 47 C.F.R. § 64.1200(a)(4)(iii)(C) that sets forth the requirements listed under paragraph 47 C.F.R. § 64.1200(a)(3)(v).

40.      The transmissions of the Subject Faxes to Plaintiff and members of the proposed Class did not contain a notice compliant with 47 C.F.R. § 64.1200(a)(4)(iii)(D)(1) that includes a domestic contact telephone and facsimile machine number for the recipient to transmit an opt-out request to the sender.

41.     The transmissions of the Subject Faxes to Plaintiff and members of the proposed Class did not contain a notice that complied with the provisions of 47 U.S.C. § 227(b)(1)(C), 47 U.S.C. §§227(b)(2)(D)(ii), (iii) and (vi), and 47 C.F.R. § 64.1200(a)(4).

42.     The transmissions of the Subject Faxes to Plaintiff and members of the proposed Class were required to contain a notice that complied with the provisions of 47 U.S.C. § 227(b)(1)(C), 47 U.S.C. §§227(b)(2)(D)(ii), (iii) and (vi), and 47 C.F.R. § 64.1200(a)(4).

43.     There is no reasonable means for Plaintiff (or any other Class member) to avoid receiving unlawful faxes. Fax machines are left on and ready to receive the urgent communications their owners desire to receive.

44.     Defendants knew or should have known that the Subject Faxes were advertisements and the Subject Faxes did not display an opt-out notice compliant with 47 C.F.R. § 64.1200.

45.     The transmissions of Subject Faxes to Plaintiff and members of the proposed Class caused destruction of the property of Plaintiff and each member of the proposed Class.

46.     The transmissions of Subject Faxes to Plaintiff and members of the proposed Class interfered with the exclusive use of the property of Plaintiff and each member of the proposed Class.

47.     The transmissions of Subject Faxes to Plaintiff interfered with the business and personal communications of Plaintiff and the proposed Class.

## CLASS ALLEGATIONS

48.     Plaintiff brings Counts I-X on behalf of the following Class of persons:

All persons who (1) on or after four years prior to July 13, 2016, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendants, (3) which did not display an opt-out notice, or displayed an opt-out notice that failed to contain any of the following:

7

 a) a facsimile machine number for the recipient to transmit an opt-out request to the sender; or

 b) a statement that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines; or

 c) a statement that the sender's failure to comply within 30 days would be unlawful.

49. On information and belief, the Class includes more than forty persons and is so numerous that joinder of all members is impracticable.

50. There are numerous questions of law or fact that are common to the members of the Class, which predominate over any questions affecting only individual members, and the answers to which would drive class-wide resolution of this case, including:

 a. Whether the Subject Faxes displayed the proper opt-out notice required by 47 C.F.R. § 64.1200;

 b. Whether Defendant engaged in a pattern of sending fax advertisements;

 c. The manner and method Defendant used to compile or obtain the list of fax numbers to which it sent the Subject Faxes and other faxed advertisements;

 d. Whether Defendant violated the provisions of 47 USC § 227;

 e. Whether Plaintiff and the other Class members are entitled to statutory damages;

 f. Whether Defendant should be enjoined from faxing advertisements in the future; and

 g. Whether the Court should award trebled damages.

51. Plaintiff will fully and adequately protect the interests of all members of the Class. Plaintiff has retained counsel who are experienced in consumer and class action litigation.

52.     Plaintiff's interests are the same as those of everyone else in the Class, since Plaintiff was sent faxes with opt-out notice not in compliance with 47 C.F.R. § 64.1200. Neither Plaintiff nor Plaintiff's counsel has any interest adverse or in conflict with the absent Class members.

53.     A class action is an appropriate method for adjudicating this controversy fairly and efficiently. The interest of each individual Class member in controlling the prosecution of separate claims is small and individual actions are not economically feasible.

54.     The questions of law and fact common to the members of the Class predominate over any questions which may affect only individual members.

