UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LEVINE HAT CO., on behalf of itself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. 4:16-CV-1132 (CEJ) |
| INNATE INTELLIGENCE, LLC, d/b/a INNATE WELLNESS CENTERS, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on separate motions to dismiss for lack of personal jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(2), filed by the Bria defendants (Jeremy L. Bria, Bria Investments, LLC, JLB, Inc., and Well Adjusted Investments, LLC); the Eyler defendants (Gary Robert Eyler and Eyler Investments, LLC); and Pure Family Chiropractic. Plaintiff opposes dismissal and seeks leave to conduct discovery on facts related to jurisdiction.

### I.    Background

On July 5, 2016, defendant Innate Intelligence, LLC, doing business as Innate Wellness Centers (Innate), sent plaintiff a fax advertising "a FREE Lunch 'n Learn on Stress Management for your employees." The following notice appears at the bottom of the fax:

> **To opt out from future faxes go to www.removemyfax number and enter PIN# 17204, or call 800-321-4433. The recipient may make a request to the sender not to send any future faxes and failure to comply with the request within 30 days is unlawful.**

[Doc. # 27-1].

Plaintiff alleges that the opt-out notice does not comply with the minimum requirements of 47 C.F.R. § 64.1200. On July 12, 2016, plaintiff initiated this action, under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. §§ 227 *et seq.*, on behalf of itself and a purported nationwide class.

Plaintiff initially proceeded against defendants Innate and Nepute Enterprises LLC (Nepute). On January 3, 2017, plaintiff amended its complaint to name additional defendants,[1] including the Bria defendants, the Eyler defendants, and Pure Family Chiropractic. Plaintiff alleges that the defendants are directly liable for violations of the TCPA because the faxes were sent on their behalf and that they are vicariously liable because defendant Innate was their alter ego and/or agent. The defendants contend that they do not have sufficient contacts with Missouri to support the exercise of personal jurisdiction, consistent with the Missouri long-arm statute and the requirements of due process.

## II.   Legal Standard

When a motion to dismiss challenges the existence of personal jurisdiction, the plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendant. K–V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 591–92 (8th Cir. 2011); Pangaea, Inc. v. Flying Burrito LLC, 647 F.3d 741, 745 (8th Cir. 2011). If the court does not hold a pretrial evidentiary hearing on the issue of personal jurisdiction, the plaintiff need only make a prima facie showing of jurisdiction based on the pleadings, affidavits, and exhibits. Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991). The evidentiary

---

[1] Plaintiff named ProFax, Inc., which admits it sent the July 5, 2016 and does not contest personal jurisdiction, and RedMoxy Communications, Inc., which was dismissed from this action on plaintiff's notice of dismissal.

showing required at this stage is "minimal." <u>K–V Pharm.</u>, 648 F.3d at 592. Although the plaintiff bears the burden of proof, <u>Miller v. Nippon Carbon Co.</u>, 528 F.3d 1087, 1090 (8th Cir. 2008), the court views the facts in the light most favorable to the plaintiff and resolves all factual conflicts in the plaintiff's favor. <u>See</u> <u>Creative Calling Sols., Inc. v. LF Beauty Ltd.</u>, 799 F.3d 975, 979 (8th Cir. 2015) (where court considers affidavits, motion to dismiss is "in substance one for summary judgment"). As long as there is "some evidence upon which a prima facie showing of jurisdiction may be found to exist," the Rule 12(b)(2) motion will be denied. <u>Pope v. Elabo GmbH</u>, 588 F. Supp. 2d 1008, 1014 (D. Minn. 2008) (<u>quoting</u> <u>Aaron Ferer & Sons Co. v. Diversified Metals Corp.</u>, 564 F.2d 1211, 1215 (8th Cir. 1977) and <u>citing</u> <u>Watlow Elec. Mfg. Co. v. Patch Rubber Co.</u>, 838 F.2d 999, 1000 (8th Cir. 1988)).

