**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
(EASTERN DIVISION)**

|  |  |  |
|---|---|---|
| **LEVINE HAT CO.**, on behalf of itself and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | Case No. 4:16-cv-01132-SNLJ |
| **INNATE INTELLIGENCE, LLC** et al., | ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT PROFAX, INC.
<u>ON COUNT VIII OF PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT</u>**

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

I.     INTRODUCTION ................................................................................................. 1

II.    BACKGROUND ................................................................................................... 1

III.   PARTIES INVOLVED .......................................................................................... 2

   A.   Defendant Innate Intelligence LLC .................................................................. 2

   B.   Defendant Nepute Enterprises LLC ................................................................. 3

   C.   Defendant ProFax, Inc. .................................................................................... 3

IV.    THE SUBJECT FAXES ........................................................................................ 5

V.     APPLICABLE LAW ............................................................................................. 6

   A.   The Telephone Consumer Protection Act ....................................................... 6

   B.   Summary Judgement ........................................................................................ 7

VI.    ARGUMENT ........................................................................................................ 8

   A.   The Opt-Out Notice .......................................................................................... 8

   B.   Violations of the TCPA within the Opt-Out Notice ...................................... 10

   C.   The Subject Faxes were Unsolicited ............................................................. 11

   D.   The Subject Faxes were Advertisements as a Matter of Law ....................... 11

   E.   Profax's Involvement in, and Knowledge of, the Unlawful Conduct ........... 13

VII.   DAMAGES .......................................................................................................... 15

VIII.  CONCLUSION .................................................................................................... 15

## **TABLE OF AUTHORITIES**

**Cases**

*A Aventura Chiropractic Care Center, Inc. v. BB Franchising LLC*, No. 1:15-cv-20137-UU, 2015 WL 11051056 (S. D. Fl. 2015)..........................................................................11

*Accounting Outsourcing, LLC. v. Verizon Wireless Pers. Commc'ns, L.P.*, 329 F. Supp. 2d 789 (M.D. La. 2004)..............................................................................................................13

*CE Design v. Beaty Construction, Inc.*, No. 07-C-3340, 2009 WL 192481 (N. D. Ill. 2009)......11

*Exclusively Cats Veterinary Hosp., P.C. v. M/A/R/C Research, L.L.C.*, 444 F. Supp. 3d 775 (E.D. Mich. 2020) ..........................................................................................................12

*Fauley v. Drug Depot, Inc.*, 323 F.R.D. 594 (N. D. Ill. 2018)....................................................11

*Littrell v. City of Kansas City, Mo.*, 459 F.3d 918 (8th Cir .2006)................................................8

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, (1986) ...........................8

*Penzer v. Transp. Ins. Co.,* 545 F.3d 1303 (11th Cir.2008)..........................................................7

*Rinky Dink, Inc. v. Elec. Merch. Sys.*, No. C13-1347-JCC, 2015 WL 778065 (W.D. Wash. Feb. 24, 2015)......................................................................................................................14

*Samuels v. Kansas City Mo. Sch. Dist.*, 437 F.3d 797 (8th Cir.2006)............................................8

*Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, 788 F.3d 218 (6th Cir. 2015) ...........12

*United States v. Dish Network, LLC*, 256 F.Supp.3d 810 (D.C. Ill. 2017)...................................15

*Woods v. DaimlerChrysler Corp.*, 409 F.3d 984 (8th Cir.2005) ....................................................8

**Statutes**

47 U.S.C. § 153(39) ..........................................................................................................7

47 U.S.C. § 227..................................................................................................................1

47 U.S.C. § 227(a)(5)........................................................................................................12

47 U.S.C. § 227(b)(1)(C) ............................................................................................ 6

47 U.S.C. § 227(b)(1)(C)(iii) ...................................................................................... 9

47 U.S.C. § 227(b)(2)(D)(i) ........................................................................................ 9

47 U.S.C. § 227(b)(2)(D)(ii) ....................................................................................... 9

47 U.S.C. § 227(b)(2)(D)(iv)(I) .................................................................................. 9

47 U.S.C. § 227(b)(2)(D)(v) ...................................................................................... 10

47 U.S.C. § 227(b)(2)(E)(i)-(iii) ................................................................................. 9

47 U.S.C. § 227(b)(3) ............................................................................................ 7, 15

47 U.S.C. § 227(b)(3)(B) ....................................................................................... 6, 15

47 U.S.C. § 227(b)(3)(C) ........................................................................................... 15

**Other Authorities**

House Report No.  102-317 (1991).............................................................................. 1

Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; *Junk Fax*

  *Prevention Act of 2005*, 71 FR 25967-01 ............................................................ 12

**Regulations**

47 C.F.R. § 64.1200(a)(4)(iii)(D)(1)                                                          10

47 CFR 64.1200(a)(4)(v)                                                                       13

## I.       INTRODUCTION

Plaintiff Levine Hat Company is a family-owned hat retailer who origins date back over 100 years in St. Louis, Missouri. (*See* Exhibit F at pp. 12-13).  Plaintiff brought this class action against Defendants for sending 10,031 unsolicited "junk faxes" advertising services of advertising and managing chiropractic clinics. The facts are uncontroverted that the faxes created and sent by Defendants were in violation of the Telephone Consumer Protection Act (47 U.S.C. § 227, *et seq*, the "TCPA"). Since the TCPA is a strict liability statute, summary judgment is an appropriate remedy. Extensive discovery in this case has adduced significant evidence supporting the claims of the Class and this case is ripe for this Court to enter judgment against Defendant Profax as a matter of law on Count VIII of Plaintiffs' First Amended Class Action Complaint.[1]

## II.       BACKGROUND

Congress enacted the TCPA in 1991 in part because unsolicited fax advertisements are costly, annoying, and unjustly "shift the costs of advertising from the sender to the recipient"; Congress sought to put an end to this practice. *See* H.R. Rep. No.  102-317, at 10 (1991). Now, three decades later, these "junk faxes" are still being sent, in large part due to the actions of fax broadcasters like Defendant ProFax Inc., who regularly induce customers into TCPA violations, by selling them facsimile broadcast services while reassuring them that everything is legal.

Class certification was granted on February 9, 2018. This Court granted certification of the

---

[1] Three Defendants are currently in this case: Defendant Profax Inc., Defendant Innate Intelligence, LLC, and Defendant Nepute Enterprises, LLC. Plaintiffs have filed three separate Motions for Summary Judgment, against each Defendant individually. Each Defendant has a distinct role to play in the case: Profax was the fax broadcaster, Innate was the fax's developer, sender, and the party for whom the advertisement directed recipients for service, and Nepute was a partner with Innate and one of the chiropractors who looked to Innate to broker arrangements between businesses and themselves for on-site wellness visits. The Motions filed by Plaintiff have been separated to more clearly define the roles and liabilities of each of the remaining Defendants.

following class:

> All persons who received a facsimile transmission sent by ProFax, Inc., on behalf of Innate Intelligence LLC or its chiropractic clinics between January 27, 2016 and July 13, 2016, as confirmed by either:
>
> (1) presence on a facsimile transmission log produced by Innate Intelligence LLC in this case showing one or more transmissions "sent" and complete"; or
>
> (2) presence on a list of those who opted out from receiving future faxes from Innate Intelligence LLC, produced by ProFax, Inc. in this case.

ECF No. 120. The class certified by the court comprises 10,031 members.[2]

On August 3, 2020, Plaintiff and Profax brought a proposed settlement before this Court for approval. The proposed settlement was $5.00 per class member. *See* ECF No. 184. This Court rejected the settlement due to the $500-per-violation statutory damages available under TPCA. *Id.*

### III.   PARTIES INVOLVED

Plaintiff filed their initial Class Action Complaint on July 13, 2016. After a series of Amended Complaint and dismissals, three Defendants remain: Profax, Inc. (herein "Profax"), Innate Intelligence, LLC (herein "Innate"), and Nepute Enterprises, LLC (herein "Nepute").[3]

### A.   Defendant Innate Intelligence LLC

Innate is an umbrella organization for advertising and managing chiropractic clinics. (<u>Pls.'</u>

---

[2] This number is reached by calculating that 8,542 people verifiably received one of 9,553 successful transmissions, as reflected in the five transmission logs that Innate produced, plus an additional 1,489 who sent an opt-out request to ProFax.

