**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LEVINE HAT CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16-CV-1132-SNLJ |
| | ) | |
| INNATE INTELLIGENCE, LLC, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT PROFAX, INC'S MEMORANDUM OF LAW IN SUPPORT OF**
**<u>MOTION TO DECERTIFY CLASS AND FOR SUMMARY JUDGMENT</u>**


February 1, 2021

Mary Ann L. Wymore, #44061
mlw@greensfelder.com
Dawn M. Johnson, #41991
dmj@greensfelder.com
10 South Broadway, Suite 2000
St. Louis, Missouri 63102
Telephone:  314-241-9090
Facsimile:  314-241-8624

*Attorneys for Defendant ProFax, Inc.*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

STANDARDS OF REVIEW ................................................................................. 2

   I.    The Standard Applicable to Motion for Decertification of the Class ............... 2

   II.   The Standard Applicable to Motion for Summary Judgment. ....................... 4

PLAINTIFF CANNOT SATISFY RULE 23 IN THE WAKE OF THE FCC's
AMERIFACTORS RULING AND PROFAX'S FINANCIAL DISTRESS ............... 5

   I.    Plaintiff Can No Longer Satisfy the Commonality and Typicality
Requirements of Rule 23(a)(2)-(3) in View of New Law and New Technology. ....... 6

   II.   Plaintiff Cannot Establish That a Class Action Is the Superior Method of
Adjudicating This Controversy Under Rule 23(b)(3). ............................................... 9

PROFAX IS ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS ......... 10

   I.    The Innate Fax Is Not an "Unsolicited Advertisement" Under The TCPA. ... 11

   II.   ProFax Did Not Have a High Degree of Involvement with the  Innate Faxes.
13

   III.  The TCPA Violates the Fifth and Eighth Amendments as Applied Here. ... 15

   IV   Plaintiff's Conversion Claim Alleged in Count II Fails As A Matter Of Law.
19

   CONCLUSION ............................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986) ............................................................................ 12

Asher & Simons,
  977 F. Supp. 2d at 449-50 ................................................................... 21

Bishop v. Committee on Prof'l Ethics and Conduct,
  686 F.2d 1278 (8th Cir.1982) ............................................................. 10

BMW of N. Am. Inc. v. Gore,
  517 U.S. 559 (1996) ............................................................... 23, 24, 25

Bradford v. Union Pac. R.R. Co.,
  No. 05-CV-4075, 2007 WL 2893650 (W.D. Ark. Sept. 28, 2007) ...................... 10, 11

Celotex Corp. v. Catrett,
  477 U.S. 317 (1986) ...................................................................... 11, 12

Central Hudson Gas & Electric Corp. v. Pub. Serv. Comm'n,
  447 U.S. 557 (1980) ............................................................................ 15

Dumas v. Albers Med., Inc.,
  No. 03-0640-CV-W-GAF, 2005 WL 2172030 (W.D. Mo. Sept. 7, 2005) .................. 16

Dutton v. Montgomery County,
  94 F. Supp. 2d 663 (D. Md. 2000) ...................................................... 12

E. Maine Baptist Church v. Union Planters Bank, N.A.,
  244 F.R.D. 538 (E.D. Mo. 2007) ......................................................... 10

Edwards v. Emperor's Garden Rest.,
  130 P.3d 1280 (Nev. 2006) ................................................................. 27

Eisen v. Carisle & Jacquelin,
  417 U.S. 156 (1974) ............................................................................ 16

Emmett v. Johnson,
  532 F.3d 291 (4th Cir. 2008) ............................................................. 12

Gen. Tel. Co. of Sw. v. Falcon,
    457 U.S. 147 (1982) ................................................................................... 9

Goodwin v. Conagra Poultry Co.,
    2007 WL 1434905 .................................................................................... 12

Grayned v. City of Rockford,
    408 U.S. 104 (1972) ................................................................................. 19

In the Matter of Amerifactors Financial Group, LLC,
    2019 WL 6712128 ........................................................... 8, 9, 12, 13, 14, 15

In the Matter of Ureach Technologies, Inc.,
    26 FCC Rcd 1821 (2011) .......................................................................... 21

Izsak v. Draftkings, Inc.,
    No. 14-cv-07952, 2016 WL 3227299 (N.D. Ill. June 13, 2016) ................................. 27

Karsjens v. Piper,
    336 F. Supp. 3d 974 (D. Minn. 2018) ......................................................... 10

Lindsay Transmission, LLC v. Office Depot, Inc.,
    No. 4:12-CV-221 CEJ, 2013 WL 275568 (E.D. Mo. Jan. 24, 2013) ....................... 11

Marlo v. United Parcel Serv., Inc.,
    639 F.3d 942 (9th Cir. 2011) ................................................................... 10

Massood v. Fedynich,
    530 S.W.3d 49 (Mo. Ct. App. 2017) ......................................................... 26

Missouri v. American Blast Fax, Inc.,
    196 F. Supp. 2d 920 (E.D. Mo. 2002), rev'd on other grounds, 323 F.3d
    649 (8th Cir. 2003) ................................................................................. 25

