**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| LEVINE HAT CO., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   No. 4:16-CV-1132-SNLJ |
| | ) |
| INNATE INTELLIGENCE, LLC, | ) |
| *et al.*, | ) |
| | ) |
|     Defendants. | ) |

**DEFENDANT PROFAX, INC'S OPPOSITION**
**TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**INTRODUCTION** ........................................................................................................................5

**LEGAL STANDARD** ..................................................................................................................6

**ARGUMENT** ...............................................................................................................................7

    **I.   ProFax Did Not Send or Have a High Degree of Involvement in Sending the Faxes at Issue.** ........................................................................................7

        A.  ProFax Neither Supplied Innate Recipient Fax Numbers Nor a Referral Source for Such Numbers. ................................................................ 10

        B.  ProFax Controlled Neither the Content of Innate's Fax Messages nor Innate's Recipient List. .......................................................................... 11

        C.  ProFax Did Not Have Actual Knowledge that any of Innate's Faxing Activity Violated the TCPA. ................................................................ 14

    **II.  The Faxes were not "Advertisements" under the TCPA; they were merely Invitations to a free educational and networking event.** ........................... 16

**CONCLUSION** ........................................................................................................................20

**CERTIFICATE OF SERVICE** ................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

Asher & Simons v. j2 Global Canada, Inc,
 977 F. Supp. 2d 544 (D. Md. 2013) .................................................................................. 9, 10

Broad. Music, Inc. v. MWS, LLC,
 No. 4:11CV1481 TIA, 2013 WL 4042205 (E.D. Mo. Aug. 8, 2013) .............................. 7

City of Mt. Pleasant, Iowa v. Associated Elec., Co-Op., Inc.,
 838 F.2d 268 (8th Cir. 1988) .............................................................................................. 7

Hutson v. McDonnell Douglas Corp.,
 63 F.3d 771 (8th Cir 1995) .................................................................................................. 6

Kaminsky v. St. Louis Univ. Sch. of Med.,
 No. 4:05-CV-1112 CDP, 2006 WL 1722268 (E.D. Mo., June 22, 2006) ....................... 7

Mauthe v. National Imaging Associates, Inc.,
 767 Fed. Appx. 246 (3d Cir. 2019) .................................................................................. 16

Phillips Randolph Enterprises, LLC v. Adler-Weiner Research Chicago, Inc.,
 526 F. Supp. 2d 851 (N.D. Ill. 2007) .............................................................................. 16

Rinky Dink, Inc. v. Elec. Merch. Sys.,
 No. C13–1347–JCC, 2015 WL 778065 (W.D. Wash. Feb. 24, 2015) ................. 9, 14, 15

Robert W. Mauthe, M.D., P.C. v. Millennium Health LLC,
 No. CV 18-1903, 2020 WL 2793954 (E.D. Pa. May 29, 2020) ................................... 16

St. Louis Heart Ctr., Inc. v. Nomax, Inc.,
 899 F.3d 500 (8th Cir. 2018) ............................................................................................ 13

Stuart v. Gen. Motors Corp.,
 217 F.3d 621 (8th Cir.2000) .............................................................................................. 7

Taylor v. XRG, Inc.,
 No. 06AP-839, 2007 WL 181642 (Ct. App. Ohio June 21, 2007) ............................... 13

**Statutes**

47 C.F.R. § 64.1200 (a)(3)(vii) ............................................................................................... 8

47 C.F.R. § 64.1200(a)(3)(vii) ................................................................................................ 8

47 C.F.R. § 64.1200(f)(6) ........................................................................................................ 8

47 C.F.R. § 64.1200(f)(8) ........................................................................................................ 8

47 U.S.C. § 227(b)(1) ............................................................................................................. 8

1892804

Telephone Consumer Protection Act, 47 U.S.C. § 227 ...... 5

**Rules**

Fed. R. Civ. P. 56 ...... 6

Fed. R. Civ. P. 56(a) ...... 6

Fed. R. Civ. P. 56(e) ...... 7

In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC No. 95-310, 10 F.C.C.R. 12391 (Aug. 7, 1995) ...... 8

In the Matter of Ureach Technologies, Inc., 26 FCC Rcd 1821 (2011) ...... 9

Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991, 68 Fed. Reg. 44144 (July 25, 2003) ("July 25, 2003 Release") ...... 9

Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd 14014 (July 3, 2003) ("July 3, 2003 Release") ...... 9

Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 21 FCC Rcd 3787 (Apr. 6, 2006) ("2006 Release") ...... 9

1892804

COMES NOW Defendant ProFax, Inc. ("ProFax"), by and through its undersigned counsel, and for its opposition to Plaintiff's Motion for Summary Judgment (Dkt. 199-201) states as follows:

## INTRODUCTION

This is an "unsolicited fax" case brought by Plaintiff Levine Hat Co. ("Plaintiff") against Defendants Innate Intelligence, LLC d/b/a Innate Wellness ("Innate"), Nepute Enterprises, LLC ("Nepute") and ProFax pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Plaintiff seeks to recover millions of dollars on behalf of itself and a class for the alleged unlawful transmission of six commercial facsimiles, only one of which Plaintiff alleges to have received ("Faxes at Issue"). Unlike the typical TCPA case in which claims are asserted against the advertiser, however, Plaintiff is attempting to hold ProFax liable even though none of the Faxes at Issue advertised ProFax's products or services or related to ProFax in any way. Plaintiff added ProFax as a defendant herein because ProFax is the fax service used by Defendant Innate to send Innate's invitations to a free wellness "Lunch n' Learn" hosted by Innate. At all times, however, Innate created, controlled and authorized the sending of the Faxes at Issue.[1] In view of the uncontroverted facts, ProFax has no culpability with respect to any of the Faxes at Issue.

As specifically stated in the arguments below, ProFax is entitled to summary judgment with respect to each of the Faxes at Issue because it is uncontroverted that:

- ProFax was not the "sender" of the Faxes at Issue;
- ProFax, in its capacity as a facsimile broadcaster, did not have a high degree of involvement in the sending of any of the Faxes at Issue;

---

[1] The words "faxes" or "sent" used herein refer to the documents that Plaintiff alleges were "faxes" "sent" by ProFax. ProFax does this for convenience and does not waive any arguments that ProFax was not the "sender" of any of the Faxes at Issue as that term is used under the TCPA. As discussed herein, ProFax specifically disputes that it is a "sender" of the Faxes at Issue under the TCPA.

1892804

- ProFax did not have notice that any of the Faxes at Issue sent by Innate were unsolicited; and

- Innate's Faxes at Issue were invitations to a free educational and networking event, and did not constitute "advertisements" under the TCPA as they did not advertise the commercial availability or quality of a property, good or service.

As discussed in ProFax's Motion to Decertify and for Summary Judgment (Dkt. 215-1, pp. 11-2, 15-19). ProFax also is entitled to summary judgment on the ground that the TCPA is unconstitutional *as applied* to the facts of this case. As applied, the TCPA runs afoul of the due process guarantees of the Fifth Amendment, the Eighth Amendment's prohibition against excessive fines, and the First Amendment's right to free speech. The Act also violates the "void for vagueness" doctrine under the Fifth Amendment.[2]

## LEGAL STANDARD

A court will only grant summary judgment under Fed. R. Civ. P. 56 if the movant adequately shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In its analysis of such a motion, "the court must view the evidence provided in the light most favorable to the nonmoving party to determine whether that evidence does in fact create a genuine issue for trial." Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 775 (8th Cir. 1995). It is the movant's burden to establish "the non-existence of any genuine issue of fact that is material

---

[2] ProFax hereby incorporates by reference as if fully set forth herein its arguments contained in its Motion to Decertify and for Summary Judgment that, as applied to the facts of this case, the TCPA is unconstitutional. (See Dkt. 215-1, pp. 11-12, 15-19.)

to a judgment in its favor." City of Mt. Pleasant, Iowa v. Associated Elec., Co-Op., Inc., 838 F.2d 268, 273 (8th Cir. 1988).

"To be considered on summary judgment, documents must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition that meets the requirements of Fed. R. Civ. P. 56(e). Documents which do not meet those requirements cannot be considered." Broad. Music, Inc. v. MWS, LLC, No. 4:11CV1481 TIA, 2013 WL 4042205, at *2 (E.D. Mo. Aug. 8, 2013) (quoting Stuart v. Gen. Motors Corp., 217 F.3d 621, 635–36 n. 20 (8th Cir.2000)) (electing to "strike the unauthenticated and inadmissible exhibits and [ ] not consider[ing] the exhibits" in ruling on the motion);  see also Kaminsky v. St. Louis Univ. Sch. of Med., No. 4:05-CV-1112 CDP, 2006 WL 1722268, at *1 (E.D. Mo., June 22, 2006) (denying summary judgment for plaintiff's failure to provide "properly authenticated documents in support of his motion").

