**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**(EASTERN DIVISION)**

|  |  |  |
|---|---|---|
| **LEVINE HAT CO.**, on behalf of itself and all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:16-cv-01132-SNLJ |
| | ) | |
| **INNATE INTELLIGENCE, LLC** et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR**
<u>**SUMMARY JUDGMENT AGAINST DEFENDANT PROFAX**</u>

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ...........................................................................................iii

**INTRODUCTION** ......................................................................................... 1

**PROFAX DOES NOT CONTEST THAT THE OPT-OUT NOTICE IN QUESTION VIOLATES THE TCPA** .............................................................. 2

**PROFAX HAD A HIGH DEGREE OF INVOLVEMENT IN CONNECTION WITH THE SUBJECT FAXES** ....................................................................... 3

**THE SUBJECT FAXES ARE ADVERTISEMENTS AS A MATTER OF LAW**...... 8

**CONCLUSION** ............................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)......................................................................2

*Iverson v. United States*, 973 F.3d 843 (8th Cir. 2020)........................................................6

*Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*, 847 F.3d 92 (2d Cir.
2017).............................................................................................................................9, 10

*Rossley v. Drake Univ.*, 979 F.3d 1184 (8th Cir. 2020) .......................................................3

*Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trustees*, 558 F.3d 731 (8th Cir.2009)..........3

**Other Authorities**

Black's Law Dictionary (11th ed. 2019).................................................................................8

*Merriam-Webster.com Dictionary* .........................................................................................6

**Rules**

Fed. R. Civ. P. 56.................................................................................................................1, 3

**Regulations**

47 C.F.R. § 64.1200(a)(vi) ...................................................................................................3, 7

47 C.F.R. §64.1200(f)(7) .........................................................................................................3

Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of
1991, 68 FR 44144-01 (July 25, 2003) ..............................................................................4

Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991;
Junk Fax Prevention Act of 2005, 71 FR 25967-01 ......................................................8, 9

# INTRODUCTION

ProFax's Response in Opposition to Plaintiffs' Motion for Summary Judgment concedes liability by failing to contest that the opt-out notices on the subject faxes violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").[1]  Instead, ProFax merely attempts – unsuccessfully – to argue that the TCPA does not apply to it.  ProFax further asserts, contrary to law and the uncontested facts of this case, that the subject faxes are not advertisements subject to the TCPA.

ProFax disputes none of the material facts that conclusively establish its liability. ProFax's high degree of involvement regarding the content of the subject faxes is established by uncontested record evidence. ProFax's attempts to dodge the unambiguous evidence that it created and inserted the legally insufficient opt-out notices in the subject faxes are implausible and wholly unsupported by any record evidence. ProFax is therefore undeniably liable as a facsimile broadcaster under the TCPA.

The subject faxes, as a matter of law, are advertisements. The subject faxes

---

[1] Plaintiffs filed three separate Motions for Summary Judgment against the Defendants in this case: ProFax, Inc. (ECF No. 199), Nepute Enterprises, LLC (ECF No. 204), and Innate Intelligence, LLC (ECF No. 209). ProFax was the only party to respond in opposition to Plaintiffs' Motion. *See* ECF No. 229. As such, Plaintiffs are entitled to a grant of summary judgment against Nepute Enterprises, LLC and Innate Intelligence, LLC. Since Plaintiffs' material facts on those two motions are undisputed, they must be taken as true and therefore entry of judgment is appropriate. *See* Fed. R. Civ. P. 56(e) ("Failing to Properly Support or Address a Fact. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) **grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it;** or (4) issue any other appropriate order.") (emphasis added).

advertised meetings intended to establish future profit-driven business relationships between client businesses and chiropractic clinics. The content of the faxes has a direct link to the business interest of Innate, thereby making them advertisements under every legally recognized definition, including that of the FCC. Accordingly, the Court should grant summary judgment in favor of Plaintiffs on Count VIII of their First Amended Class Action Complaint.

