UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LEVINE HAT CO., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:16-CV-1132-SNLJ |
| | ) |
| INNATE INTELLIGENCE, LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |

### PROFAX, INC.'S TRIAL BRIEF

ProFax, Inc. ("ProFax"), by its attorneys, respectfully submits its Trial Brief:

**I.  INTRODUCTION.**

This is a Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, case in which Plaintiff Levine Hat Co. ("Plaintiff") seeks statutory damages and attorneys' fees from ProFax for allegedly exercising a "high degree of involvement" in determining the content of free wellness "Lunch n' Learn" invitations sent by Defendant Innate Intelligence, LLC d/b/a Innate Wellness ("Innate") to Plaintiff and other similarly situated persons.

Because the TCPA generally exempts fax "broadcasters" such as ProFax from liability, a key dispute in this case is whether ProFax exercised a "high degree of involvement" in sending the fax(es) at issue. Plaintiff alleges that ProFax had a high degree of involvement based on its provision of opt-out services to Defendant Innate. The exemption does not apply when a broadcaster exercises a high degree of involvement.

1902569

Thus, the jury must determine whether ProFax exercised a high degree of involvement in the fax(es) at issue.[1]

Another key dispute is whether Defendant Innate's free wellness Lunch n' Learn invitations are "unsolicited advertisements" under the TCPA. Faxes that propose a commercial transaction or describe the commercial availability of property, goods, or services are "unsolicited advertisements" governed by the TCPA. However, faxes that do *not* propose commercial transactions and do *not* describe the commercial availability of property, goods, or services are *not* governed by the TCPA. Thus, the jury must determine that the Lunch n' Learn invitations proposed a commercial transaction or described the commercial availability of property, goods, or services to find TCPA liability.[2]

Lastly, Plaintiff alternatively alleges that ProFax and the other defendants converted Plaintiff's and class members' ink and toner by sending the fax(es) at issue. The disputed fact issue under this claim is whether ProFax exercised "dominion and control" over such ink and toner.[3]

---

[1] ProFax has argued in pending motions that it did not exercise a high degree of involvement as a matter of law, and that no genuine issue of material fact exists on this issue. (See Dkt. 220 at 13-15; Dkt. 229 at 7-16; Dkt. 239 at 15-24.)

[2] Invitations to free wellness Lunch n' Learn seminars are not unsolicited advertisements as a matter of law, and no genuine material fact disputes exist to preclude the grant of summary judgment to ProFax on this basis. (See Dkt. 220 at 11-13; Dkt. 229 at 16-19; Dkt. 239 at 24-25.)

[3] Plaintiff's conversion claim fails as a matter of law and should be dismissed with prejudice. (See Dkt. 220 at 19-20; Dkt. 239 at 25-26.)

## II. ARGUMENT.

### A. ProFax Did Not Have a High Degree of Involvement in the Innate Faxes.

Given ProFax's position as the communications platform through which Innate sent its faxes, ProFax can be held liable only if it had a high degree of involvement in connection with Innate's faxing activity. Although no regulation defines the term "high degree of involvement," the FCC has issued several orders, rules, releases, and consumer guides that identify certain factors as constituting high degree of involvement. These factors include (1) supplying the fax numbers or a referral source for such numbers used to transmit the unsolicited advertisements (*e.g.*, by recommending another company's service to obtain a list of fax numbers), (2) reviewing and controlling the content of the fax message, (3) making representations about the legality of faxing to those numbers, or (4) providing legal advice to a customer about how to comply with the fax advertising rules. See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 21 FCC Rcd 3787, 3808 ¶ 40 (Apr. 6, 2006) ("2006 Release"); Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991, 68 Fed. Reg. 44144, 44169 ¶ 138 (July 25, 2003) ("July 25, 2003 Release"); Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd 14014, 14131 ¶ 195, n.724 (July 3, 2003) ("July 3, 2003 Release"); see also In the Matter of Ureach Technologies, Inc., 26 FCC Rcd 1821, 1823 ¶ 5 (2011) (finding no high degree of involvement where there was no evidence that the facsimile broadcaster "determined the content of faxed messages, provided a source of fax numbers, made representations about the legality of faxing to

3

those numbers, advised a client about how to comply with the fax advertising rules, or had actual notice of unlawful activity.")

Federal courts likewise have held that a "high degree of involvement" "exists where the [facsimile] broadcaster (1) controls the recipient list; and/or (2) controls the content of the transmissions." Rinky Dink, Inc. v. Elec. Merch. Sys., No. C13–1347–JCC, 2015 WL 778065, at *7 (W.D. Wash. Feb. 24, 2015); see also Asher & Simons, 977 F. Supp. 2d at 449-50 (recognizing that the FCC's rule for facsimile broadcasters "mirrors the FCC's long-standing interpretation of common carrier liability").