55.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The Class is readily definable, and prosecution as a class action will eliminate the possibility of duplicative litigation, while also providing redress for claims which otherwise would be too small to support the expense of individual litigation.

56.     Defendant has acted, as alleged herein, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## COUNT I
### TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227
### (against Innate Intelligence, LLC d/b/a Innate Wellness Centers)

57.     Plaintiff incorporates all other paragraphs as though fully set forth herein.

58.     This count is against Defendant Innate Intelligence, LLC d/b/a Innate Wellness Centers ("Innate").

59.     The TCPA, 47 U.S.C.§ 227, provides, in pertinent part:

(b)(3) Private right of action. A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:

9

(A) An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) An action to recover for actual monetary loss from such a violation, or to receive $500.00 in damages for each such violation, whichever is greater, or

(C) Both such actions.

60.     The TCPA is a strict liability statute, and the Defendants are liable to Plaintiff and the other Class members even if their actions were only negligent.

61.     Innate violated 47 U.S.C. § 227 *et seq.* by transmitting the Subject Faxes to Plaintiff and the other members of the Class by not displaying an opt-out notice compliant with 47 C.F.R. § 64.1200.

62.     Innate distributed Exhibit A, and other documents of the same form, to Plaintiff and others via facsimile transmission.

63.     Innate approved, authorized and participated in the plan to broadcast the Subject Faxes.

64.     Innate directed a list of recipients of the Subject Faxes to be purchased or assembled.

65.     Innate directed or supervised employees or third parties to send the Subject Faxes.

66.     Innate created and approved the form of the Subject Faxes.

67.     Innate determined the number and frequency of transmissions of the Subject Faxes.

68.     Innate sent the Subject Faxes to recipients in Missouri and throughout the United States.

69.     Innate did not have an existing business relationship with any of the recipients of the Subject Faxes.

70.     Innate placed the following language on Exhibit A: "To opt out from future faxes go to www.removemyfaxnumber.com and enter PIN# 17204, or call 800-321-4433. The recipient

may make a request to the sender not to send any future faxes and that failure to comply with the request within 30 days is unlawful." ("Putative Opt-out Notice").

71.     Innate created the Putative Opt-Out Notice.

72.     Innate approved the Putative Opt-Out Notice.

73.     All of the Subject Faxes failed to include an opt-out notice compliant with 47 C.F.R. § 64.1200.

74.     The Subject Faxes are a part of the work or operations to market goods or services of Innate.

75.     The Subject Faxes were sent on behalf of Innate.

76.     The Subject Faxes constitute material furnished in connection with Innate's work or operations.

77.      The Subject Faxes constitute material advertising of the commercial availability of property, goods, or services.

78.     The actions of Innate caused damages to Plaintiff and the other Class members. Receiving Defendants' junk faxes caused the recipients to lose paper and toner consumed in the printing of Defendants' faxes. Moreover, Defendants' actions interfered with Plaintiff's use of its fax machine and telephone line connected to that fax machine. Defendants' faxes cost Plaintiff time, as Plaintiff and its employees wasted their time receiving, reviewing and routing Defendants' unlawful faxes. That time otherwise would have been spent on Plaintiff's business activities. Finally, Defendants' faxes unlawfully interrupted Plaintiff's and the other Class members' privacy interests in being left alone.

79.     At all relevant times, Innate knew or should have known that the Subject Faxes were advertisements.

80.     At all relevant times, Innate knew or should have known that the Subject Faxes did not display an opt-out notice compliant with 47 C.F.R. § 64.1200.

81.     If the court finds that the Innate knowingly violated the TCPA or its associated regulations, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount otherwise available. 47 U.S.C. § 227(b)(3).

WHEREFORE, Plaintiff, Levine Hat Co., on behalf of itself and all others similarly situated, prays that this honorable Court grant the relief set forth in the prayer for relief below.