### III.    Discussion

#### A.    Evidence in the Record

Defendant Jeremy L. Bria has submitted an affidavit on behalf of himself and the other Bria defendants. [Doc. # 59-1]. Bria lives in Wisconsin and has never lived, owned or leased property, or conducted business in Missouri. He is the president of defendant JLB, Inc., and the sole member of defendants Well Adjusted Investments, LLC, and Bria Investments, Inc. Defendant JLB, Inc., is a Wisconsin corporation, and defendants Well Adjusted Investments, LLC, and Bria Investments, LLC, are Wisconsin limited liability companies. The business entities are not registered to and have never conducted business in Missouri, had any employees or offices in Missouri, or owned or leased property in Missouri. Bria disavows any role

in the creation or transmission of the July 2016 fax on behalf of himself and the business entities.

Defendant Gary Robert Eyler submits an affidavit on behalf of himself and Eyler Investments, LLC. [Doc. # 72-1]. Eyler lives in Wisconsin and has never owned property, conducted personal business, entered into any contracts, committed tortious acts, or advertised personal services in Missouri. He is the sole member and manager of defendant Eyler Investments, LLC, an Indiana limited liability company. Defendant Innate was a Wisconsin limited liability company whose only members were defendants Eyler Investments and Well Adjusted Investments. Eyler was an officer of defendant Innate from 2013 until January 31, 2017, but was never a member. Defendants Innate and Eyler Investments were never registered to do business in Missouri. Defendant Eyler Investments has never conducted business or had any employees or offices in Missouri; entered into contracts, committed tortious acts, or advertised any products or services in Missouri. Finally, Eyler attests that Eyler Investments maintains its own bank accounts, books and records, and its funds have never been comingled with those of any other person or entity.

Defendant Eyler also submits an affidavit on behalf of defendant Pure Family Chiropractic LLC, a Wisconsin limited liability company, whose only members are defendants Eyler Investments and Well Adjusted Investments. [Doc. # 77-1]. Pure Family is not registered to and has never conducted business in Missouri; had any property, offices, or employees in Missouri; or entered into contracts, committed tortious acts, or advertised products or services in Missouri.  Pure Family maintains

its own bank accounts, books and records, and its funds have never been comingled with those of any other person or entity.

Plaintiff submits the following documents to support its assertion that personal jurisdiction exists: (1) emails from January 2016 in which defendants Eyler and Bria discuss the content of the Lunch 'n Learn faxes with an account executive from defendant RedMoxy [Docs. # 65-2, #74-1]; (2) a May 2016 email from Eyler requesting a list of fax numbers for businesses located in Missouri zip codes [Doc. # 74-2]; (3) a January 2016 email from Eyler returning an executed service agreement to a fax broadcaster [Doc. # 74-3]; (4) a February 2016 partnership agreement between defendants Innate and Nepute executed by Eyler on behalf of Innate [Doc. # 74-4]; (5) documents setting out Eyler's strategy to generate business leads through Lunch 'n Learns [Doc. # 82-2, see also Docs. # 82-3, #82-4 (setting out talking points)]; (6) the July 2013 operating agreement for Innate, signed by defendants Eyler, on behalf of Eyler Investments, and Bria, on behalf of Well Adjusted Investments, showing initial capitalization in the total amount of $4,000 [Doc. # 65-1]; (7) a document from Innate Wellness, entitled "About Us," which purports to tell the history of Innate's creation by Eyler and Bria [Doc. # 65-4]; and (8) information from Innate's website showing the locations of various affiliated offices, including three locations for Pure Family Chiropractic (in Indiana and Wisconsin) and Nepute Wellness Center in Missouri. [Doc. # 65-8].

### A.    Waiver

Plaintiff contends that the Eyler defendants and Pure Family waived any defense based on personal jurisdiction. In March 2017, defendants timely filed answers to the first amended complaint in which they asserted lack of personal

5

jurisdiction as an affirmative defense. [Docs. #50 at 19, #51 at 21, #56 at 24]. In May 2017, they filed the present motions to dismiss. Plaintiff argues that defendants were required to raise the defense in a pre-answer motion, citing Rule 12(b), which provides that a motion asserting the defense of lack of personal jurisdiction "must be made before pleading if a responsive pleading is allowed." Fed.R.Civ.P. 12(b). Defendants counter that they preserved the defense by asserting it as an affirmative defense in their answers. They cite Rule 12(h), which states that a party waives certain Rule 12(b) defenses, including lack of personal jurisdiction, by "failing to either . . . make [the defense] by motion under this rule; or . . . include it in a responsive pleading . . ." Fed.R.Civ.P. 12(h)(1)(B) (emphasis added).

Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction are technically untimely where they postdate the filing of an answer. Anderson v. Sullivan, No. 03CV4064 (DRH)(MLO), 2005 WL 1123772, at *2 (E.D.N.Y. May 9, 2005) (citations omitted). However, federal courts will generally deem a Rule 12(b)(2) motion timely if the defendant's previously-filed answer expressly includes the lack of personal jurisdiction as an affirmative defense. Id.; Molnlycke Health Care AB v. Dumex Med. Surg. Prods. Ltd., 64 F. Supp. 2d 448, 449 n. 1 (E.D. Penn. 1999) (citations omitted) (allowing motion to dismiss for, *inter alia*, lack of personal jurisdiction and improper venue that was filed after answer, where defenses were raised in the answer); see also Island Stone Int'l Ltd. v. Island Stone India Private Ltd., No. 616CV656ORL40KRS, 2017 WL 1437464, at *2 (M.D. Fla. Apr. 4, 2017), report and recommendation adopted, 2017 WL 1426664 (M.D. Fla. Apr. 21, 2017)

(untimely Rule 12(b)(2) motion "becomes a Rule 12(i)[2] motion for disposition before trial."). Here, because the defendants asserted lack of personal jurisdiction as an affirmative defense, the Court will deem their Rule 12(b)(2) motions as timely.

### B.    Personal Jurisdiction

Personal jurisdiction can be general or specific. Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty., 137 S. Ct. 1773, 1780 (2017); Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG, 646 F.3d 589, 593 (8th Cir. 2011). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011). There is no evidence or even an allegation that defendants Bria and Eyler are domiciled in Missouri, and thus they are not subject to general personal jurisdiction in this forum.

A corporation is subject to general jurisdiction in any forum in which its "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Id. at 919 (citing International Shoe Co. v. Washington, 326 U.S. 310, 317 (1945)). Only a limited set of affiliations with a forum will render a defendant amenable to general jurisdiction there. Daimler AG v. Bauman, 134 S. Ct. 746, 760 (2014). A corporation's place of incorporation and principal place of business are "paradig[m] . . . bases for general jurisdiction." Id. (citation omitted). These "affiliations have the virtue of being unique — that is, each ordinarily indicates only one place — as well as easily ascertainable," and

---

[2] Fed. R. Civ. P. 12(i) provides: "If a party so moves, any defenses listed in Rule 12(b)(1)-(7)[,] whether made in a pleading or by motion . . .[,] must be heard and decided before trial unless the court orders a deferral until trial."

"afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." Id. (citations omitted). The general jurisdiction inquiry does not "focu[s] solely on the magnitude of the defendant's in-state contacts," but calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. Id. at 762 n.20. "A corporation that operates in many places can scarcely be deemed at home in all of them." Id. Here, the defendant business entities are not registered to do business in and do not maintain a physical presence in Missouri, and they have corporate homes in other fora. Thus, the business entities are not subject to general jurisdiction here.

"Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state." Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc., 702 F.3d 472, 475 (8th Cir. 2012) (citation omitted). In a recent case, the Supreme Court reiterated that, in order for a court to exercise specific jurisdiction, "the suit must aris[e] out of or relat[e] to the defendant's contacts with the forum." Bristol-Myers Squibb, 137 S. Ct. at 1780 (quoting Daimler, 134 S. Ct. at 754 (internal quotation marks omitted). In other words, there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Id. (quoting Goodyear, 564 U.S. at 919 (alterations in original). Thus, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." Id. Furthermore, specific jurisdiction arises solely from the contacts of the defendant with the forum, and not the "random, fortuitous, or attenuated contacts or . . . the unilateral activity of another party or a third

8

person." Stanton v. St. Jude Med., Inc., 340 F.3d 690, 693-94 (8th Cir. 2003) (quoting Burger King v. Rudzewicz, 471 U.S. 462, 475 (1985)).