[3] Plaintiffs' initial Complaint named two defendants: Innate Intelligence, LLC and Nepute Enterprises, LLC. ECF No. 1. Plaintiff added additional defendants, filing their First Amended Complaint on January 3, 2017, adding Jeremy Bria, Gary Eyler, JLB, Inc., Pure Family Chiropractic, LLC, Eyler Investments, LLC, Well Adjusted Investments, LLC, Bria Investments, LLC, Profax, Inc. (herein "Profax"), and Redmoxy Communications, Inc. ECF No. 27. Plaintiff dismissed RedMoxy Communications on April 12, 2017. ECF No. 66. Plaintiff then dismissed Jeremy Bria, JLB, Inc., Well Adjusted Investments, LLC, and Bria Investments, LLC on September 29, 2017. ECF No. 106. Defendants Gary Eyler, Eyler Investments, LLC, and Pure Family Chiropractic, all filed Motions to Dismiss, which were granted by this Court. ECF No. 118.

Statement of Uncont. Material Facts in Supp. Of its Mot. For Summ. J., herein "SOF", ¶ 11). It "operate[d] 12 chiropractic offices in 4 markets across the US." (SOF ¶12). Innate advertised "Lunch N' Learns" or "LnLs," for its clinics, including by sending the Subject Faxes. (SOF ¶22). The ultimate goal of the LnLs advertised in the Subject Faxes was to increase sales volume by securing clients who would pay Innate and its clinics, including Defendant Nepute Enterprises to perform these on-site services. (SOF ¶17). Innate also operated as a "staffing agency," obtaining fees for placing chiropractors in assignments to perform on-site services the LnLs were designed to promote. (SOF ¶16). It also received payments from its clinics for each successful event. *Id*.

Innate treated its chiropractic clinics in some ways as its "clients" but also represented to the world that these clinics were "locations" that were "operated" by Innate. (SOF ¶19). Part of the benefit the clinics received for their marketing agreements with Innate was a listing on Innate's website. (SOF ¶20). In turn, the Subject Faxes were designed to drive traffic to the Innate website, where the contact information of all of Innate's clinics was prominently displayed. (SOF ¶22).

**B.    Defendant Nepute Enterprises LLC**

Nepute Enterprises, LLC operates several chiropractic clinics in St. Louis, Missouri. (SOF ¶4). Nepute was one of the chiropractors that partnered with Innate to facilitate the creation of on-site wellness programs with businesses who responded to Innate's "Lunch N' Learn" faxes. (SOF ¶5). Nepute and Innate entered into a partnership agreement on March 2, 2016 where Innate agreed to let Nepute advertise and market under the Innate name and Nepute agreed to allow Innate to use Nepute's name, likeness, logo for promotional purposes. (SOF ¶9). Nepute agreed to work exclusively with Innate for the purpose of providing paid on-site chiropractic care. (SOF ¶10).

**C.    Defendant ProFax, Inc.**

ProFax is a professional fax broadcasting service. (SOF ¶23) Profax was hired by Innate

for the purposes of broadcasting the Subject Fax. (SOF ¶24). Pursuant to its agreement with Innate, ProFax drafted and supplied the (legally insufficient) opt-out language that appears on the bottom of each of these unsolicited faxes. (SOF ¶46-49) When Innate was deciding whether to use ProFax's services, its CEO, Gary Robert Eyler, spoke by telephone with a ProFax employee, Colleen Rose, on or around January 22, 2016. (SOF ¶43). During this call, Ms. Rose told Mr. Eyler that ProFax puts opt-out language on all of its customers' faxes in order to ensure compliance with applicable law. *Id*. Mr. Eyler made the decision to use ProFax in part in reliance on Ms. Rose's representation to Mr. Eyler that ProFax would ensure compliance. *Id*.

The documents produced in this case confirm that ProFax created the opt-out notices. For every fax transmission that ProFax sent on behalf of Innate, Innate emailed a document with no opt-out notice to ProFax, and then ProFax applied the opt-out notice to the bottom of the document before broadcasting it. (SOF ¶45).