Neurocare Inst. of C. Florida, P.A. v. Healthtap, Inc.,
    8 F. Supp. 3d 1362 (M.D. Fla. 2014) ......................................................... 27

Old Town Pizza of Lombard, Inc. v. Corfu-Tasty Gyro's Inc.,
    No. 11–cv–6959, 2012 WL 638765 (N.D. Ill. Feb. 23, 2012) .............................. 27

Paxton v. Union National Bank,
    688 F.2d 552 (8th Cir. 1982) ................................................................... 10

Physicians Healthsource, Inc. v. Allscripts Health Solutions, Inc.,
    254 F. Supp. 3d 1007 (N.D. Ill. 2017) ....................................................... 15

Ries v. Ariz. Beverages USA LLC,
    No. 10–01139 RS, 2013 WL 1287416 (N.D. Cal. Mar. 28, 2013).............................. 10

Rinky Dink, Inc. v. Elec. Merch. Sys.,
    No. C13–1347–JCC, 2015 WL 778065 (W.D. Wash. Feb. 24, 2015) ........................ 21

Robert W. Mauthe, M.D., P.C. v. Millennium Health LLC,
    No. CV 18-1903, 2020 WL 2793954 (E.D. Pa. May 29, 2020) .................................. 18

Roberts v. United States Jaycees,
    468 U.S. 609 (1984)................................................................................................ 19

Rossario's Fine Jewelry, Inc. v. Paddock Publ'ns,
    443 F. Supp.2d 976 (N.D. Ill. 2006) ................................................................... 26, 27

Sample v. Monsanto Co.,
    218 F.R.D. 644 (E.D. Mo. 2003) ............................................................................ 16

Skaff v. Meridien N. Am. Beverly Hills, LLC,
    506 F.3d 832 (9th Cir. 2007).................................................................................... 27

State Farm Mut. Auto Ins. Co. v. Campbell,
    538 U.S. 408 (2003)........................................................................................... 23, 25

Texas v. Am. Blast Fax, Inc.,
    164 F. Supp. 2d 892 (W.D. Tex. 2001)................................................................ 24, 25

Versteeg v. Bennett, Deloney & Noyes, P.C.,
    271 F.R.D. 668 (D. Wyo. 2011) .............................................................................. 17

United States v. Bajakajian,
    524 U.S. 321 (1998)........................................................................................... 24, 26

Webb v. Exxon Mobil Corp.,
    856 F.3d 1150 (8th Cir. 2017) ................................................................................. 10

**Statutes**

Fed. R. Civ. P. 23 ........................................................................................................... 21

Rules and Regulations Implementing the Telephone Consumer Protection
    Act of 1991,
    18 FCC Rcd 14014....................................................................................................... 21

Rules and Regulations Implementing the Telephone Consumer Protection
Act of 1991,
21 FCC Rcd 3787 (Apr. 6, 2006)...................................................................... 20

Telephone Consumer Protection Act, 47 U.S.C. § 22.................................................*passim*

U.S. Const. amend. I............................................................................................. 19

U.S. Const. amend. V ............................................................................ 9, 18, 22, 23

U.S. Const. amend. VIII ............................................... 9, 18, 22, 23, 24, 25, 26

**Other Authorities**

A. Kozinski & S. Banner, Who's Afraid of Commercial Speech?, 76 Va. L.
Rev. 627, 637-47 (1990) ............................................................................... 20

Restatement (Second) of Torts § 222A (1965)................................................... 25

S. Rep. No. 102-178 (1991) ............................................................................... 15

## INTRODUCTION

In the instant class action lawsuit, Plaintiff Levine Hat Co. ("Plaintiff") alleges that Defendants Innate Intelligence, LLC d/b/a Innate Wellness ("Innate"), Nepute Enterprises, LLC ("Nepute") and ProFax, Inc. ("ProFax") sent it and a class of similarly situated persons unsolicited facsimiles in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.[1]  Unlike the typical TCPA defendant, Defendant ProFax is a communications service provider that offers, among other things, fax-related services to customers, including broadcast transmission of facsimiles.[2]  The single fax allegedly received by Plaintiff did not advertise ProFax's products or services or relate to ProFax in any way.  Rather, the fax at issue was an invitation to a free wellness "Lunch n' Learn" hosted by Defendant Innate, which created, controlled and authorized the sending of the fax at issue.  (See Dkt 27-1.)

As discussed more fully below, ProFax moves to decertify the purported class because:  (1) Plaintiff cannot satisfy the commonality and typicality requirements of Fed. R. Civ. P. 23(a)(2) in the wake of the Federal Communications Commission's ("FCC") December 9, 2019, Declaratory Ruling In the Matter of Amerifactors Financial Group,

---

[1] On February 9, 2018, the Court granted Plaintiff's motion to certify a class of Plaintiffs  defined as:  All persons who received a facsimile transmission sent by ProFax, Inc., on behalf of Innate Intelligence LLC or its chiropractic clinics between January 27, 2016 and July 13, 2016, as confirmed by either:  (1) presence on a facsimile transmission log produced by Innate Intelligence LLC in this case showing one or more transmissions "sent" and complete"; or (2) presence on a list of those who opted out from receiving future faxes from Innate Intelligence LLC, produced by ProFax, Inc. in this case.  (See Dkt # 93 at ¶ 5; Dkt # 120, pp. 2-3.)