## ARGUMENT

### I. ProFax Did Not Send or Have a High Degree of Involvement in Sending the Faxes at Issue.

Even if any of the Faxes at Issue were sent by Innate in violation of the TCPA, ProFax cannot be held liable for any of them because ProFax was neither the "sender" of the Faxes at Issue nor had "a high degree of involvement" in connection with Innate's faxes. Plaintiff has the burden to prove that ProFax is either the "sender" of each fax or a facsimile broadcaster that had a high degree of involvement in, or actual notice of, the unlawful faxing activity but failed to take steps to prevent such facsimile transmissions.

7

See 47 U.S.C. § 227(b)(1); 47 C.F.R. § 64.1200 (a)(3)(vii).  Plaintiff cannot meet that burden here.

Plaintiff's threshold argument that ProFax should be liable for any unsolicited facsimiles sent by Innate appears based on the flawed premise that ProFax was the "sender" of the Faxes at Issue for purposes of the TCPA.  It is undisputed that ProFax is not the "sender" of any of the Faxes at Issue.  The Federal Communications Commission ("FCC") has defined the "sender" of the fax as "the person or entity *on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement*."  47 C.F.R. § 64.1200(f)(8) (emphasis added).  None of the Faxes at Issue advertise ProFax's goods or services; nor is there any evidence that any of the Faxes at Issue were sent on behalf of ProFax.

ProFax is merely a communications provider hired by third party customer Innate to send Innate's faxes, similar to a common carrier or other such communications service. It is well-settled that an entity that provides facsimile broadcast services is not a "sender" under the TCPA and is exempt from liability.  See 47 C.F.R. § 64.1200(f)(6) (a "facsimile broadcaster" is a "person or entity that transmits messages to telephone facsimile machines on behalf of another person or entity for a fee.").  In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC No. 95-310, 10 F.C.C.R. 12391, 12407-08 (Aug. 7, 1995).  A facsimile broadcaster can lose this exemption only if it "demonstrates a high degree of involvement in, or actual notice of, the unlawful activity and fails to take steps to prevent" such fax transmission.  47 C.F.R. § 64.1200(a)(3)(vii).  Such is not the case here.

8

1892804

Although no regulation defines the term "high degree of involvement," the FCC has issued several orders, rules, releases, and consumer guides that identify certain factors as evidencing high degree of involvement. These factors include (1) supplying the recipient fax numbers, or a referral source for such numbers; (2) reviewing and controlling the content of the fax message; (3) making representations about the legality of faxing to those numbers; or (4) advising a client about how to comply with fax advertising rules. See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 21 FCC Rcd 3787, 3808 ¶ 40 (Apr. 6, 2006) ("2006 Release"); Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991, 68 Fed. Reg. 44144, 44169 ¶ 138 (July 25, 2003) ("July 25, 2003 Release"); Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd 14014, 14131 ¶ 195, n.724 (July 3, 2003) ("July 3, 2003 Release"); see also In the Matter of Ureach Technologies, Inc., 26 FCC Rcd 1821, 1823 ¶ 5 (2011) (finding no high degree of involvement where there was no evidence that the facsimile broadcaster "determined the content of faxed messages, provided a source of fax numbers, made representations about the legality of faxing to those numbers, advised a client about how to comply with the fax advertising rules, or had actual notice of unlawful activity.")

Federal courts similarly have held that a "high degree of involvement" "exists where the [facsimile] broadcaster (1) controls the recipient list; and/or (2) controls the content of the transmissions." Rinky Dink, Inc. v. Elec. Merch. Sys., No. C13–1347–JCC, 2015 WL 778065, at *7 (W.D. Wash. Feb. 24, 2015); see also Asher & Simons, 977 F. Supp. 2d 544

(D. Md. 2013) (recognizing that the FCC's rule for facsimile broadcasters "mirrors the FCC's long-standing interpretation of common carrier liability").

The uncontroverted, *competent* evidence in this case makes clear that ProFax did not have the requisite high degree of involvement in Innate's faxing activity.