## PROFAX DOES NOT CONTEST THAT THE OPT-OUT NOTICE IN QUESTION VIOLATES THE TCPA

ProFax notably *does not contest* that the faxes contained opt-out notices which were deficient under the requirements of the TCPA.[2] Plaintiffs' Memorandum of Law in Support of its Motion for Summary Judgment sets forth, in detail, the three ways the subject faxes' opt-out notice violated the TCPA: they did not contain any fax number for a recipient to submit an opt-out request, they did not inform the recipient that they must submit their own fax number to the sender, and they failed to inform recipients that the sender's failure to comply within a reasonable time would be unlawful.[3] Since ProFax did not address any of these allegations, this Court must take Plaintiffs' undisputed assertions as true.

ProFax has thus forfeited any challenge to these allegations. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("If [a party] does not so respond [to the allegations against it], summary judgment, if appropriate, shall be entered against [the non-responding

---

[2] ECF No. 229 Defendant ProFax, Inc's Opposition to Plaintiff's Motion for Summary Judgment ("Memorandum in Opposition").

[3] See ECF No. 200, Plaintiffs' Memorandum in Support of their Motion for Summary Judgment Against Defendant ProFax, Inc. on Count VIII of Plaintiffs' First Amended Class Action Complaint, pp. 8-11.

party]"); *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir.2009) (issue not raised in response to motion for summary judgment was therefore waived); Fed. R. Civ. Proc. 56(e) (party opposing motion for summary judgment must properly address moving party's assertions of fact). Since this issue is uncontested, it is appropriate for this Court to rule that the opt-out notice of the subject faxes violates the TCPA as a matter of law.

## PROFAX HAD A HIGH DEGREE OF INVOLVEMENT IN CONNECTION WITH THE SUBJECT FAXES

ProFax, as the fax broadcaster of the subject faxes, is liable under the TCPA because it cannot dispute its high degree of involvement in *or* actual notice of the unlawful conduct – either of which is sufficient to hold a fax broadcaster liable.

ProFax is a "facsimile broadcaster" within the definition of the federal regulations implementing provisions of the TCPA.[4] A facsimile broadcaster is liable for violations of the TCPA "including the inclusion of opt-out notices on unsolicited advertisements, if it demonstrates a high degree of involvement in, *or* actual notice, of the unlawful activity and fails to take steps to prevent such facsimile transmissions." 47 C.F.R. § 64.1200(a)(vi) (emphasis added).  Here, there is no genuine dispute that ProFax created the legally insufficient opt-out notices and placed them on the unlawful faxes before transmitting them.[5]

---

[4] 47 C.F.R. §64.1200(f)(7).
[5] "An issue of fact is genuine when a reasonable jury could return a verdict for the nonmoving party on the question." *Rossley v. Drake Univ.*, 979 F.3d 1184, 1186 (8th Cir. 2020) (internal quotations omitted).

"A high degree of involvement might be demonstrated by a fax broadcaster's role in reviewing and assessing the content of a facsimile message." Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991, 68 FR 44144-01 (July 25, 2003). Here, ProFax did more than merely "review and assess" the content of the unlawful faxes; ProFax *actually created and applied* the unlawful opt-out notices to the faxes prior to their broadcast.

ProFax muddies the waters by pointing the finger at a graphic design firm, RedMoxy, which the record evidence shows designed the *unobjectionable* portions of the subject faxes. RedMoxy created the layout of the fax advertisements at the behest of Innate, *but RedMoxy did not include the opt-out notices as part of their design*. As Innate CEO Gary Eyler explained:

> "I would tell [RedMoxy] what I wanted, and then they would put it on the computer in a design program. I would review that, and then we would send that to ProFax for the opt-out notice and addressing the individual at the top."

Deposition of Gary Eyler, June 15, 2017; 89:4-8.[6] RedMoxy plays no part in this analysis; its inclusion is a red herring.

The record is clear that the opt-out notices were added to the unsolicited faxes by ProFax, thereby establishing ProFax's high degree of involvement. ProFax's high degree of involvement is indisputable based on the sworn Request for Admissions answers of Innate's CEO Gary Eyler.[7] The trail is easy to follow; Mr. Eyler, as Innate's CEO, would

---

[6] A full copy of Mr. Eyler's deposition (herein "Eyler Depo") is attached as Exhibit C accompanying ECF No. 201 Plaintiffs' Statement of Uncontroverted Material Facts.
[7] See ECF No. 201 Plaintiffs' Statement of Uncontroverted Material Facts Nos. 46-49, and attached Exhibit Q.