Evidence will demonstrate that ProFax did not supply fax recipient numbers to Innate or provide Innate with a referral source for obtaining fax numbers. Nor did ProFax determine or control the content of Innate's communications. Rather, Innate was the source of the fax numbers to which Innate's faxes were sent, and Innate created the content of the fax.

There is no admissible evidence to suggest that ProFax provided legal advice to Innate regarding its fax communications. Innate, through its corporate representative Gary Eyler, claimed that a ProFax employee verbally stated that ProFax would ensure 'legal compliance,' without any proof for this out-of-court statement other than his own self-serving recollection. It is textbook hearsay offered to prove the truth of the matter asserted (*i.e.*, that ProFax assumed responsibility for TCPA compliance) and, moreover, is belied

by admissible non-hearsay evidence, such as the terms of Innate's written agreement with ProFax (which Mr. Eyler personally signed but claims not to have read).[4]

Indeed, ProFax's agreement with Innate states that ProFax does not condone or participate in the sending of unsolicited fax messages. This fact cuts against a finding of a high degree of involvement on the part of ProFax. See Rinky Dink, Inc. v. Elec. Merch. Sys., No. C13-1347-JCC, 2015 WL 778065, at *6 (W.D. Wash. Feb. 24, 2015) (observing that the defendant's "terms of use require[d] that its customers check their own activities for legal compliance.")

As will be discussed further in Section B below, ProFax did not have actual knowledge that any of Innate's faxing activity might later be deemed "unsolicited advertisements" under the TCPA. Facially, the invitations concern a free educational opportunity and, to a reasonable person, would not appear to describe the commercial availability or quality of property, goods, or services. Innate provided the recipient list to ProFax, and Innate believed and testified that each number on that list had "opted in" to receiving fax messages. Innate further testified that it came up with the Lunch n' Learn idea and developed the plan to send the invitations by fax. Innate agreed in its contract with ProFax that it would not engage in the transmission of unsolicited advertisements, and nothing Innate said or provided to ProFax put ProFax 'on notice' that Innate's wellness invitations might violate the TCPA.

---

[4] ProFax has filed, contemporaneously herewith, a Motion *in Limine* concerning Plaintiff's anticipated attempt to introduce inadmissible hearsay evidence on this topic.

5

1902569

Evidence will further establish that ProFax distributes its customers' fax messages at the direction of its customers, who are solely responsible for determining the substance of their messages. ProFax and Innate testified and agreed that ProFax did not and does not determine message content. Nor does ProFax customize or design messages for clients. The faxes at issue were designed by Innate, who hired third party RedMoxy Communications LLC ("RedMoxy") to create the Lunch n' Learn invitations based on a template supplied by Innate to RedMoxy. ProFax did not control or contribute to the substantive content of the communications.

Plaintiff argued on summary judgment and will likely argue at trial that ProFax drafted and supplied the opt-out language that appears at the bottom of the faxes at issue, claiming that this counts as 'content.' However, evidence will show that the original template Innate supplied to Red Moxy for Innate's Lunch n' Learn invitation already appears to contain opt-out language. In fact, ProFax's only 'contribution' to the faxes at issue were a toll-free number, website URL, and pin number (which were added at Innate's request and direction). These three items gave recipients an easy and efficient way to opt out of future messages using an automatic interactive voice response ("IVR") system. ProFax did not and does not determine whether opt-out notices are required, provide legal advice on such topics, or have any say in specific opt-out language outside of providing these three items that the IVR system requires.

ProFax offers use of this IVR system to customers. Customers who use this service can control their communications lists automatically. ProFax's automated IVR system, which was used by Innate, necessarily requires a toll-free number, website URL, and pin

1902569

number. This is the extent of the 'opt-out language' provided to Innate. If a recipient of an Innate fax called the toll-free number and followed the prompts, the IVR system would automatically block all future Innate faxes with no involvement or knowledge of ProFax. Providing this service, even if used by a customer in connection with unsolicited faxing, does not amount to control or a high degree of involvement. See, e.g., Taylor v. XRG, Inc., No. 06AP-839, 2007 WL 181642 *7-8 (Ct. App. Ohio June 21, 2007).

Evidence will also show that Innate managed its own recipient lists. ProFax never altered Innate's lists unless specifically instructed by Innate to do so. For example, on occasion Innate provided ProFax with lists of recipients who had opted out of receiving Innate faxes. On such occasions, ProFax followed Innate's directions and added those numbers to a database to ensure that Innate's fax messages would not be transmitted to those numbers.

That ProFax makes its system available to its customers does not supersede the facts that Innate purchased the list of recipient numbers, managed those lists, determined the content of the fax messages at issue, and determined when and to whom to send such messages. Under such circumstances, ProFax did not have a high degree of involvement in the faxes at issue. See Rinky Dink, Inc. v. Elec. Merch. Sys., No. C13-1347-JCC, 2015 WL 778065, at *7 (W.D. Wash. Feb. 24, 2015) (holding defendant's conduct did "not involve editing of any recipient lists or [message] content, and [did] not rise to the level of a 'high degree' of involvement such that TCPA liability [was] appropriate.")