**COUNT II**
**TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227**
**(against Nepute Enterprises, LLC)**

82.     Plaintiff incorporates all other paragraphs as though fully set forth herein.

83.     This count is against Defendant Nepute Enterprises LLC ("Nepute").

84.     Nepute is directly liable under 47 U.S.C. § 227 *et seq.* because the Subject Faxes, which advertised Nepute's services and were sent on Nepute's behalf, were sent to Plaintiff and the other members of the Class without an opt-out notice compliant with 47 C.F.R. § 64.1200.

85.     Nepute is also vicariously liable under 47 U.S.C. § 227 *et seq.* because Innate, acting as Nepute's agent, caused the Subject Faxes to be sent to Plaintiff and the other members of the Class, without an opt-out notice compliant with 47 C.F.R. § 64.1200.

86.     Nepute did not have an existing business relationship with any of the recipients of the Subject Faxes.

87.     All of the Subject Faxes failed to include an opt-out notice compliant with 47 C.F.R. § 64.1200.

88.     The Subject Faxes are a part of the work or operations to market goods or services of Nepute.

89.     The Subject Faxes were sent on behalf of Nepute.

90.     The Subject Faxes constitute material furnished in connection with Nepute's work or operations.

91.      The Subject Faxes constitute material advertising of the commercial availability of property, goods, or services.

92.     The actions of Nepute caused damages to Plaintiff and the other Class members. Receiving Defendants' junk faxes caused the recipients to lose paper and toner consumed in the printing of Defendants' faxes. Moreover, Defendants' actions interfered with Plaintiff's use of its fax machine and telephone line connected to that fax machine. Defendants' faxes cost Plaintiff time, as Plaintiff and its employees wasted their time receiving, reviewing and routing Defendants' unlawful faxes. That time otherwise would have been spent on Plaintiff's business activities. Finally, Defendants' faxes unlawfully interrupted Plaintiff's and the other Class members' privacy interests in being left alone.

93.     At all relevant times, Nepute knew or should have known that the Subject Faxes were advertisements.

94.     At all relevant times, Nepute knew or should have known that the Subject Faxes did not display an opt-out notice compliant with 47 C.F.R. § 64.1200.

95.     If the court finds that the Nepute knowingly violated the TCPA or its associated regulations, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount otherwise available. 47 U.S.C. § 227(b)(3).

WHEREFORE, Plaintiff, Levine Hat Co., on behalf of itself and all others similarly situated, prays that this honorable Court grant the relief set forth in the prayer for relief below.

## COUNT III
## TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227
### (against Pure Family Chiropractic LLC)

96.     Plaintiff incorporates all other paragraphs as though fully set forth herein.

97.     This count is against Defendant Pure Family Chiropractic LLC ("Pure Family").

98.     Pure Family is directly liable under 47 U.S.C. § 227 *et seq.* because the Subject Faxes, which advertised its services and were sent on its behalf, were sent to Plaintiff and the other members of the Class without an opt-out notice compliant with 47 C.F.R. § 64.1200.

99.     Pure Family is also vicariously liable under 47 U.S.C. § 227 *et seq.* because Innate, acting as Pure Family's agent, caused the Subject Faxes to be sent to Plaintiff and the other members of the Class, without an opt-out notice compliant with 47 C.F.R. § 64.1200.

100.     The actions of Pure Family caused damages to Plaintiff and the other Class members. Receiving Defendants' junk faxes caused the recipients to lose paper and toner consumed in the printing of Defendants' faxes. Moreover, Defendants' actions interfered with Plaintiff's use of its fax machine and telephone line connected to that fax machine. Defendants' faxes cost Plaintiff time, as Plaintiff and its employees wasted their time receiving, reviewing and routing Defendants' unlawful faxes. That time otherwise would have been spent on Plaintiff's business activities. Finally, Defendants' faxes unlawfully interrupted Plaintiff's and the other Class members' privacy interests in being left alone.

101.     At all relevant times, Pure Family knew or should have known that the Subject Faxes were advertisements.

102.     At all relevant times, Pure Family knew or should have known that the Subject Faxes did not display an opt-out notice compliant with 47 C.F.R. § 64.1200.