Based on its review of the evidence submitted by the parties, the Court concludes that it cannot exercise jurisdiction over the moving defendants based on their personal contacts with Missouri.  However, it is undisputed that Innate is subject to specific personal jurisdiction arising from its actions in relationship to the July 2016 fax, and the Court may assert personal jurisdiction over the moving defendants if Innate was their alter ego. In that event, the Court can disregard the corporate entities and attribute Innate's contacts with Missouri to the moving defendants. Fleishman-Hillard, Inc. v. McCombs, No. 4:10-CV-676 CAS, 2011 WL 53077, at *2 (E.D. Mo. Jan. 7, 2011).

While courts ordinarily protect the separate legal identities of individual corporations, there are situations in which one corporation "shows such domination and control over another that the latter corporation becomes an adjunct or alter ego of the first." Real Estate Inv'rs Four, Inc. v. Am. Design Grp. Inc., 46 S.W.3d 51, 56 (Mo. Ct. App. 2001). "In such a situation, when the formal corporate separateness and the arrangements between the two corporations is devised or used to accomplish a fraud, injustice, or some unlawful purpose, then the separate formal corporate structures will be ignored." Id. (quoting Collet v. American Nat. Stores, Inc., 708 S.W.2d 273, 284 (Mo. Ct. App.1986));  see also Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc., 519 F.2d 634 (8th Cir. 1975) ("where a corporation is the alter ego of the stockholders so as to justify disregard

9

of the corporate entity[,] jurisdiction over the corporation will support jurisdiction over the stockholders.").[3]

If Innate acted as an agent, personal jurisdiction exists over the moving defendants based on Innate's actions in Missouri that were done in the scope of its authority.[4] Blanks v. Fluor Corp., 450 S.W.3d 308, 378–79 (Mo. Ct. App. 2014). An agency relationship exists when three essential elements are met: (1) the agent holds a power to alter legal relations between the principal and a third party; (2) the agent is a fiduciary with respect to matters within the scope of the agency; and (3) the principal has the right to control the conduct of the agent with respect to matters entrusted to the agent. Id. at 382-83 (citations omitted).

Although plaintiff has produced some evidence in support of its contention that Innate acted as the alter ego or agent of the moving defendants, the Court finds that it cannot reach a decision on the evidence presently before it. Where, as here, the plaintiff offers documentary evidence in support of allegations of personal jurisdiction, the court abuses its discretion by dismissing the action without permitting the plaintiff to take some jurisdictional discovery. Foreign Candy Co. v. Tropical Paradise, Inc., 950 F. Supp. 2d 1017, 1036 (N.D. Iowa 2013) (citing Steinbuch v. Cutler, 518 F.3d 580, 589 (8th Cir. 2008)).  The Court will order the parties to engage in a period of jurisdictional discovery, after which time the defendants may renew their motions to dismiss.

---

[3] The terms "alter ego" and "piercing the corporate veil" are used interchangeably. See id. (citing cases).

[4] The agency theory differs from piercing the corporate veil in theory and operation in that the parent is held liable to the extent it authorized its agent's conduct.  Under an agency theory, the separate corporate identities are preserved, while they are set aside when courts pierce the corporate veil. Blanks v. Fluor Corp., 450 S.W.3d 308, 379–80 (Mo. Ct. App. 2014)

10

Accordingly,

**IT IS HEREBY ORDERED** that the defendants' motions to dismiss for lack of personal jurisdiction [Docs. # 59, # 72, and # 76] are **denied without prejudice**.

**IT IS FURTHER ORDERED** that the parties shall have until **September 18, 2017,** to conduct discovery limited to the issue of personal jurisdiction.  After the close of the limited discovery period, defendants may re-file their motions to dismiss for lack of personal jurisdiction, if appropriate.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 17th day of July, 2017.

11