The list of recipients of the Subject Faxes was generated by Fax List Wholesalers. (SOF ¶38). When Innate approached Profax regarding sending the Subject Faxes, ProFax recommended that Innate obtain a list of recipients from Fax List Wholesalers. *Id.* Following ProFax's recommendation, Fax List Wholesalers supplied lists of email recipients via email to Innate. *Id*. The emailed recipient lists received Fax List Wholesalers were then forwarded to ProFax, including the portion of the email showing that the lists had been received from Fax List Wholesalers. *Id*. ProFax then used these emailed lists to send the Subject Faxes. (SOF ¶29) Because ProFax knew that Innate would be purchasing a list of recipients, as opposed to supplying ProFax with a list of Innate's existing customers or contacts, ProFax necessarily knew that (1) the fax was unsolicited and (2) that Innate and Nepute did not have an established business relationship with the recipients. (SOF ¶39)

4

ProFax also managed the list of opt-outs for Innate. This included managing a website and phone number to receive opt-out requests and assigning a unique PIN number to identify those that had submitted opt-out requests. ProFax produced a list of 1,693 opt-outs requests that had been made in response to faxes it sent for Innate. (SOF ¶56). ProFax represented that the way it knew that the opt-outs on the list were related to Innate was that each were made using the unique PIN assigned to Innate. *Id*.

## IV.   THE SUBJECT FAXES

On or about July 5, 2016, Plaintiff Levine Hat Co. received one of Innate's fax advertisements (hereinafter referred to as "the Subject Fax", and the group of substantially similar faxes is herein collectively referred to as "Subject Faxes").[4] (SOF ¶51) Between the period of January 28, 2016 and July 12, 2016, Innate had Profax send eight different faxes promoting the "Lunch N' Learns". *Id*. All faxes sent during this time period, including the Subject Fax received by Plaintiff Levine Hat, contained identical opt-out notices. (SOF ¶52)

The Subject Fax received by Plaintiff Levine Hat carried the header "Stressed employee cost your business. Want to know how much $?". (See Ex E, attached to Plaintiff's SOF). The fax provided two options for the recipient: one, to "GET THE ANSWER" which instructed viewers to a website, "www.costofstressiwc.com", and two, to "TAKE ACTION" and schedule a "FREE" Lunch n' Learn on Stress Management".[5] *Id*. The Subject Fax identified "Innate Wellness Centers" as a "group of wellness consultants and clinicians dedicated to improving the health of a business one employee at a time. Our offices around the country offer the highest quality, proactive wellness

---

[4] A copy of one of the Subject Faxes is attached to the contemporaneously filed Statement of Uncontroverted Facts as Exhibit E. This was the fax received by Plaintiff Levine Hat.

[5] The website referenced in the Subject Fax, "www.costofstressiwc.com" is now defunct, but at the time the Subject Fax was sent, it was owned and operated by Innate, hence the "iwc" designation in the domain URL, referencing "Innate Wellness Centers".

education and care on the planet, both on-site and in our offices." *Id*. The fax advertised that a "FREE Lunch n' learn" would be provided to interested parties, but only the "First on-site Lunch n' Learn is FREE". *Id*.

The fax identified at the top that it originated from Innate Wellness Centers and contained a toll-free number to the organization. *Id*. The fax also displayed the date and time of the transmission. Id. At the bottom of the fax was an opt-out notice to receive future faxes, *Id*. The opt-out notice on the Subject Fax, stated:

> To opt out from future faxes, go to www.removemyfaxnumber.com and enter PIN# 17204, or call 800-321-4433. The recipient may make a request to the sender not to send any future faxes and that failure to comply with the request within 30 days is unlawful.

*Id*.[6] This opt-out notice was the same as what was present on the seven other faxes sent during the time period referenced herein.

## V.    APPLICABLE LAW

### A.    The Telephone Consumer Protection Act

The TCPA makes it "unlawful for any person ... to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless," among other things, it satisfies *all* of the following conditions: (i) there is an "established business relationship" between the sender and the recipient, (ii) the information was obtained from a public source or provided directly by the recipient, *and* (iii) the advertisement contains certain required  disclosures. to a telephone facsimile machine." 47 U.S.C. § 227(b)(1)(C). The TCPA creates a private right of action under which a party can bring "an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." *Id.* § 227(b)(3)(B). The TCPA is essentially a strict liability statute which

---

[6] The particular violating details of this opt-out notice are discussed in Section VI(B), *infra*.

imposes liability for erroneous unsolicited faxes. *Penzer v. Transp. Ins. Co.,* 545 F.3d 1303, 1311 (11th Cir.2008). However, if a court determines "the defendant willfully or knowingly violated" the TCPA, "the court may, in its discretion, increase the amount of the award to an amount equal to not more than *3 times the amount available under subparagraph (B) of this paragraph.*" 47 U.S.C. § 227(b)(3) (emphasis added). The TCPA does not require any intent for liability except when awarding treble damages. *Id.* Importantly though, the intent for treble damages does not require any malicious or wanton conduct, but rather is satisfied by merely "knowing" conduct.