[2] ProFax disputes that it is a "sender" of the fax(es) at issue for purposes of the TCPA.

LLC, 2019 WL 6712128 (F.C.C.)[3]; and (2) Plaintiff cannot show that a class action is the superior method of adjudicating this controversy against ProFax under Fed. R. Civ. P. 23(b)(3) in view of ProFax's economic distress which would preclude any class recovery should Plaintiff win this lawsuit.

ProFax additionally is entitled to summary judgment on Plaintiff's TCPA claim because (1) the fax allegedly received by Plaintiff did not propose a commercial transaction or describe the commercial availability of any property, good or service and thus is not an "unsolicited advertisement" under the TCPA as a matter of law; (2) ProFax did not have a high degree of involvement in the sending of Innate's faxes at issue; and (3) the TCPA's damages provisions, as applied to the facts of this case, violates ProFax's rights under the Fifth and Eighth Amendments of the United States Constitution.

 ProFax additionally is entitled to summary judgment on Plaintiff's conversation claim because ProFax at no time came into possession of the items allegedly converted, ad any damages suffered by Plaintiff or the class are insufficient to support a conversion claim.

## **STANDARDS OF REVIEW**

### I.    **The Standard Applicable to Motion for Decertification of the Class.**

"Even after a certification order is entered, the [Court] remains free to modify it in the light of subsequent developments in the litigation." Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982); *see also* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or

---

[3] In the Matter of Amerifactors Financial Group, LLC Petition for Expedited Declaratory Ruling  Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Junk Fax Protection Act of 2005.

denies class certification may be altered or amended before final judgment.").

"[W]hether to decertify a class is within the district court's discretion." <u>Karsjens v. Piper</u>, 336 F. Supp. 3d 974, 988 (D. Minn. 2018) (citing <u>Webb v. Exxon Mobil Corp.</u>, 856 F.3d 1150, 1157 (8th Cir. 2017)); <u>see also</u> <u>E. Maine Baptist Church v. Union Planters Bank, N.A.</u>, 244 F.R.D. 538, 541 (E.D. Mo. 2007) ("A district court . . . has the discretion to decertify a class by amending the order granting the certification if the court finds that certification should not have been granted or is no longer appropriate.") (internal quotation marks omitted).

"In considering a defendant's motion for decertification, the court follows the legal standard required for class certification." <u>E. Maine Baptist Church</u>, 244 F.R.D. at 541. "The plaintiff bears the burden of demonstrating that the requirements of Rule 23 have been satisfied." <u>Id.</u> (citing <u>Bishop v. Committee on Prof'l Ethics and Conduct</u>, 686 F.2d 1278, 1288 (8th Cir.1982)). "Specifically, plaintiffs must meet the prerequisites of Rule 23(a) and one additional set of alternative requirements under Rule 23(b)." <u>Id.</u>; <u>see also</u> <u>Ries v. Ariz. Beverages USA LLC</u>, No. 10–01139 RS, 2013 WL 1287416, at *3 (N.D. Cal. Mar. 28, 2013) ("On a motion for decertification, the burden remains on the plaintiffs to demonstrate 'that the requirements of Rules 23(a) and (b) are met.'") (quoting <u>Marlo v. United Parcel Serv., Inc.</u>, 639 F.3d 942, 947 (9th Cir. 2011)).

To be certified under Rule 23, the class initially must satisfy the four prerequisites set forth in Rule 23(a).  <u>Paxton v. Union National Bank</u>, 688 F.2d 552, 559 (8th Cir. 1982); <u>Bradford v. Union Pac. R.R. Co.</u>, No. 05-CV-4075, 2007 WL 2893650, at *4–5 (W.D. Ark. Sept. 28, 2007).  These requirements are met if: (1) the class is so numerous

3

that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); Bradford v. Union Pac. R.R. Co., No. 05-CV-4075, 2007 WL 2893650, at *4–5 (W.D. Ark. Sept. 28, 2007).

In addition to the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a), the class also must qualify under one of the three subdivisions of Rule 23(b).  Lindsay Transmission, LLC v. Office Depot, Inc., No. 4:12-CV-221 CEJ, 2013 WL 275568, at *3 (E.D. Mo. Jan. 24, 2013) (internal citation omitted).  In this case, Plaintiff is seeking certification under Rule 23(b)(3).  (See Dkt. 27, First Am. Compl., ¶¶ 50, 53-54.)  Plaintiff therefore must demonstrate that the "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" *and* that the class action is a "superior method of adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

## II.    The Standard Applicable to Motion for Summary Judgment.

The court properly grants summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (internal quotations omitted). Summary judgment allows courts (1) to identify and dispose of factually unsupported

claims and defenses; and (2) to avoid unnecessary trials where no material factual dispute exists.  Id. at 323-24. Summary judgment **must** be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. Celotex, 477 U.S. at 323.  The nonmoving party may not rely on the mere allegations in the pleadings, but instead "must set forth specific facts showing that there is material issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be a **genuine** issue of **material** fact." Id. at 247–48 (emphasis in original).  The nonmoving party cannot "create a genuine issue of material fact through mere speculation or the building of one inference upon another." Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008). "There must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'" Dutton v. Montgomery County, 94 F. Supp. 2d 663, 665 (D. Md. 2000) (Chasanow, J.) (quoting Anderson, 447 U.S. at 249–50).