### A. ProFax Neither Supplied Innate Recipient Fax Numbers Nor a Referral Source for Such Numbers.

There is not an iota of evidence that ProFax supplied Innate with any recipient fax numbers. Indeed, the uncontroverted competent evidence establishes that ProFax does not supply customer or lead lists to clients. (ProFax Response to Plaintiff SOF 56 and ProFax Additional Statement of Facts 69.) The uncontroverted facts further establish that Innate acquired a listing of recipient fax numbers from third party Fax List Wholesalers and then provided that list to ProFax. (Dkt. 201, Plaintiff's SOF 37, 38.)

Undaunted in its quest to somehow hold ProFax liable for any unsolicited faxing by Innate, Plaintiff falsely states in its memorandum in support of its MSJ against ProFax that ProFax "recommended that Innate obtain a list of recipients from Fax List Wholesalers." (Dkt. 200, p. 4.) Plaintiff's assertion is belied by its own citations referenced in Plaintiff's SOF 38, which in turn cites certain deposition testimony of Innate's corporate representative Gary Eyler (Plaintiff's Ex. C, at 44:3-9) and a two-page Innate email string (Ex. O). But neither of these citations support the bald allegation that ProFax referred Innate to Fax List Wholesalers. All they establish is that Innate acquired lists of fax numbers from Fax List Wholesalers and then supplied those lists to ProFax. Id.

Plaintiff's false assertion also is disproven by the evidence. Indeed, it is uncontroverted that Innate contacted Fax List Wholesalers *before* communicating with ProFax, and that Fax List Wholesalers actually referred Innate to ProFax. (See ProFax Response to Plaintiff's SOF and Additional Facts 71-73, and Exhibit H thereto.)

**B. ProFax Controlled Neither the Content of Innate's Fax Messages nor Innate's Recipient List.**

There also is no evidence that ProFax controlled the content of Innate's fax messages or Innate's recipient list. Plaintiff's arguments in this regard rely on Plaintiff's distorted recitation of facts and hinge on the faulty premises that ProFax "created" the opt out message contained on Innate's faxes and "managed" Innate's recipient list "opt outs." ProFax did neither.

The uncontroverted facts establish that ProFax distributes its customers' fax messages only at the direction of its customers, who are solely responsible for determining the substance of their fax messages. (See ProFax's Response to Plaintiff's SOF 43-44, 46-49; and Additional Facts 57-60.) ProFax and Innate both acknowledged that ProFax did not and does not determine message content. (Id.) Nor does ProFax customize or design messages for clients. (Id.) In fact, the competent record evidence clearly establishes that the Faxes at Issue were designed by Innate, who hired third party RedMoxy Communications LLC ("RedMoxy") to create the Lunch n' Learn invitations based on a template supplied by Innate to RedMoxy. (See ProFax's Response to Plaintiff's SOF, Additional Facts 61, and Exhibit E thereto.) ProFax unquestionably did not control or even contribute to the substantive content of the Faxes at Issue. (See ProFax's Response to

11

Plaintiff's Statement of Material Fact No. 43-44, and 46-49 and ProFax's Additional Facts 57-61.)

Faced with this reality, Plaintiff relies on uncorroborated, incompetent evidence and ignores any contradictory record evidence to argue that ProFax "drafted and supplied the (legally insufficient) opt-out language" that appears at the bottom of the Faxes at Issue and managed Innate's opt-out list. (Dkt. 201, Plaintiff's SOF 46-49, 56.) Plaintiff also inaccurately states that the flyers Innate sent to ProFax for broadcast did not contain opt-out notices and that they were added by ProFax. (Dkt. 201, Plaintiff's SOF 45, 46.) This is a distortion of the truth. The original template Innate supplied to Red Moxy for Innate's Lunch n' Learn invitation appears to contain opt-out language. (See ProFax's Response to Plaintiff's SOF 43-44, 46-49 and ProFax's Additional Fact 61-62, and Exhibits E and F thereto.) At Innate's request, ProFax merely provided the specific information required to make ProFax's automatic opt-out service work.[3] As discussed below, such an opt-out service does not amount to a high degree of involvement as a matter of law.