tell RedMoxy what he wanted in Innate's faxes.[8] RedMoxy would do the graphic design and layout. Innate would then send those faxes to ProFax who would craft and place the opt-out notice to the bottom of the faxes before returning them to Innate for approval.[9] Neither Innate nor RedMoxy created the opt-out notices, nor did either of them fashion the language that ProFax eventually inserted.[10] ProFax created the opt-out notices, therefore they controlled content in the subject faxes. Furthermore, Mr. Eyler testified that ProFax was selected as the fax broadcaster based on ProFax's *explicit promise* to Mr. Eyler that ProFax would ensure TCPA compliance by drafting and inserting the proper opt-out notice – which Mr. Eyler was reluctant to alter because Innate was specifically paying ProFax for that service.[11]

ProFax obliquely suggests that RedMoxy or Innate may have added the opt-out language, but this suggestion is unsupported and contrary to the record evidence. ProFax's Statement of Additional Uncontroverted Material Fact ("SOAUMF") ¶ 62 states that "RedMoxy's proposed invitation flyer ***appears*** to include opt-out language." *See* ECF No. 226 p. 23 (emphasis added). ProFax then references Exhibit F. *Id*. But, contrary to ProFax's assertion, Exhibit F, attached to ProFax's SOAUMF, does not contain any opt-out notice

---

[8] Eyler Depo 89:4-8.
[9] ECF No. 201 Plaintiffs' Statement of Uncontroverted Material Facts Nos. 46-49. *See also* Eyler Depo. 34:17-19 "[ProFax] provided the opt-out notice that was on [the subject fax]. We were not given an opportunity to edit or change that opt-out notice."; Exhibit P attached to ECF No. 201 Plaintiffs' Statement of Uncontroverted Material Facts, II 000164 which is an email from Rob Eyler of Innate to Colleen Rose from ProFax that contains the line: "Please add the language we discussed **regarding opt-out** and professionalism". (emphasis added)
[10] *Id*.
[11] Eyler Depo. 34:17-19.

that approaches what the TCPA requires or remotely resembles the final opt-out notice that appeared on the subject faxes. Rather, Exhibit F merely contains a brief "To be removed from our fax list" provision. This language in no way mirrors the eventual, final opt-out notice which ProFax inserted on the subject faxes.[12]  ProFax identified no other evidence or testimony disputing its high degree of involvement. The record evidence, including Innate's Requests for Admission answers[13], and corporate representative testimony[14], conclusively establish that ProFax was highly involved with the content of the subject faxes. ProFax created the unlawful opt-out notices and placed them on the subject faxes; ProFax's feeble attempt to controvert this uncontested evidence fails.

Equally unavailing is ProFax's argument that the subject faxes' opt-out notices were not "content"—an argument that strains credulity. Merriam-Webster defines "content" as "something contained".[15] Neither the TCPA nor the federal regulations contain any contrary definition. *See Iverson v. United States*, 973 F.3d 843, 848 (8th Cir. 2020) ("Because the term is not statutorily defined, we consider its ordinary dictionary

---

[12] Exhibit F contains the language, "To be removed from our fax list please call (855) 487-5469 or email info@innatewellnesscenters.com". This is notably dissimilar from the opt-out language contained on the subject faxes at issue in this case. The subject faxes carried the non-TCPA compliant opt-out language of, "To opt out from future faxes, go to www.removemyfaxnumber.com and enter PIN# 17204, or call 800-321-4433. The recipient may make a request to the sender not to send any future faxes and that failure to comply with the request within 30 days is unlawful." *See* Pltfs. Ex. E. accompanying ECF No. 201 Plaintiffs' Statement of Uncontroverted Material Facts,

[13] Attached as Exhibit Q accompanying ECF No. 201 Plaintiffs' Statement of Uncontroverted Material Facts.

[14] Attached as Exhibit C accompanying ECF No. 201 Plaintiffs' Statement of Uncontroverted Material Facts

[15] "Content." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/content. Accessed 9 Mar. 2021.

definition.") The opt-out notice is "something contained" within the fax and therefore the opt-out notice is part of the content of the faxes. Because it is unquestionable that ProFax placed, supplied, and created the opt-out language, which the TCPA requires be included, ProFax had a high degree of involvement in the content of the fax messages. Accordingly, ProFax is liable under the TCPA.