1902569

### B. The Innate Fax Is Not an "Unsolicited Advertisement" Under The TCPA.

The TCPA defines "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services." Because Innate's free wellness Lunch n' Learn invitations did not describe the commercial availability or quality of a property, good or service, they are not TCPA "advertisements."

Courts have held that invitations to free seminars do not violate the TCPA for this reason. See e.g. Robert W. Mauthe, M.D., P.C. v. Millennium Health LLC, No. CV 18-1903, 2020 WL 2793954, at *4, *20 (E.D. Pa. May 29, 2020) (fax sent "to increase awareness of the defendant's education offerings" and inviting recipients to a "free seminar" consequently "lacked any commercial element, [and thus] the court conclude[d] that the fax [did] not constitute an unsolicited advertisement in violation of the TCPA"); see also Mauthe v. National Imaging Associates, Inc., 767 Fed. Appx. 246 (3d Cir. 2019) (holding that an unsolicited faxed survey from healthcare management services company was not an advertisement); see also Phillips Randolph Enterprises, LLC v. Adler-Weiner Research Chicago, Inc., 526 F. Supp. 2d 851, 852–53 (N.D. Ill. 2007) (dismissing TCPA claim because fax inviting business owners to participate in new research study was not "advertising"). Whether the Innate faxes are "unsolicited advertisements" under the TCPA will be a question for the factfinder unless the Court grants summary judgment to ProFax on this issue prior to trial as a matter of law.

8

### C. Plaintiff Cannot Prove the Elements or Damages on Its Conversion Claim.

Conversion requires proof of three elements: (1) the plaintiff owned the property or was entitled to possess it; (2) the defendant took possession of the property with the intent to exercise some control over it; and (3) the defendant thereby deprived the plaintiff of the right to possession. Massood v. Fedynich, 530 S.W.3d 49, 57 (Mo. Ct. App. 2017). As discussed in ProFax's Motion to Decertify Class and for Summary Judgment, Plaintiff cannot meet elements (2) or (3). (See Dkt. 220 at 19-20; Dkt. 239 at 25-26.)

Plaintiff's conversion claim hinges on the allegation that Defendants "permanently" misappropriated the class members' fax machines, toner, paper and employee time to Defendants' own use." (Dkt. 27, First Am. Compl., ¶176.) But there is no evidence that Plaintiff or any class member actually lost possession or use of its fax machine. Importantly, Plaintiff's paper, ink, and toner – the items allegedly converted – never came into ProFax's possession. Faced with a similar question, one court has held that the sending of an unauthorized fax does not constitute a conversion because the recipient's paper, ink and toner "never came into [defendant's] possession at all." See Rossario's Fine Jewelry, Inc. v. Paddock Publ'ns, 443 F. Supp.2d 976, 980 (N.D. Ill. 2006).

In addition to falling short of the required elements, Plaintiff's alleged conversion damages are *de minimis*. As the evidence will show, Plaintiff received a single one-page fax amounting to mere pennies at best. Additionally, no other class member could possibly have received more than five single-page Innate faxes. Thus, any class member's actual damages for "conversion" would range from zero (if the fax was received as an email) to

9

1902569

35 cents (if any recipient actually received all five Innate faxes on a traditional fax machine). Any such damages are mere trifles that do not support a common law claim for conversion as a matter of law. See Skaff v. Meridien N. Am. Beverly Hills, LLC, 506 F.3d 832, 839-40 (9th Cir. 2007) ("The ancient maxims of *de minimis non curat lex* and *lex non curat de minimis* teach that the law cares not about trifles.").

### III.   CONCLUSION.

The evidence to be presented at trial of this matter will establish that: (1) ProFax did not exercise a high degree of involvement in the Innate faxes; (2) Innate's free wellness Lunch n' Learn invitations are not unsolicited advertisements under the TPCA; and (3) Plaintiff cannot prove the elements of its conversion claim or show non-*de-minimis* damages in connection with that claim.

Dated: May 7, 2021                                           Respectfully submitted,

                                                             GREENSFELDER, HEMKER & GALE, P.C.

                                                             By    /s/ *Mary Ann L. Wymore*
                                                                   Mary Ann L. Wymore, #44061
                                                                   mlw@greensfelder.com
                                                                   Peter W. Mueller, #70262
                                                                   pmueller@greensfelder.com
                                                                   10 South Broadway, Suite 2000
                                                                   St. Louis, Missouri 63102
                                                                   Telephone:  314-241-9090
                                                                   Facsimile:  314-241-8624

                                                             *Attorneys for Defendant ProFax, Inc*.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on this 7th day of May, 2021, a true and correct copy of the foregoing was filed with the Clerk of the Court to be served by operation of the Court's electronic filing system on all attorneys of record.

                                          /s/ *Mary Ann L. Wymore*