14

103.    If the court finds that the Pure Family knowingly violated the TCPA or its associated regulations, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount otherwise available. 47 U.S.C. § 227(b)(3).

WHEREFORE, Plaintiff, Levine Hat Co., on behalf of itself and all others similarly situated, prays that this honorable Court grant the relief set forth in the prayer for relief below.

**COUNT IV**
**TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227**
**(against Jeremy L. Bria)**

104.    Plaintiff incorporates all other paragraphs as though fully set forth herein.

105.    This count is against Defendant Jeremy L. Bria ("Bria").

106.    Bria is directly liable under 47 U.S.C. § 227 *et seq.* because the Subject Faxes, which advertised his services and were sent on his behalf, were sent to Plaintiff and the other members of the Class without an opt-out notice compliant with 47 C.F.R. § 64.1200.

107.    Bria is also vicariously liable under 47 U.S.C. § 227 *et seq.* because Innate, acting as Bria's agent, caused the Subject Faxes to be sent to Plaintiff and the other members of the Class, without an opt-out notice compliant with 47 C.F.R. § 64.1200.

108.    Bria is also liable for Innate's TCPA violations because Innate was Bria's alter ego, Bria exerted complete domination over its policies and business practices, co-mingled its funds with his own, failed to follow corporate forms, stripped Innate's corporate assets, and intentionally caused Innate to be undercapitalized as a sham corporation in order to avoid liability for Innate's violations of the TCPA, as alleged herein.

109.    Bria's control over Innate was used to commit fraud or wrong, namely, the TCPA violations alleged herein, in violation of the rights of Plaintiff and the other members of the class.

15

110.   Bria distributed Exhibit A, and other documents of the same form, to Plaintiff and others via facsimile transmission.

111.   Bria did not have an existing business relationship with any of the recipients of the Subject Faxes.

112.   The actions of Bria caused damages to Plaintiff and the other Class members. Receiving Defendants' junk faxes caused the recipients to lose paper and toner consumed in the printing of Defendants' faxes. Moreover, Defendants' actions interfered with Plaintiff's use of its fax machine and telephone line connected to that fax machine. Defendants' faxes cost Plaintiff time, as Plaintiff and its employees wasted their time receiving, reviewing and routing Defendants' unlawful faxes. That time otherwise would have been spent on Plaintiff's business activities. Finally, Defendants' faxes unlawfully interrupted Plaintiff's and the other Class members' privacy interests in being left alone.

113.   At all relevant times, Bria knew or should have known that the Subject Faxes were advertisements.

114.   At all relevant times, Bria knew or should have known that the Subject Faxes did not display an opt-out notice compliant with 47 C.F.R. § 64.1200.

115.   If the court finds that the Bria knowingly violated the TCPA or its associated regulations, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount otherwise available. 47 U.S.C. § 227(b)(3).

WHEREFORE, Plaintiff, Levine Hat Co., on behalf of itself and all others similarly situated, prays that this honorable Court grant the relief set forth in the prayer for relief below.

## COUNT V
## TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227
### (against Gary Robert Eyler)

116.    Plaintiff incorporates all other paragraphs as though fully set forth herein.

117.    This count is against Defendant Gary Robert Eyler ("Eyler").

118.    Eyler is directly liable under 47 U.S.C. § 227 *et seq.* because the Subject Faxes, which advertised his services and were sent on his behalf, were sent to Plaintiff and the other members of the Class without an opt-out notice compliant with 47 C.F.R. § 64.1200.

119.    Eyler is also vicariously liable under 47 U.S.C. § 227 *et seq.* because Innate, acting as Eyler's agent, caused the Subject Faxes to be sent to Plaintiff and the other members of the Class, without an opt-out notice compliant with 47 C.F.R. § 64.1200.