The facts in this case clearly indicate that Profax was an entity that was governed by the controlling provisions of the TCPA, and is therefore strictly liable for violations thereof. First, Profax is a "person" as contemplated by the statute. Chapter 5 of Title 47 of the United States Code, which includes the TCPA, specifically defines a "person" as "an individual, partnership, association, joint-stock company, trust, or corporation." 47 U.S.C. § 153(39). Second, it is undisputed that Profax broadcast its faxes, including the subject fax, using digital fax cards contained within a computer server. (SOF ¶25). Therefore, Profax meets the definition of a "person" using a "telephone facsimile machine, computer, or other device" within the context of conduct regulated by the TCPA. The first two elements are met. The undisputed evidence set forth in more detail in the subsequent sections with further demonstrates that 1) the Subject Faxes broadcast by Profax did not contain an opt-out notice meeting all the requirements of 47 USC 227(b)(2)(D) and 47 CFR 64.1200, 2) the Subject Fax was unsolicited, and 3) the Subject Fax was an advertisement. As such, Profax violated the TCPA and Plaintiff's Motion should be granted.

**B.    Summary Judgment**

The standard for summary judgment is well settled. In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light

most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir.2005); *Littrell v. City of Kansas City, Mo.*, 459 F.3d 918, 921 (8th Cir .2006). Summary Judgment will be granted when, viewing the evidence in the light most favorable to the nonmoving party and giving the nonmoving party the benefit of all reasonable inferences, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. S*amuels v. Kansas City Mo. Sch. Dist.*, 437 F.3d 797, 801 (8th Cir.2006).

## VI.    ARGUMENT

As a matter of law, based on the uncontested facts and record evidence, ProFax is liable for its violations of the TCPA. ProFax itself knowingly sent an unsolicited advertisement by facsimile to recipients that it knew had no established business relationship with ProFax or Innate, and therefore violated the TCPA.  Further, ProFax itself drafted an opt-out notice which violated the TCPA, which it appended to faxes which it sent.  This opt-out notice violated the TCPA's requirements in least three ways: (1) it failed to include a fax number to which a recipient could send an opt-out request in violation of 47 USC 227 (b)(2)(D)(ii); (2) it failed to inform the recipient of the information their opt out request should contain, in violation of  47 USC 227 (b)(2)(D)(iii) and 47 USC 227 (b)(2)(E)(i)-(iii); and (3) it failed to inform recipients that the sender's failure to comply with a lawful opt-out request within a reasonable time would be unlawful, in violation of 47 USC 227 (b)(2)(D)(ii).

## A.    The Opt-Out Notice

The Subject Fax violated the TCPA because it did not contain an opt-out notice which met the requirements of both 47 U.S.C. § 227 and 47 CFR 64.1200. The opt-out notice on the Subject Fax, as created and applied by Profax, stated:

> To opt out from future faxes, go to www.removemyfaxnumber.com and enter PIN# 17204, or call 800-321-4433. The recipient may make a request to the sender not to send any future faxes and that failure to comply with the request within 30 days is unlawful.

(Exhibit E and SOF ¶¶ 46-49). This opt-out notice contained on the Subject Fax is in violation of the TCPA because it does not contain a domestic facsimile number for the recipient to transmit their request to no longer receive unsolicited faxes, it does not state what the opt-out request should contain, fails to properly inform recipients that the sender's failure to comply with a lawful opt-out request within a reasonable time would be lawful.