### PLAINTIFF CANNOT SATISFY RULE 23 IN THE WAKE OF THE FCC's AMERIFACTORS RULING AND PROFAX'S FINANCIAL DISTRESS

Plaintiff cannot at this time satisfy each of the prerequisites of Rule 23(a).  See Goodwin v. Conagra Poultry Co., 2007 WL 1434905, at *13–15 (holding that plaintiff's action could not be certified as a class action because plaintiffs failed to show commonality, typicality and adequacy of representation). Specifically, the FCC's December 2019 ruling on the Amerifactors Petition made clear that a recipient's online

5

fax service that effectively receives faxes "sent as email over the Internet" and is not itself a "telephone facsimile machine" as defined in the TCPA does not implicate the TCPA. Application of the <u>Amerifactors</u> ruling necessarily will require the court and the parties to conduct complicated mini trials to analyze the technology applicable to the devices on which each class member received Innate's fax(es). Plaintiff also at this time cannot meet the prerequisite of Rule 23(b) that a class action be superior to other available methods of adjudication in view of ProFax's dire financial condition which would preclude any class recovery should Plaintiff prevail in the instant lawsuit. Each of these deficiencies independently mandates decertification of the class herein.

### I. Plaintiff Cannot Satisfy the Commonality and Typicality Requirements of Rule 23(a)(2)-(3) in View of New Law and New Technology.

When the TCPA was enacted in 1991, the justification offered for the inevitable restrictions on speech was the perceived need to prevent the shifting of advertising costs from the sender of a fax to the recipient. Based on technology at the time, facsimile messages were received by a stand-alone fax machine. These machines connected to regular telephone lines—either dedicated to the sending and receipt of faxes or shared with a voice line—and automatically printed every fax received.[4] Moreover, early fax machines had limited transmission speeds, which generally required a minute or more to

---

[4] 47 U.S.C. § 227(a)(3). Although there is no statutory definition for "regular telephone lines" it likely refers to the predominant type of line used in 1991, a copper analog line. Today, digital lines dominate. These lines can transmit many more signals thus reducing the risk of interference. The exclusion of computers from the receiving end, along with the restriction of the fax provisions of the TCPA demonstrates a clear congressional intention to exempt communications received by a computer. Significantly, the statutory restriction to "regular telephone line" in § 227(a)(3) applies only to faxes. *Compare* 47 U.S.C. § 227(b)(1)(B) ("any residential telephone line") *and* § 227(b)(1)(A)(i)-(iii).

receive a single facsimile page and potentially could tie up a telephone line or occupy a fax machine preventing receipt of wanted facsimiles. Thus, the statute made it unlawful "to use any telephone facsimile machine, computer, or other device to send, *to a telephone facsimile machine*, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C) (emphasis added).

Three decades later, there is virtually no harm incurred from receipt of a fax as an email. When the conventional facsimile machine is taken out of the equation, the harms that the TCPA was designed to remedy are no longer present. The FCC recognized this reality, and determined that "an online fax service that effectively receives faxes 'sent as email over the Internet' and is not itself 'equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper" is not a 'telephone facsimile machine' and thus falls outside the scope of the [TCPA's] probation." Amerifactors, 2019 WL 6712128 at ¶3. The FCC further noted that '[o]ur clarification is limited to analysis of online fax services, as informed by the current record, and does not prejudice whether we would arrive at the same conclusion for other types of equipment and services." Id. ¶8. The practical effect of the Amerifactors ruling, therefore, is that identification and examination will need to be made as to the devices and technology utilized by each class member in 2017 to determine whether any fax received even implicates the TCPA.

The FCC's ruling is consistent with judicial precedent recognizing the fax machine's rapidly diminishing relevance because of the combination of computers, the Internet, and the Adobe PDF innovation. As one district court noted:

much has changed since 1991 … [and] the traditional fax machine [has gone] the way of the dinosaur. Most faxes are now received on computer fax servers that allow the recipient to view faxes on their computer and decide whether or not to print the document, reducing the cost to essentially zero.

*Physicians Healthsource, Inc. v. Allscripts Health Solutions, Inc.*, 254 F. Supp. 3d 1007, 1014-15 (N.D. Ill. 2017).

If a recipient received an Innate fax in its email inbox, it is necessary to identify and remove those recipients from the class because such communications do not fall under the TCPA in the wake of <u>Amerifactors</u>.[5]  Further, Plaintiff testified that it received the Innate fax on a conventional fax machine and that it lost a piece paper and some toner as a result. (Fact No. 35; Ex. 4.)  As such, there exists a rift within the purported class. Commonality and typicality are not present as to either the facts or the law, thus necessitating a constitutional inquiry as to each recipient's fax/email technology. Additionally, the purported class here may include recipients whose spam filters blocked receipt of Innate's faxes such that nothing actually arrived in their inboxes.