As a service to its customers, ProFax offers an automatic interactive voice response ("IVR") system by which customers who utilize ProFax's service can control their communications lists automatically. ProFax's automated IVR system, which was used by

---

[3] "Exhibit P" is central to Plaintiff's motion but does not appear to be "a true and correct copy of Innate Intelligence's document production, Bates Nos. II000164-193" as averred. (See Dkt. 201-1, Dec. ¶ 15.) A comparison of Plaintiff's Exhibit P to Innate's documents bates-labeled II000164-193 as produced by Innate to ProFax suggests that Plaintiff's Exhibit P is inaccurate and includes documents that are not within the specified Bates range. In light of the foundational issues caused by such discrepancies, Plaintiff cannot prove the factual assertions which rely on Exhibit P. For comparison purposes, a copy of ProFax's copy of Innate's Production, Bates Nos. II000164-193, is attached as **Exhibit D** to ProFax's Response to Plaintiff's SOF.)

Innate, necessarily requires a toll-free number, a website, and a unique pin number, which ProFax provides. This is the extent of any opt-out "language" provided to Innate by ProFax.[4] If a recipient of an Innate fax called the toll-free number and followed the prompts, the IVR system would automatically block the number from receipt of future Innate faxes with no involvement or knowledge of ProFax. (See ProFax Response to Plaintiff SOF 56 and ProFax Additional Facts 64-65; also see Profax's Response to Plaintiff's SOF 39 and Additional Fact 71, referencing Innate's response to Plaintiff's Interrogatory No. 14, stating that "Innate was advised orally by 'Jim' at Fax List Wholesalers that the numbers on the lists Innate purchased had all 'opted in' to receiving faxes.".)

Merely providing such a service, even if used by a customer in connection with unsolicited faxing, does not amount to control or a high degree of involvement. See, e.g., Taylor v. XRG, Inc., No. 06AP-839, 2007 WL 181642 *7-8 (Ct. App. Ohio June 21, 2007).

Nor is there any evidence that ProFax otherwise managed Innate's recipient lists. To the contrary, Innate at all times managed its own lists. ProFax never altered Innate's lists unless specifically instructed by Innate to do so. For example, on occasion Innate

---

[4] Plaintiff also argues that the opt-out language, as written, was technically deficient. (Dkt. 200 at 10-11.) Without waiving any arguments as to the sufficiency of the language on any fax, ProFax maintains that Innate was responsible for all message content, including opt-out language, and had complete control and responsibility to determining whether an opt-out notice was required, and/or adequately drafted. In any event, even if the opt-out language on Innate's faxes was deficient, recipients had "means and opportunity to opt-out of receiving future faxes," which is what matters. See St. Louis Heart Ctr., Inc. v. Nomax, Inc., 899 F.3d 500, 504–05 (8th Cir. 2018) (agreeing with district court that despite "[w]hatever technical deficiencies might have appeared in the opt-out notices," such notices nevertheless "convey[ed] to recipients the means and opportunity to opt-out of receiving future faxes") (internal quotation marks omitted).

13

provided ProFax with lists of recipients who had opted out from receiving Innate faxes. On such occasions, ProFax followed Innate's directions and added those numbers to a database to ensure that Innate's fax messages would not be transmitted to those numbers. (See ProFax's Response to Plaintiff's SOF 43-49, and 56; and Additional Facts 63-65, 72-73.)

That ProFax makes its system available to its customers does not supersede the facts that Innate purchased the list of recipient numbers, managed such lists, determined the content of its fax messages, and determined when and to whom to send such messages. Under such circumstance, ProFax did not have a high degree of involvement in the Faxes at Issue.  See Rinky Dink, Inc. v. Elec. Merch. Sys., No. C13-1347-JCC, 2015 WL 778065, at *7 (W.D. Wash. Feb. 24, 2015) (holding defendant's conduct did "not involve editing of any recipient lists or [message] content, and [did] not rise to the level of a 'high degree' of involvement such that TCPA liability [was] appropriate.")

ProFax does not determine whether an opt-out is legally necessary or have any say in its specific language outside of providing these three items. Indeed, ProFax's agreements with Innate state that ProFax does not condone or participate in the sending of unsolicited fax messages. (See ProFax's Response to Plaintiff's SOF, Additional Fact 70, and Exhibit G thereto.)