ProFax tries to distance itself from its high degree of involvement with the content of the subject faxes by rebutting two arguments that Plaintiffs do not make: that ProFax was the "sender" of the faxes, and ProFax provided the recipient list to which the faxes were broadcast.[16] First, Plaintiffs do not allege that ProFax was the "sender" of the faxes as defined by the TCPA.  To the contrary, Plaintiffs specifically explained that Innate is the "sender" of the subject faxes, not ProFax. *See* ECF Doc. 210, <u>Plaintiff's Memorandum in Support of their Motion for Summary Judgment against Defendant Innate Intelligence</u>, LLC pp. 13-14. ProFax, as Plaintiffs allege, and ProFax concedes, was the "broadcaster" of the subject faxes, thereby triggering the liability provisions of 47 C.F.R. § 64.1200(a)(4)(vi)[17]. Second, Plaintiffs do not allege that ProFax provided Innate with the recipient list to which the subject faxes were broadcast. Plaintiffs' Statement of Material Facts asserts – and ProFax admits – that the list of fax numbers were purchased from Fax

---

[16] Memorandum in Opposition, pp. 8 and 11-12.

[17] "A facsimile broadcaster will be liable for violations of paragraph (a)(4) of this section, including the inclusion of opt-out notices on unsolicited advertisements, if it demonstrates a high degree of involvement in, or actual notice of, the unlawful activity and fails to take steps to prevent such facsimile transmissions." 47 C.F.R. § 64.1200(a)(4)(vi).

List Wholesalers.[18] ProFax is liable as a fax broadcaster because ProFax controlled the content of the subject faxes; ProFax created and inserted the deficient opt-out notices prior to transmission.    Moreover, because it is indisputable that ProFax created the legally deficient opt-out notices, ProFax had actual notice of the violations of the TCPA. *ProFax was the author of the statute-violating opt-out notices*. ProFax therefore necessarily had actual notice of the unlawful conduct.[19] ProFax may claim ignorance of the requirements of the TCPA, but "ignorance of the law is no excuse". *United States v. Int'l Mins. & Chem. Corp.*, 402 U.S. 558, 562 (1971).

## THE SUBJECT FAXES ARE ADVERTISEMENTS AS A MATTER OF LAW

ProFax's arguments that the subject faxes were not advertisements because they were "merely invitations to a free educational and networking event" is directly contrary to law and to the facts of this case.  In 2006, the Federal Communications Commission's ("FCC") amended its rules on unsolicited fax advertisements and addressed certain issues raised in petition for reconsideration of a 2003 Report and Order concerning the TCPA. Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005, 71 FR 25967-01. The FCC defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any

---

[18] See ECF Doc. 226, Defendant ProFax, Inc.'s Response to Plaintiffs' Statement of Uncontroverted Material Facts and Statement of Additional Material Facts, ¶ 37 and 38, p. 14.
[19] "Actual notice: Notice given directly to, or received personally by, a party." NOTICE, Black's Law Dictionary (11th ed. 2019).

property, goods, or services which is transmitted to any person without the person's prior express invitation or permission, in writing or otherwise." *Id*. at 25972. One area specifically addressed by the FCC were "Offers for Free Goods and Services and Informational Messages" – exactly like what the subject faxes from Innate offered. The FCC concluded:

> [F]acsimile messages that promote goods or services even at no cost, such as free magazine subscriptions, catalogs, ***or free consultations or seminars***, are unsolicited advertisements under the TCPA's definition. In many instances, "free" seminars serve as a pretext to advertise commercial products and services. Similarly, "free" publications are often part of an overall marketing campaign to sell property, goods, or services. For instance, while the publication itself may be offered at no cost to the facsimile recipient, the products promoted within the publication are often commercially available. Based on this, it is reasonable to presume that such messages describe the "quality of any property, goods, or services.

*Id*. (emphasis added).        ProFax concedes that the subject faxes were "an invitation to local businesses for a free wellness and networking event" thereby putting the subject faxes squarely within the FCC's definition of "unsolicited advertisements". <u>Memorandum in Opposition</u> p. 19.