120.    Eyler is also liable for Innate's TCPA violations because Innate was Eyler's alter ego, Eyler exerted complete domination over its policies and business practices, co-mingled its funds with his own, failed to follow corporate forms, stripped Innate's corporate assets, and intentionally caused Innate to be undercapitalized as a sham corporation in order to avoid liability for Innate's violations of the TCPA, as alleged herein.

121.    Eyler's control over Innate was used to commit fraud or wrong, namely, the TCPA violations alleged herein, in violation of the rights of Plaintiff and the other members of the class.

122.    Eyler distributed Exhibit A, and other documents of the same form, to Plaintiff and others via facsimile transmission.

123.    Eyler approved, authorized and participated in the plan to broadcast the Subject Faxes.

124.    Eyler directed a list of recipients of the Subject Faxes to be purchased or assembled.

125.    Eyler directed or supervised employees or third parties to send the Subject Faxes.

126.    Eyler created and approved the form of the Subject Faxes.

127.    Eyler determined the number and frequency of transmissions of the Subject Faxes.

128.    Eyler sent the Subject Faxes to recipients in Missouri and throughout the United States.

129.    Eyler did not have an existing business relationship with any of the recipients of the Subject Faxes.

130.    Eyler placed the Putative Opt-Out Notice on Exhibit A.

131.    Eyler created the Putative Opt-Out Notice.

132.    Eyler approved the Putative Opt-Out Notice.

133.    The actions of Eyler caused damages to Plaintiff and the other Class members. Receiving Defendants' junk faxes caused the recipients to lose paper and toner consumed in the printing of Defendants' faxes. Moreover, Defendants' actions interfered with Plaintiff's use of its fax machine and telephone line connected to that fax machine. Defendants' faxes cost Plaintiff time, as Plaintiff and its employees wasted their time receiving, reviewing and routing Defendants' unlawful faxes. That time otherwise would have been spent on Plaintiff's business activities. Finally, Defendants' faxes unlawfully interrupted Plaintiff's and the other Class members' privacy interests in being left alone.

134.    At all relevant times, Eyler knew or should have known that the Subject Faxes were advertisements.

135.    At all relevant times, Eyler knew or should have known that the Subject Faxes did not display an opt-out notice compliant with 47 C.F.R. § 64.1200.

136.    If the court finds that the Eyler knowingly violated the TCPA or its associated regulations, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount otherwise available. 47 U.S.C. § 227(b)(3).

WHEREFORE, Plaintiff, Levine Hat Co., on behalf of itself and all others similarly situated, prays that this honorable Court grant the relief set forth in the prayer for relief below.

**COUNT VI**
**TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227**
**(against JLB, Inc., Well Adjusted Investments, LLC, and Bria Investments, LLC)**

137.    Plaintiff incorporates all other paragraphs as though fully set forth herein.

138.    This count is against Defendants JLB, Inc., Well Adjusted Investments, LLC, and Bria Investments, LLC ("Bria Entities").

139.    The Bria Entities are liable for Defendant Jeremy L. Bria's TCPA violations, as alleged herein, because on information and belief,  each was Bria's alter ego, Bria exerted complete domination over their policies and business practices, co-mingled their funds with his own, failed to follow corporate forms for each, and Bria intentionally used the Bria Entities to attempt to shield from collection the gains from the illegal marketing schemes of Bria and Innate, and to shield from collection assets necessary to satisfy any judgment in this action.

WHEREFORE, Plaintiff, Levine Hat Co., on behalf of itself and all others similarly situated, prays that this honorable Court grant the relief set forth in the prayer for relief below.

**COUNT VII**
**TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227**
**(against Eyler Investments, LLC)**

140.    Plaintiff incorporates all other paragraphs as though fully set forth herein.

141.    This count is against Defendant Eyler Investments, LLC ("Eyler Investments").

142.    Eyler Investments is liable for Defendant Gary Robert Eyler's TCPA violations, as alleged herein, because, on information and belief, it was Eyler's alter ego, Eyler exerted complete domination over its policies and business practices, Eyler co-mingled its funds with his own, Eyler failed to follow corporate forms for it, and Eyler intentionally used Eyler Investments to attempt to shield from collection the gains from the illegal marketing schemes of Eyler and Innate, and to shield from collection assets necessary to satisfy any judgment in this action.