47 U.S.C. § 227(b)(1)(C)(iii) states that it is unlawful to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D) of § 227. 47 U.S.C. § 227(b)(1)(C)(iii). Section (2)(D) contains the opt-out notice requirements. The opt-out notice shall be clear and conspicuous and on the first page of the unsolicited advertisement. 47 U.S.C. § 227(b)(2)(D)(i). It must state that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine or machines and that failure to comply, within the shortest reasonable time is unlawful. 47 U.S.C. § 227(b)(2)(D)(ii). The notice must include a domestic contact telephone and facsimile machine number for the recipient to transmit such a request to the sender; and a cost-free mechanism for a recipient to transmit a request pursuant to such notice to the sender of the unsolicited advertisement. 47 U.S.C. § 227(b)(2)(D)(iv)(I) and (II). The opt-out notice shall inform the recipient that a request to opt-out of future unsolicited advertisements must identify the fax number of the recipient, the request is made by telephone or fax, and the person making the request has not consented to receiving such advertisements. 47 U.S.C. § 227(b)(2)(E)(i)-(iii). A recipient must be permitted to make such a request at any time on

9

any day of the week. 47 U.S.C. § 227(b)(2)(D)(v). These requirements are mirrored in the Federal Regulations. *See* 47 C.F.R. § 64.1200(a)(4)(iii)(D)(1).

**B.     Violations of the TCPA within the Opt-Out Notice**

The opt-out notice included on the Subject Fax violates the TCPA in at least three key ways. (*See* Ex. E) First, the opt-out notice contained on the Subject Fax plainly does not contain a facsimile machine number for a recipient, such as the Plaintiff, to submit their request to no longer receive unsolicited faxes. Second, the opt-out notice does not contain the requirements for what the person opting out of future faxes must state. The Subject Fax's opt-out notice does not inform the recipient that if they choose to opt-out from future unsolicited advertisements, they must provide their own fax number to the sender. Finally, the opt-out request is deficient because it fails to properly inform recipients that the sender's failure to comply with a lawful opt-out request within a reasonable time would be unlawful. The notices say the recipient is free to make the <u>assertion</u> that failure to comply is unlawful when sending an opt-out request. The notices do not say that failure to comply within a reasonable time is <u>actually</u> unlawful. This latter language is what the TCPA requires. Therefore, the opt-out notice violates the TCPA and Defendant is liable.

These three failures to comply with the opt-out requirements of the TCPA are not mere technical violations. To the contrary, they impose actual damages on class members and implicate important aspects of the TCPA's goals.  Upon receiving an unsolicited fax advertisement, it is, as a practical matter, far more efficient to send a return fax that says "remove" than to log in to a computer, look up a website, or call a telephone number. These inefficiencies, multiplied, mean more junk faxes. Accordingly, the inclusion of a fax number in opt-out notices is required to meaningfully effectuate the TCPA's opt-out regime.  Similarly, it is of critical importance than an effective opt-out notice inform the recipient how to opt out, as the TCPA requires. The requirement

that opt-out notices explain that recipients are legally entitled to enforcement is the component of the TCPA's opt-out regime which achieves this goal.

ProFax's violations of the TCPA, and the associated penalties for those violations, should come as no surprise to ProFax. It has been implicated in a vast number of other TCPA cases in district courts around the country. See e.g. *Fauley v. Drug Depot, Inc.*, 323 F.R.D. 594 (N. D. Ill. 2018), *CE Design v. Beaty Construction, Inc.*, 2009 WL 192481 (N. D. Ill. 2009); *A Aventura Chiropractic Care Center v. BB Franchising LLC*, 2015 WL 11051056 (S. D. Fl. 2015).[7]

## C.     The Subject Faxes were Unsolicited

The Subject Faxes were unsolicited because Profax had no established business relationship with any fax recipients prior to the broadcast of the Subject Faxes. 47 U.S.C. § 227(b)(1)(C) exempts the illegality of unsolicited faxes in situations where there is an established business relationship between the sender and the recipient. The undisputed facts in this case show there was no relationship between the Class and Profax, Innate, or Nepute. Plaintiff and Class never had any business or other dealings with Innate or any of its clinics prior to receiving the Subject Fax and prior to this litigation. (SOF ¶¶ 39 - 41). Innate's Corporate Rep testified that he purchased the subject list of fax numbers from "Fax List Wholesalers". (SOF ¶¶ 38, 40, 41). Therefore, Defendants had no prior relationship with the owners of the fax numbers they purchased, making the Subject Faxes, by law, unsolicited with no applicable exclusions.