To rectify this problem, an individual-by-individual analysis is required to determine which recipients were harmed and which were not. Such an inquiry regarding damages is an inquiry on the merits, which the court may not conduct as a part of its class certification determination.  <u>Eisen v. Carisle & Jacquelin</u>, 417 U.S. 156, 177 (1974); <u>see also Sample v. Monsanto Co.</u>, 218 F.R.D. 644, 647 (E.D. Mo. 2003) (explaining that in

---

[5] Any other conclusion would render the TCPA constitutionally infirm as applied for lack of a substantial governmental interest.  <u>See Central Hudson Gas & Electric Corp. v. Pub. Serv. Comm'n</u>, 447 U.S. 557, 564 (1980).  When congress banned unsolicited fax advertising, it was ostensibly trying chiefly to prevent two kinds of perceived harm, occupation of the recipient's fax machines and the cost of paper and toner used to print unsolicited faxes.  S. Rep. No. 102-178 (1991).  Neither harm is present when a fax is received via email.

determining whether the Rule 23 requirements are met, "[t]he court should not . . . decide the merits of the case."); *see also Dumas v. Albers Med., Inc.*, No. 03-0640-CV-W-GAF, 2005 WL 2172030, at *5 (W.D. Mo. Sept. 7, 2005) (noting that a class must "be readily identified without resort to intensive, individualized factual inquiries").

The mini evidentiary hearings necessitated by the commonality and typicality assessments make a class action impractical and unmanageable. "When a court determines that a multitude of mini-trials will be necessary to dispose of individual claims, the court will likely find that common questions do not predominate, and *the need for numerous mini-trials renders the class action unmanageable and not superior*." Newberg on Class Actions § 4.32 at 4-134 (3d ed. 1992) (emphasis added). Thus, the necessity of thousands of mini-trials here mandates that the class be decertified.

## II. Plaintiff Cannot Establish That a Class Action Is the Superior Method of Adjudicating This Controversy Under Rule 23(b)(3).

As revealed in ProFax's uncontroverted confidential financial statements submitted to the Court under seal, ProFax does not have the financial wherewithal to pay a class action settlement or judgment. (Fact No. 30, Ex. 3.) While ProFax was a profitable business before this litigation, its financial situation has worsened steadily and drastically as a result of this lawsuit. (Id.)

The COVID-19 pandemic, which has particularly impacted the area of New York where ProFax is based, has only worsened ProFax's financial situation. (Fact No. 30, Ex. 3; Fact Nos. 33, 34.)

The parties worked for an extended time to try and reach a settlement in this case.

(Fact No. 31.)  On December 23, 2019, following extensive negotiations, the parties filed their Joint Motion for Preliminary Approval of Class Action Settlement Agreement and Notice to Class on December 23, 2019. (Id.; Dkt. 169.)  The Court found that the proposed class settlement was inadequate, allowed the parties to continue negotiations, and ultimately denied the parties' motion for preliminary approval on August 5, 2020. (Fact No. 32; Dkt. 184.)   As ProFax's profit and loss statements conclusively demonstrate, ProFax simply does not have the means at this point to settle this case or withstand a judgment on a class basis.  (Fact No. 30, Ex. 3.)

In light of ProFax's dire financial circumstances, Plaintiff cannot satisfy Rule 23(b)(3), which requires that a class action is the superior method of adjudicating the controversy.  A method is not "superior" if it results in the payment of *nothing* to the proposed class   See Versteeg v. Bennett, Deloney & Noyes*, P.C.*, 271 F.R.D. 668, 673–74 (D. Wyo. 2011) (holding that class action was not superior to other available methods of adjudication because "Defendants have limited financial ability to pay a recovery" and "there is little chance of recovery by individual class members.").  Plaintiff's recalcitrant approach to litigation of its *de minimis* claim for the loss of a single sheet of paper and a little toner on a class basis has done nothing to protect the class.  Instead, it has driven ProFax to financial ruin.  Resultingly, there can be no recovery where the pockets have already been emptied.  There is nothing superior about this approach and decertification for failure to satisfy Rule 23(b)(3) is warranted under the circumstances.

## PROFAX IS ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS

ProFax is entitled to summary judgment as a matter of law on both its TCPA and

conversion claims.  Plaintiff's TCPA claim fails because the Innate fax at issue does not constitute a commercial fax for purposes of the TCPA, and to hold otherwise would render the TCPA unconstitutionally vague as applied to this case.  Further, ProFax did not have a high degree of involvement in connection with the Innate faxes.  Finally, the damages scheme is disproportionate to the harm alleged when applied in a class context and, as such, violates the Fifth and Eighth Amendments.  Plaintiff's conversion claim also fails as a matter of law because there has been no exercise of dominion and control over Plaintiff's personal property.