### C. ProFax Did Not Have Actual Knowledge that any of Innate's Faxing Activity Violated the TCPA.

Plaintiff also erroneously opines that ProFax "knowingly" sent unsolicited faxes merely because Innate acquired a fax list from third party Fax List Wholesalers.  Plaintiff

14

1892804

offers not a shred of competent evidence to support this false notion.  The only competent evidence reveals that Innate believed the list it acquired by Innate from Fax List Wholesalers contained only numbers of persons or entities who had "opted in" to receiving fax messages. (See ProFax's Response to Plaintiff's SOF 39 and Additional Facts 71, referencing Innate's response to Plaintiff's Interrogatory No. 14, stating that "Innate was advised orally by 'Jim' at Fax List Wholesalers that the numbers on the lists Innate purchased had all 'opted in' to receiving faxes.")

Plaintiff also has not produced any evidence whatsoever that supports its bald proposition that ProFax had actual notice that any of the Faxes at Issue violated the TCPA. Plaintiff surmises that "[b]ecause ProFax knew that Innate would be purchasing a list of recipients, as opposed to supplying ProFax with a list of Innate's existing customers or contacts, ProFax necessarily knew that (1) the fax was unsolicited and (2) that Innate and Nepute did not have an established business relationship with the recipients."  Such surmise or inference is wholly unreasonable and devoid of evidentiary support.

Moreover, ProFax's agreement with Innate states that ProFax does not condone or participate in the sending of unsolicited fax messages. (See ProFax's Response to Plaintiff's SOF, Additional Fact 70.)  This fact further cuts against a finding of a high degree of involvement on the part of ProFax.  See Rinky Dink, Inc. v. Elec. Merch. Sys., No. C13-1347-JCC, 2015 WL 778065, at *6 (W.D. Wash. Feb. 24, 2015) (observing that the defendant's "terms of use require[d] that its customers check their own activities for legal compliance.")

Finally, Plaintiff baldly insinuates that ProFax somehow violated the TCPA because some of its customers may have been sued in the past for TCPA violations. (Dkt. 200, p.11.) In support of this absurdity, Plaintiff cites three cases (and baldy suggests there are more) in which ProFax has been "implicated." Plaintiff fails to disclose, however, that ProFax was not a party in any of the cases cited, and merely was the fax service provider. Nor can Plaintiff state that ProFax was even aware of these cases. If any inference is to be drawn, therefore, it should be the reality that ProFax *has never* been found to be a fax service provider with a high degree of involvement in any case.

## II. The Faxes were not "Advertisements" under the TCPA, because they were merely Invitations to a free Educational and Networking Event.

The Lunch n' Learn flyers at issue do not describe the "commercial availability or quality of a property, good or service," and thus they are not "advertisements" under the TCPA. Innate's flyers did not offer or propose a commercial transaction; rather, they simply invited recipients to a free wellness seminar. (Dkt. 201-6; Dkt. 216 ¶ 29.) Courts have held that invitations to free seminars do not violate the TCPA. See e.g. Robert W. Mauthe, M.D., P.C. v. Millennium Health LLC, No. CV 18-1903, 2020 WL 2793954, at *20 (E.D. Pa. May 29, 2020) (finding that fax sent "to increase awareness of the defendant's education offerings" and inviting recipients to a "free seminar…lacked any commercial element, [and thus] the court concludes that the fax does not constitute an unsolicited advertisement in violation of the TCPA."); see also Mauthe v. National Imaging Associates, Inc., 767 Fed. Appx. 246 (3d Cir. 2019) (holding that an unsolicited faxed survey from healthcare management services company was not an advertisement); see also

16

1892804

Phillips Randolph Enterprises, LLC v. Adler-Weiner Research Chicago, Inc., 526 F. Supp. 2d 851, 852–53 (N.D. Ill. 2007) (dismissing TCPA claim because fax inviting business owners to participate in new research study was not "advertising").

The TCPA defines "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services." This does not cover Innate's fax inviting community members to a free wellness "Lunch n' Learn." Plaintiff advances an unreasonable "umbrella organization" theory to suggest that the flyer was commercial in nature; however, a review of the record shows that Plaintiff's argument is unsupported and unavailing.

Specifically, Plaintiff opines that "Innate is an umbrella organization for advertising and managing chiropractic clinics." Plaintiff cites the deposition of Innate's corporate representative, Gary Eyler, at 52:1-10 to support this averment. The full text of the deposition at this citation, along with the question immediately preceding Mr. Eyler's testimony is:

Q   Okay. What other marketing did you do to help these chiropractic clinics grow besides -- you know, putting aside the Lunch N' Learns?