The subject faxes were advertisements because, as the record evidence conclusively demonstrates, they were designed to generate business for Innate. An unsolicited fax promoting a seminar is an advertisement where there is a "commercial nexus to a firm's business, i.e., its property, products, or services". *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*, 847 F.3d 92, 96 (2d Cir. 2017). The Second Circuit illustrated this nexus with two examples:

> If a complaint alleged that the Handy Widget Company funded a professorship at a local law school in the name of its deceased founder and

faxed invitations on its letterhead to an inaugural lecture entitled "The Relevance of Greek Philosophers to Deconstructionism," the complaint would not state a claim under the TCPA because the Handy Widget Company is not in the business of philosophical musings. In contrast, if the Handy Widget Company faxed invitations to a free seminar on increasing widgets' usefulness and productivity, a claim under the TCPA would be validly alleged. Of course, the Handy Widget Company could rebut at the summary judgment stage with evidence showing that it did not feature its products or services at the seminar.

*Id.* at 97.

Here, the subject faxes promoted a "Lunch n' Learn on Stress Management".[20] The purpose of these faxes was to generate interest in and clients for Innate's profit-making businesses and those of its clients, including Nepute.[21] In 2016, at the time the subject faxes were sent, Innate – operating under the name Innate Wellness Centers ("IWC") – ran twelve chiropractic offices in four markets across the United States.[22] The offices were "family wellness practices" and IWC was "strategically positioned" within the "business community to run onsite wellness programs".[23] Innate considered the Lunch n' Learns to be "sales opportunities".[24] Innate would make between $100 and $300 from chiropractors who would attend the Lunch n' Learns at local businesses.[25] Innate's intent with the "Lunch N' Learn" program was that businesses who would accept the offer for the "Lunch N'

---

[20] Exhibit E attached to ECF No. 201 Plaintiffs' Statement of Uncontroverted Material Facts.
[21] See Exhibit B "Partnership Agreement" between Nepute and Innate attached to ECF No. 201 Plaintiffs' Statement of Uncontroverted Material Facts.
[22] Exhibit D attached to ECF No. 201 Plaintiffs' Statement of Uncontroverted Material Facts, II 000322.
[23] *Id.*
[24] ECF No. 201 Plaintiffs' Statement of Uncontroverted Material Facts ¶ 15.
[25] ECF No. 201 Plaintiffs' Statement of Uncontroverted Material Facts ¶ 16.

Learn" programs would implement a full wellness program which would involve staffing the office with doctors.[26] Therefore, the "free services" promoted within the subject faxes contained the direct link the Second Circuit discussed in *Physicians Healthsource* thereby making them advertisements, despite the enticement of "free" services.

## CONCLUSION

This Court should grant Plaintiffs' Motion for Summary Judgment on Count VIII of their Amended Complaint because the undisputed facts demonstrate that ProFax, in its role as a fax broadcaster, violated the TCPA because it had a high degree of involvement and actual notice of faxes which contained statutorily deficient opt-out notices. ProFax does not contest that the language of the opt-out notices violates the TCPA. The record evidence indisputably shows that ProFax drafted and inserted the deficient opt-out notices on the subject faxes, which constitutes a high degree of involvement and actual notice of unlawful activity. Additionally, the subject faxes were unquestionably advertisements because they were intended to establish profitable business relationships – for which Innate was paid – between local businesses and local chiropractic wellness clinics. For these reasons, and the reasons stated herein, the Court should grant Plaintiffs' motion.

---

[26] ECF No. 201 Plaintiffs' Statement of Uncontroverted Material Facts ¶ 17.

11

Dated: March 11, 2021              Respectfully submitted,

KEANE LAW LLC

By:  */s/ Steven Duke*
Ryan A. Keane, # 62112MO
Steven Duke, # 68034MO
7777 Bonhomme Ave, Ste 1600
St. Louis, MO 63105
Ph: (314) 391-4700
Fx: (314) 244-3778
ryan@keanelawllc.com
steve@keanelawllc.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERRVICE

The undersigned certifies that on this 11th day of March 2021, a true and correct copy of the foregoing was filed with the Clerk of the Court to be served by operation of the Court's electronic filing system on all attorneys of record.

/s/ Steven Duke