WHEREFORE, Plaintiff, Levine Hat Co., on behalf of itself and all others similarly situated, prays that this honorable Court grant the relief set forth in the prayer for relief below.

### COUNT VIII
### TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227
### (against ProFax, Inc.)

143.    Plaintiff incorporates all other paragraphs as though fully set forth herein.

144.    This count is against ProFax, Inc. ("ProFax").

145.    Facsimile broadcasters are liable under the TCPA for sending junk faxes, including the inclusion of opt-out notices on unsolicited advertisements, if they demonstrate "a high degree of involvement in *or* actual notice of the unlawful activity" and the fax broadcaster "fails to take steps to prevent such facsimile transmissions." 47 C.F.R. § 64.1200 (emphasis added).

146.    ProFax violated 47 U.S.C. § 227 *et seq.* by transmitting the Subject Faxes to Plaintiff and the other members of the Class without displaying an opt-out notice compliant with 47 C.F.R. § 64.1200.

147.    ProFax sent the Subject Faxes.

148.    ProFax had a high degree of involvement with the unlawful transmissions of the Subject Faxes.

20

149.    ProFax's involvement with the transmissions of the Subject Faxes included, but is not limited to, the following:

a.   It sent the Subject Faxes;

b.   It designed the Subject Faxes;

c.   It created the opt-out language that appeared on the Subject Faxes;

d.   It placed the opt-out language on the Subject Faxes;

e.   It operated the opt-out mechanism without the involvement of the Advertiser Defendants or other customers;

f.   The opt-out mechanism it operated included no method to opt-out via facsimile;

g.   It provided an opt-out mechanism that was otherwise legally deficient as described herein;

h.   It created the list(s) of recipients to whom the Subject Faxes were sent, by, *inter alia*, purchasing information from list brokers;

i.   It maintained the list(s) of recipients to whom the Subject Faxes were sent, by *inter alia*, taking responsibility for processing opt-out requests;

j.   It provided the recipient lists used to send the Subject Faxes;

k.   It provided recipient lists to customers for the express purpose of sending unsolicited facsimile transmissions without verifying or investigating whether or not the customer had an existing business relationship with the recipient;

l.   It counseled customers on the legal requirements, including the opt-out notice, under the TCPA.

150.    ProFax had actual notice of the unlawful transmissions of the Subject Faxes, including actual notice that the Subject Faxes did not display an opt-out notice compliant with 47 C.F.R. § 64.1200.

151.    ProFax took no steps to prevent the unlawful transmissions of the Subject Faxes.

152.    In fact, ProFax proactively ensured that unlawful transmissions would be sent.

153.    Profax placed the Putative Opt-Out Notice on Exhibit A.

154.    Profax created the Putative Opt-Out Notice.

155.    Profax approved the Putative Opt-Out Notice.

156.    At all relevant times ProFax knew or should have known that the Subject Faxes were advertisements.

157.    The actions of ProFax caused damages to Plaintiff and the other Class members. Receiving Defendants' junk faxes caused the recipients to lose paper and toner consumed in the printing of Defendants' faxes. Moreover, Defendants' actions interfered with Plaintiff's use of its fax machine and telephone line connected to that fax machine. Defendants' faxes cost Plaintiff time, as Plaintiff and its employees wasted their time receiving, reviewing and routing Defendants' unlawful faxes. That time otherwise would have been spent on Plaintiff's business activities. Finally, Defendants' faxes unlawfully interrupted Plaintiff's and the other Class members' privacy interests in being left alone.

158.    If the court finds that ProFax knowingly violated the TCPA or its associated regulations, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount otherwise available. 47 U.S.C. § 227(b)(3).

WHEREFORE, Plaintiff, Levine Hat Co., on behalf of itself and all others similarly situated, prays that this honorable Court grant the relief set forth in the prayer for relief below.