## D.     The Subject Faxes were Advertisements as a Matter of Law

The Subject Faxes meet the accepted legal definition of an "advertisement". The Subject Faxes were created at the behest of Innate to promote their "Lunch N' Learns". (SOF ¶ 22). These "Lunch N' Learns" were considered by Innate to be "sales opportunities". (SOF ¶ 15). If a business

---

[7] Plaintiff cites to three cases here just as examples.  A cursory search on Westlaw turned up a total of 38 cases where ProFax was mentioned as a fax broadcaster in TCPA cases.

accepted the call for a "free" "Lunch N' Learn", then Innate intended for that to transform into the implementation of a company "wellness program" with an associated doctor or chiropractor. (SOF ¶ 17). Innate would receive money from doctors and chiropractors for making the connection between themselves and the businesses who accepted the offer for the free "Lunch N' Learn". (SOF ¶ 16). The doctors and chiropractors who established wellness programs with the business would then have the opportunity to pay the connected doctor or chiropractor for the future wellness program services and administration.

Because the ultimate aim of the "Lunch N' Learns" promoted in the subject faxes were profit - for Innate in the form of the compensation they received from doctors and chiropractors for their referral and placement services, and for Nepute in the form of payment for establishment of a wellness program service - then the subject faxes are considered advertisements. *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; *Junk Fax Prevention Act of 2005*, 71 FR 25967-01 ("The Commission concludes that facsimile messages that promote goods or services even at no cost, such as free magazine subscriptions, catalogs, or free consultations or seminars, are unsolicited advertisements under the TCPA's definition. In many instances, 'free' seminars serve as a pretext to advertise commercial products and services."); 47 U.S.C. § 227(a)(5) (The term "unsolicited advertisement" means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise.); *Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, 788 F.3d 218, 222 (6th Cir. 2015) ("So to be an ad, the fax must promote goods or services to be bought or sold, and it should have profit as an aim."); *Exclusively Cats Veterinary Hosp., P.C. v. M/A/R/C Research, L.L.C.*, 444 F. Supp. 3d 775, 782 (E.D. Mich. 2020) ("'The TCPA's definition of "unsolicited

advertisement" applies to any communication that advertises the commercial availability or quality of property, goods or services'"). It is uncontroverted that the "Lunch N' Learns" promoted in the Subject Faxes related to the commercial availability of a service, the connection between doctors and businesses, for which a "referral fee" was charged, and the establishment of a for-profit working future relationship between the doctor and the business.

**E.     Profax's Involvement in, and Knowledge of, the Unlawful Conduct**

The record evidence establishes without possibility of dispute that Profax "broadcast" the Subject Faxes, under the meaning of the TCPA. Nothing in the TCPA exempts broadcasters or third-party service providers from liability.  Indeed, federal regulations clearly provide that a fax broadcaster cannot escape liability where the broadcaster has a "high degree of involvement in" *or* "actual notice of  . . . unlawful activity" and "fails to take steps" to stop the activity. 47 C.F.R. § 64.1200(a)(4)(v).  The record evidence here establishes beyond a doubt that ProFax had both actual notice of *and* a high degree of involvement in the unlawful conduct Plaintiff alleges. ProFax does not cannot dispute that it did not take steps to prevent the unlawful transmissions.

The applicable regulation provides, in pertinent part, states:

> A facsimile broadcaster will be liable for violations of paragraph (a)(4) of this section, including the inclusion of opt-out notices on unsolicited advertisements, if it demonstrates a high degree of involvement in, or actual notice of, the unlawful activity and fails to take steps to prevent such facsimile transmissions.