## I.     The Innate Fax Is Not an "Unsolicited Advertisement" Under The TCPA.

The Innate fax at issue does not constitute an advertisement that describes the "commercial availability or quality of a property, good or service, and thus does not fall within the ambit of the TCPA.  Simply, the Innate fax does not offer or propose a commercial transaction; rather, it simply notified and invited recipients to a free wellness seminar.  (Dkt. 27-1; Fact No. 29, Ex. 1.)  Courts have held that invitations to free seminars do not violate the TCPA.  See e.g. Robert W. Mauthe, M.D., P.C. v. Millennium Health LLC, No. CV 18-1903, 2020 WL 2793954, at *20 (E.D. Pa. May 29, 2020) (finding that "the fax [sent 'to increase awareness of the defendant's education offerings' and inviting recipients to a 'free seminar' lacked any commercial element, [and thus] the court concludes that the fax does not constitute an unsolicited advertisement in violation of the TCPA.")

To hold otherwise would render the TCPA's use of the terms "advertising" and "commercial" constitutionally infirm under the Vagueness Doctrine.  "It is a basic

principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). A law containing "terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application" violates due process. Roberts v. United States Jaycees, 468 U.S. 609, 629 (1984) (citation omitted). Legislative enactments must articulate terms "with a reasonable degree of clarity" to reduce the risk of arbitrary enforcement and to allow individuals to conform their behavior to the requirements of the law. Id.

Vague laws offend three important values. First, laws should give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to law enforcement officials, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Finally, but related, a vague statute may chill the exercise of First Amendment freedoms, as fear of prosecution may cause people to refrain from lawful speech simply because they cannot readily determine whether their speech is unlawful. Grayned, 408 U.S. at 108-09 (1972).

The imprecise definition of an unsolicited facsimile in the TCPA as "any material advertising the commercial availability or quality of any property, goods, or services" does not provide sufficient guidance as to whether Innate's fax inviting community members to a free wellness "Lunch n' Learn" falls within the ambit of the TCPA's

definition.  See A. Kozinski & S. Banner, Who's Afraid of Commercial Speech?, 76 Va. L. Rev. 627, 637-47 (1990) (describing the blurred and elusive distinction between commercial and non-commercial speech as one "with no basis in the Constitution, with no justification in the real world, and that often must be applied arbitrarily in any but the easiest cases").

Here, the Lunch n' Learn flyer was undeniably an invitation is a free event. The principal purpose of that event was is to be educational and to promote community awareness and service the community. (Fact No. 29.)  Nowhere in the faxes does Innate promote the sale of goods, services, or property.  To hold that this is "commercial" activity would unintentionally and impermissibly expand the TCPA's net over a wide variety of educational and community organizations.

## II.    ProFax Did Not Have a High Degree of Involvement with the  Innate Faxes.

Given ProFax's position as the communications platform through which Innate sent its faxes, ProFax can be held liable only if it had a high degree of involvement in connection with Innate's faxing activity.  Although no regulation defines the term "high degree of involvement," the FCC has issued several orders, rules, releases, and consumer guides that identify certain factors as constituting high degree of involvement.  These factors include (1) supplying the fax numbers, or the source of such numbers (e.g., by recommending another company's service to obtain a list of fax numbers), used to transmit the unsolicited advertisements, (2) reviewing and controlling the content of the fax message, (3) making representations about the legality of faxing to those numbers, or

(4) advising a client about how to comply with the fax advertising rules.  See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 21 FCC Rcd 3787, 3808 ¶ 40 (Apr. 6, 2006) ("2006 Release"); Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991, 68 Fed. Reg. 44144, 44169 ¶ 138 (July 25, 2003) ("July 25, 2003 Release"); Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd 14014, 14131 ¶ 195, n.724 (July 3, 2003) ("July 3, 2003 Release"); see also In the Matter of Ureach Technologies, Inc., 26 FCC Rcd 1821, 1823 ¶ 5 (2011) (finding no high degree of involvement where there was no evidence that the facsimile broadcaster "determined the content of faxed messages, provided a source of fax numbers, made representations about the legality of faxing to those numbers, advised a client about how to comply with the fax advertising rules, or had actual notice of unlawful activity.")

Federal courts have likewise held that a "high degree of involvement" "exists where the [facsimile] broadcaster (1) controls the recipient list; and/or (2) controls the content of the transmissions."  Rinky Dink, Inc. v. Elec. Merch. Sys., No. C13–1347–JCC, 2015 WL 778065, at *7 (W.D. Wash. Feb. 24, 2015); see also Asher & Simons, 977 F. Supp. 2d at 449-50 (recognizing that the FCC's rule for facsimile broadcasters "mirrors the FCC's long-standing interpretation of common carrier liability").

Here, the undisputed evidence demonstrates that ProFax did not supply the fax numbers or the source of the fax numbers used to transmit the Innate faxes.  Nor did ProFax determine or control the content of Innate's communication, assist Innate in acquiring or securing fax lists, or provide Innate with a referral source for fax numbers.

Innate was the source of the fax numbers to which Innate's faxes were sent and Innate created the content of the fax.  (Fact Nos. 2-5, 13-14, 18-20, 23-24, 27; Exs. 1, 2.)