A   **We facilitated the Innate Wellness Center website that allowed them to, you know, list their clinic on it. We -- we hosted the website for a couple of our clients. We -- Innate authored policies and procedures that clinics could adopt to help them in operating their offices. Innate provided them with guidance in how to -- to -- for their procedures when -- you know,**

> **for clients, everything from general operations to marketing and management of their business.**

(See ProFax's Response to Plaintiff's SOF ¶ 11.) That is Plaintiff's only support for its "umbrella organization" claim.

There is nothing in the testimony above showing that Innate is an umbrella organization for other clinics. At best, Plaintiff could state that Innate: (1) allowed some chiropractic clinics to list their websites on Innate's website; (2) provided website services for some chiropractic clinics; (3) provided policies and procedures that clinics might or might not adopt; and (4) provided guidance on general operations, marketing, and business management to clinics, that clinics may or may not take.  (Id.)  Any statement outside of the four propositions outlined here is unsupported by the testimony and/or the product of an unreasonable inference.

Plaintiff also asserts that Innate manages and oversees various chiropractic clinics under its "umbrella," but this leap in logic is unsupported by the record.  Indeed, the evidence cited by Plaintiff shows only that Innate provided certain web services, forms, and general guidance to clinics (items 1-4 enumerated above).  Indeed, Innate testified that it did not control the clinics that hosted Lunch n' Learns, but Plaintiff conveniently ignores that testimony:

> Q   Okay. So I take it Innate directed these other clinics to conduct the Lunch N' Learns, correct?

> **A      Innate -- clinics were not controlled by Innate, so a clinic -- maybe not do a Lunch N' Learn if they don't want to. I mean, they could say no. So there was no control --**
>
> Q      Okay. Well, you said --
>
> **A      -- that Innate had over the clinic.**

(Dkt. 201-4, 50:4-11.)

Plaintiff overstates the record because Innate testified that chiropractor hosts sometimes paid $100 to $300 to Innate for "successful events." (See ProFax's Response to Plaintiff's SOF ¶ 16.) Thus, Plaintiff tries through a series of unreasonable inferences to persuade the Court that there must be some sort of commercial advertisement here. But there is no evidence Innate solicited chiropractor hosts for the Lunch n' Learns *via fax*. Had Innate done so, then *chiropractors* theoretically might have had an actionable TCPA claim against Innate; but such is not the case here.

Unquestionably, the Lunch n' Learn flyers simply were an invitation to local businesses for a free wellness and networking event. The principal purpose of that event was to be educational and to promote community awareness and serve the community. (See ProFax's Response to Plaintiff's SOF, Addition Fact 81.) Nowhere in the Faxes at Issue did Innate promote the sale of goods, services, or property of Itself, ProFax or any other entity. And, despite Plaintiff's unreasonable inferences to the contrary, Innate is not an "umbrella organization" for chiropractic clinics. There is simply no evidence that the flyers at issue described the "commercial availability or quality of a property, good or service." As such, it does not constitute an advertisement for purposes of the TCPA.

## CONCLUSION

Plaintiff's arguments are based on unreasonable inferences and unsupported factual assertions.  The uncontroverted competent record evidence shows that it is ProFax that is entitled to summary judgment, not Plaintiff.  At best, Plaintiff's failed evidence gives rise to triable issues of fact. For these and all of the forgoing reasons discussed above, Plaintiff's motion for summary judgment be denied.

Dated: February 22, 2021                                          Respectfully submitted,

                                                                                        GREENSFELDER, HEMKER & GALE, P.C.

                                                                                        By     /s/ Mary Ann L. Wymore
                                                                                                Mary Ann L. Wymore, #44061
                                                                                                mlw@greensfelder.com
                                                                                                Dawn M. Johnson, #41991
                                                                                                dmj@greensfelder.com
                                                                                                10 South Broadway, Suite 2000
                                                                                                St. Louis, Missouri 63102
                                                                                                Telephone:  314-241-9090
                                                                                                Facsimile:  314-241-8624

                                                                                        *Attorneys for Defendant ProFax, Inc*.


## CERTIFICATE OF SERVICE

The undersigned certifies that on this 22nd day of February, 2021, a true and correct copy of the foregoing was filed with the Clerk of the Court to be served by operation of the Court's electronic filing system on all attorneys of record.

                                                                                          /s/ Mary Ann L. Wymore

1892804