22

## COUNT IX
## TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227
### (against RedMoxy Communications, Inc.)

159.     Plaintiff incorporates all other paragraphs as though fully set forth herein.

160.     This count is against RedMoxy Communications, Inc. ("RedMoxy").

161.     Facsimile broadcasters are liable under the TCPA for sending junk faxes, including the inclusion of opt-out notices on unsolicited advertisements, if they demonstrate "a high degree of involvement in *or* actual notice of the unlawful activity" and the fax broadcaster "fails to take steps to prevent such facsimile transmissions." 47 C.F.R. § 64.1200 (emphasis added).

162.     RedMoxy violated 47 U.S.C. § 227 *et seq.* by transmitting the Subject Faxes to Plaintiff and the other members of the Class without displaying an opt-out notice compliant with 47 C.F.R. § 64.1200.

163.     RedMoxy sent the Subject Faxes.

164.     RedMoxy had a high degree of involvement with the unlawful transmissions of the Subject Faxes.

165.     RedMoxy's involvement with the transmissions of the Subject Faxes included, but is not limited to, the following:

   a.   It designed the Subject Faxes;

   b.   It created the opt-out language that appeared on the Subject Faxes;

   c.   It placed the opt-out language on the Subject Faxes;

   d.   It operated the opt-out mechanism without the involvement of the Advertiser Defendants or other customers;

   e.   The opt-out mechanism it operated included no method to opt-out via facsimile;

    f.   It provided an opt-out mechanism that was otherwise legally deficient as described herein;

    g.   It created the list(s) of recipients to whom the Subject Faxes were sent, by, *inter alia*, purchasing information from list brokers;

    h.   It maintained the list(s) of recipients to whom the Subject Faxes were sent, by *inter alia*, taking responsibility for processing opt-out requests;

    i.   It provided the recipient lists used to send the Subject Faxes;

    j.   It provided recipient lists to customers for the express purpose of sending unsolicited facsimile transmissions without verifying or investigating whether or not the customer had an existing business relationship with the recipient;

    k.   It counseled customers on the legal requirements, including the opt-out notice, under the TCPA.

166.    RedMoxy had actual notice of the unlawful transmissions of the Subject Faxes, including actual notice that the Subject Faxes did not display an opt-out notice compliant with 47 C.F.R. § 64.1200.

167.    RedMoxy took no steps to prevent the unlawful transmissions of the Subject Faxes.

168.    In fact, RedMoxy proactively ensured that unlawful transmissions would be sent.

169.    At all relevant times RedMoxy knew or should have known that the Subject Faxes were advertisements.

170.    RedMoxy placed the Putative Opt-Out Notice on Exhibit A.

171.    RedMoxy created the Putative Opt-Out Notice.

172.    RedMoxy approved the Putative Opt-Out Notice.

173.    The actions of RedMoxy caused damages to Plaintiff and the other Class members. Receiving Defendants' junk faxes caused the recipients to lose paper and toner consumed in the printing of Defendants' faxes. Moreover, Defendants' actions interfered with Plaintiff's use of its fax machine and telephone line connected to that fax machine. Defendants' faxes cost Plaintiff time, as Plaintiff and its employees wasted their time receiving, reviewing and routing Defendants' unlawful faxes. That time otherwise would have been spent on Plaintiff's business activities. Finally, Defendants' faxes unlawfully interrupted Plaintiff's and the other Class members' privacy interests in being left alone.

174.    If the court finds that RedMoxy knowingly violated the TCPA or its associated regulations, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount otherwise available. 47 U.S.C. § 227(b)(3).

WHEREFORE, Plaintiff, Levine Hat Co., on behalf of itself and all others similarly situated, prays that this honorable Court grant the relief set forth in the prayer for relief below.

**COUNT X**
**CONVERSION**
**(against all Defendants)**

175.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

176.    By sending Plaintiff and the other class members unsolicited faxes, Defendants permanently misappropriated the class members' fax machines, toner, paper, and employee time to Defendants' own use.