*Id*.  It is undisputed that Profax was a "facsimile broadcaster" as contemplated within the context of the Regulation, and the evidence has proven the level of Profax's involvement. *See also Accounting Outsourcing, LLC. v. Verizon Wireless Pers. Commc'ns, L.P.*, 329 F. Supp. 2d 789, 806 (M.D. La. 2004) ("[A]t least two courts have interpreted the TCPA to include both fax broadcasters and advertisers. In *Covington & Burling v. International Marketing & Research, Inc.,* the Superior Court of the District of Columbia noted that courts have applied the TCPA to

advertisers as well as fax broadcasters. Significantly, in *Texas v. American Blastfax,* the Western District of Texas wrote, 'It would circumvent the purpose of the TCPA to exempt [a fax broadcaster] from potential liability [under the TCPA] on the theory that it plays no role in sending the advertisements at issue.' The *American Blastfax* court found that by merely 'using a fax machine to send unsolicited advertisements,' a fax broadcaster was engaging in 'the precise conduct outlawed by the TCPA.' This court finds *American Blastfax* 's analysis applicable to advertisers as well. Interpreting the TCPA to exempt either fax broadcasters or advertisers would effectively allow advertisers to make an end-run around the TCPA's prohibitions.")

"'A "high degree of involvement" exists where the broadcaster (1) controls the recipient lists; and/or (2) controls the content of the transmissions.'" *Rinky Dink, Inc. v. Elec. Merch. Sys.*, No. C13-1347-JCC, 2015 WL 778065, at *7 (W.D. Wash. Feb. 24, 2015) *citing Rules and Regulations Implementing the TCPA of 1991,* 68 F.R. 44144–01, 44169 (2003). It is undisputed that Profax had both a high degree of involvement in the creation of the unlawful fax opt-out provision because it created the content of the opt-out notice. Fliers created by Innate, which became the Subject Faxes, were sent to Profax prior to broadcast. (SOF ¶45). The fliers sent by Innate to Profax did not contain any opt-out language. *Id*. Profax would insert the opt-out language into the fliers and then return them to Innate for approval prior to broadcast. (SOF ¶46-49). In one specific instance, in an email, a representative of Innate sent a flier that did not contain any opt out notice to Profax with the request: "Please add the language we discussed regarding opt-out and professionalism". (SOF ¶45). Profax created and supplied the opt-out notice language, placed it on the fliers, and instructed Innate this was necessary and appropriate language. (SOF ¶46-49).

ProFax also managed the list of opt-outs for Innate. This included managing a website and phone number to receive opt-out requests, and assigning a unique PIN number to identify those

that had submitted opt-out requests in response to the faxes ProFax sent for Innate. ProFax produced a list of 1,693 opt-outs requests that had been made in response to faxes it sent for Innate. (SOF ¶56). ProFax represented that the way it knew that the opt-outs on the list were related to Innate was that each were made using the unique PIN assigned to Innate. (SOF ¶46). This PIN appeared on all transmissions ProFax sent on behalf of Innate, but on no other transmissions. *Id.*

The evidence in this case conclusively shows that Profax had a "high degree of involvement" with the illegal Subject Fax and therefore it is appropriate to enter judgment as a matter of law. Profax was involved in the drafting of the deficient opt-out notice and was responsible for maintaining the opt-out recipient list. As such, there can be no dispute about ProFax's high degree of involvement in the unlawful activity described herein.

## VII.    DAMAGES

Private party litigants can seek monetary relief under the TCPA. 47 U.S.C. § 227(b)(3). Under the statute, a private party, or members of a class, may bring an action to "receive $500 in damages for each such violation." 47 U.S.C. § 227(b)(3)(B). The $500 amount is a compensatory award fixed by Congress and does not require proof of intent or motive. *United States v. Dish Network, LLC*, 256 F.Supp.3d 810, 950-51 (D.C. Ill. 2017). Further, if a Court finds that a defendant "willfully or knowingly" violated the provisions of the TCPA, the Court may, in its discretion, increase the amount of the award to $1500 per violation. 47 U.S.C. § 227(b)(3)(C). Here, the violation of the statute was done "willfully and knowingly" in that Profax accepted responsibility for crafting and ensuring the opt-out notice was TCPA compliant, which it was not.

## VIII.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment should be granted.

Respectfully submitted,

KEANE LAW LLC

*/s/ Steven Duke*
Ryan A. Keane, #MO62112
Steven W. Duke #MO68034
7777 Bonhomme Ave, #1600
St. Louis, MO 63105
Phone: (314) 391-4700
Fax: (314) 244-3778
ryan@keanelawllc.com
steve@keanelawllc.com
*Attorneys for Plaintiffs and the Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed via the Court's Electronic Filing System this 1st day of February, 2021, which will send a notice of electronic filing to all counsel of record.

*/s/ Steven Duke*