Finally, there is no evidence to suggest that ProFax provided legal advice to Innate regarding its fax communications, or that ProFax had actual notice of any alleged unlawful transmission of an Innate fax to Plaintiff or any class member.  Nor is there any evidence that ProFax had any personal knowledge of the fax numbers or identity of the individuals and entities who are alleged to have received the Innate faxes.  In sum, there is no credible evidence to support the notion that ProFax had a high degree of involvement in the transmission of the Innate faxes at issue in this case; thus, ProFax is entitled to summary judgment as a matter of law.

### III.    The TCPA Violates the Fifth and Eighth Amendments as Applied Here.

As applied to this case, the damages provision of the TCPA violates ProFax's due process rights because it is disproportionate to any harm suffered by Plaintiff or the class. Indeed, the contemplated damages dwarf ProFax's ability to pay, even though, as discussed below, any tangible injury to Plaintiff or any class member would be mere pennies.  (Fact No. 30, Ex. 3.)  Although the statutory damages scheme of the TCPA may function in other situations, it does not function under the facts of this case.  Should Plaintiff prevail in this action against ProFax, applying the TCPA's damages scheme in light of ProFax's economic condition inevitably will bankrupt ProFax and result in no payout at all to the class. (Fact No. 30.) Such a "lose-lose" outcome demonstrates that the TCPA's unnecessarily severe damages scheme is unconstitutional as applied to this case.

The TCPA provides that a person or entity injured by a violation of the Act may

"recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3)(B). "If the court finds that the defendant willfully or knowingly" committed a violation, "the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount" otherwise available ($1,500). 47 U.S.C. § 227(b)(3). Here, the Plaintiff class seeks maximum damages for the single Innate fax Plaintiff allegedly received and for each fax allegedly received by each class member.  (Dkt. 27, First Am. Compl. ¶¶ 156, 158, and Prayer for Relief.)  Based on these figures, Plaintiff and the purported class appear to seek somewhere between $4 to $15 million in damages from ProFax, plus attorney's fees, as punishment for Innate's five Lunch n' Learn faxes, four of which were not even transmitted to Plaintiff Levine.

The TCPA's damages provision violates the due process guarantees of the Fifth Amendment because it is grossly disproportionate to any harm that may be suffered. Additionally, the damages provision violates the Eighth Amendment because the fines imposed are grossly excessive.

The Fifth Amendment prohibits deprivation of property without due process.  Due process "prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor."  State Farm Mut. Auto Ins. Co. v. Campbell, 538 U.S. 408, 416 (2003); BMW of N. Am. Inc. v. Gore, 517 U.S. 559, 568 (1996).  "To the extent an award is grossly excessive, it furthers no legitimate purpose and constitutes an arbitrary deprivation of property."  Campbell, 538 U.S. at 417.

The United States Supreme Court has identified three guideposts that courts must

consider when determining whether a penalty violates due process: (1) the reprehensibility of the defendant's conduct; (2) the ratio between the compensatory damage award and the punitive damage award; and (3) the difference between the punitive damage award and the civil or criminal sanctions that could be imposed for comparable misconduct. <u>Gore</u>, 517 U.S. at 575.

Here, the TCPA is unconstitutional because ProFax's conduct is not reprehensible, the ratio of the total award to the alleged loss sought to be compensated far exceeds the permitted range, and there is not a comparable disparity with other enforcement schemes. <u>*See*</u> <u>Gore</u>, 517 U.S. at 575.

In the first instance, it certainly was not "reprehensible" for ProFax to transmit Innate's Lunch n' Learn invitations to recipient fax numbers provided by its customer Innate, and which on their face do not appear to be "advertisements" as they do not propose any commercial transaction.  (Dkt. 27-1; Fact Nos. 18-19.)  Further, there is no allegation of malice or trickery on the part of ProFax.

Additionally, it is indisputable that the actual loss or receipt from unsolicited faxes is *de minimis,* involving at most a cost of two to seven cents in paper and toner.  <u>See, e.g.</u>, <u>Texas v. Am. Blast Fax, Inc.</u>, 164 F. Supp. 2d 892, 900-01 (W.D. Tex. 2001).  The facts cannot justify a potential damages award of $500 to $1,500 per fax – which is roughly 25,000 to 75,000 times the actual cost of receiving a fax, particularly as applied here where Plaintiff is pursuing this action on a class basis against a small business in financial distress.

Plaintiff admitted that his only quantifiable loss is the cost of a single sheet of

paper and toner, both of which are the sorts of *de minimis* loss amounting to mere pennies.  (Fact No. 35, Ex. 4.)  The award sought in this case is far beyond the ratio of four to one, which, as courts have observed, is "close to the line of constitutional impropriety."  Campbell, 538 U.S. at 425.

Finally, the difference between the punitive damage award and the civil or criminal sanctions that could be imposed for comparable misconduct is staggering.  Gore, 517 U.S. at 575.  Plaintiff identified the comparable civil theory in its Complaint, *i.e.*, conversion. (Dkt. 27, First Am. Compl., ¶¶ 175-188.)  "In conversion the measure of damages is the full value of the chattel, at the time and place of the tort."  Restatement (Second) of Torts § 222A (1965).  Thus, in Plaintiff's comparable alleged claim for conversion, each class member who actually received an Innate fax on a conventional fax machine would be entitled only to the value of the allegedly converted toner and paper (again, mere pennies).