177.    Immediately prior to the sending of the unsolicited faxes, Plaintiff, and the other class members owned an unqualified and immediate right to possession of their fax machine, paper, toner, and employee time.

178.     By sending the unsolicited faxes, Defendants caused paper and toner of Plaintiff and other class members to be consumed.

179.     Plaintiff and the other class members were deprived of the use of the paper and toner consumed by Defendants' faxes, which could no longer be used for any other purpose.

180.     Defendants' unsolicited faxes used the fax machines of Plaintiff and other class members, preventing them from being used for other purposes during the relevant times.

181.     Each of Defendants' unsolicited fax advertisements effectively stole Plaintiff's employees' time because person(s) employed by Plaintiff were involved in receiving, routing, and reviewing Defendants' unlawful faxes.

182.     Defendants knew or should have known employees' time is valuable to Plaintiff.

183.     Defendants knew the faxes it sent to fax machines would be printed upon receipt, consuming toner and paper.

184.     Defendants intended to exert control over the paper, toner, fax machine usage time, and employee time of Plaintiff and other members of the class, in that it intended for its facsimile transmissions to be received by fax machines and read by the recipients.

185.     Defendants' assumption of control over the paper, toner, fax machine usage time, and employee time of Plaintiff and other members of the class was wrongful in that Defendants did not have authorization from Plaintiff or other members of the class for same.

186.     Defendants' assumption of control over the paper, toner, fax machine usage time, and employee time of Plaintiff and other members of the class was also wrongful in that Defendants did not include the opt-out notices required by the TCPA. 47 U.S.C. § 227 *et seq;* 47 C.F.R. § 64.1200.

187.    Defendants knew or should have known that their misappropriation of paper, toner, fax machine usage time and employee time was wrongful and without authorization.

188.    Defendants' actions caused damages to Plaintiff and the other members of the class because their receipt of Defendants' unsolicited fax advertisements caused them to lose paper and toner. Defendants' actions prevented Plaintiff's fax machines from being used for Plaintiff's business purposes during the time Defendants was using Plaintiff's fax machines for Defendants' unlawful purpose. Defendants' actions also cost Plaintiff employee time, as Plaintiff's employees used their time receiving, routing, and reviewing Defendants' unlawful faxes, and that time otherwise would have been spent on Plaintiff's business activities.

WHEREFORE, Plaintiff, Levine Hat Co., on behalf itself and all others similarly situated, demands the relief set forth in the Prayer for Relief below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Levine Hat Co., on behalf of itself and all others similarly situated, demands judgment in its favor and against Defendants, jointly and severally, as follows:

A.    That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the Class, and appoint Plaintiff's counsel as counsel for the Class;

B.    That the Court award between $500.00 and $1,500.00 in damages for each violation of the TCPA;

C.    That the Court enter an injunction prohibiting the Defendants from engaging in further statutory violations at issue in this action;

D.    That the Court award pre- and post-judgment interest at the statutory rate; and

E.    That the Court award punitive damages; and

F.      That the Court award costs, attorneys' fees and such further relief as the Court may

deem just and proper.

**DEMAND FOR JURY**

Plaintiff Levine Hat Co. respectfully demands a jury trial on all issues so triable.

DATED: January 3, 2017                    Respectfully submitted,

                                          KEANE LAW LLC

                                           /s/ Alex Braitberg
                                          Ryan A. Keane, #62112MO
                                          Alexander L. Braitberg, #67045MO
                                          9666 Olive Blvd.,#690
                                          St. Louis, MO 63132
                                          Phone: (314) 240-5278
                                          Fax: (314) 244-3778
                                          ryan@keanelawllc.com
                                          alex@keanelawllc.com

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that a copy of the foregoing was filed via the Court's Electronic Filing System this 3rd day of January, 2017, which will send a notice of electronic filing to all counsel of record.


       /s/ Alex Braitberg