For these reasons, the TCPA's damages provision also violates the Eighth Amendment to the United States Constitution, as applied. The Eighth Amendment states that "excessive bail shall not be required, nor excessive fines imposed." U.S. Const. amend. VIII. That clause limits the government's ability "to extract payments, whether in cash or in kind, 'as punishment for some offense.'" United States v. Bajakajian, 524 U.S. 321, 328 (1998). "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." Id. at 334. "If the amount of the forfeiture is grossly disproportional to the gravity of the . . . offense, it is

unconstitutional." Id. at 337.  Such is the case here.

**IV.   Plaintiff's Conversion Claim Alleged in Count II Fails As A Matter Of Law.**

Conversion requires proof of three elements: (1) the plaintiff owned the property or was entitled to possess it; (2) the defendant took possession of the property with the intent to exercise some control over it; and (3) the defendant thereby deprived the plaintiff of the right to possession. Massood v. Fedynich, 530 S.W.3d 49, 57 (Mo. Ct. App. 2017).  Plaintiff cannot meet elements (2) or (3).

Plaintiff's conversion claim hinges on the allegation that Defendants "permanently" misappropriated the class members' fax machines, toner, paper and employee time to Defendants' own use." (Dkt. 27, First Am. Compl., ¶176.)  But there is no evidence that Plaintiff or any class member actually lost possession or use of its fax machine.  Importantly, Plaintiff's paper, ink and toner – the items allegedly converted – never came into ProFax's possession.  Faced with a similar question, one court has held that the sending of an unauthorized fax does not constitute a conversion because the recipient's paper, ink and toner "never came into [defendant's] possession at all." See Rossario's Fine Jewelry, Inc. v. Paddock Publ'ns, 443 F. Supp.2d 976, 980 (N.D. Ill. 2006).

In any event, Plaintiff cannot state an actionable claim for conversion because its alleged loss is de minimis.  Plaintiff Levine received a single one-page fax amounting to mere pennies at best.  Additionally, no other class member could possibly have received more than five single-page Innate faxes.  Thus, any class member's actual damages for

"conversion" would range from zero if any fax was received as an email to 35 cents if any recipient actually received all five Innate faxes on a traditional fax machine. Any such damages are mere trifles that do not support a common law claim for conversion as a matter of law. See Skaff v. Meridien N. Am. Beverly Hills, LLC, 506 F.3d 832, 839-40 (9th Cir. 2007) ("The ancient maxims of *de minimis non curat lex* and *lex non curat de minimis* teach that the law cares not about trifles.").

Numerous courts from other jurisdictions faced with conversion claims pled in tandem with TCPA claims have dismissed those claims based on the *de minimis* doctrine. See, e.g., Izsak v. Draftkings, Inc., No. 14-cv-07952, 2016 WL 3227299, at *7 (N.D. Ill. June 13, 2016); Neurocare Inst. of C. Florida, P.A. v. Healthtap, Inc., 8 F. Supp. 3d 1362, 1368 (M.D. Fla. 2014); Old Town Pizza of Lombard, Inc. v. Corfu-Tasty Gyro's Inc., No. 11–cv–6959, 2012 WL 638765, at *2 (N.D. Ill. Feb. 23, 2012); Rossario's, 443 F. Supp. 2d at 980 (finding that "the ancient maxim '*de minimis non cura Lex*' might well have been coined for this occasion"); Edwards v. Emperor's Garden Rest., 130 P.3d 1280, 1287–88 (Nev. 2006) ("any damage to [plaintiff's] paper and toner that occurred from a single facsimile advertisement was merely technical and so inconsiderable as to require the application of the common-law doctrine *de minimis non curat lex* . . . ."). Plaintiff's conversion claim thus should be dismissed as a matter of law.

## CONCLUSION

For all of these reasons, this Court should grant ProFax's Motion to Decertify the

Class and for Summary Judgment, enter judgment in favor of ProFax on Plaintiff's TCPA and conversion claims, and award ProFax its costs expended in this matter, along with such other and further relief as this Court deems just and proper.

Dated: February 1, 2021

Respectfully submitted,

GREENSFELDER, HEMKER & GALE, P.C.

By     /s/ Mary Ann L. Wymore
　　　Mary Ann L. Wymore, #44061
　　　mlw@greensfelder.com
　　　10 South Broadway, Suite 2000
　　　St. Louis, Missouri 63102
　　　Telephone:  314-241-9090
　　　Facsimile:  314-241-8624

*Attorneys for Defendant ProFax, Inc.*

## CERTIFICATE OF SERVICE

　　The undersigned certifies that on this 1st day of February, 2021, a true and correct copy of the foregoing was filed with the Clerk of the Court to be served by operation of the Court's electronic filing system on all attorneys of record.

　　　　　　　　　　　　　　 /s/ Mary Ann L. Wymore