## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| LEVINE HAT CO., on behalf of itself and all other similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 4:16-cv-01132 SNLJ |
| INNATE INTELLIGENCE, LLC, et al., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Levine Hat Co. filed this lawsuit against defendants Innate Intelligence LLC d/b/a Innate Wellness Centers ("Innate"), Nepute Enterprises LLC ("Nepute"), and ProFax, Inc.[1] alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").  Plaintiff sought and obtained class certification.  After a lengthy period of discovery and failed settlement negotiations, the plaintiff moved for summary judgment against the three defendants.  Only defendant ProFax has responded in opposition.  Defendant ProFax also moved to decertify the class and for summary judgment.

### I.    Factual Background

The following facts are undisputed except where indicated.  Defendant Innate is an umbrella organization for advertising and managing chiropractic clinics, and it operates 12 chiropractic offices in four markets across the United States.  On July 5, 2016,

---

[1] Plaintiff also named several other entities and individuals as defendants, but those defendants have been dismissed.

1

defendant Innate, through facsimile broadcaster defendant ProFax, sent plaintiff a fax advertising "a FREE Lunch 'n Learn on Stress Management for your employees."  The following notice appears at the bottom of the fax:

> To opt out from future faxes go to www.removemyfax
> number and enter PIN# 17204, or call 800-321-4433. The
> recipient may make a request to the sender not to send any
> future faxes and failure to comply with the request within
> 30 days is unlawful.

Defendant Nepute operates several chiropractic clinics in St. Louis, Missouri and was among the chiropractors that partnered with Innate to facilitate the creation of the onsite wellness programs with businesses who responded to Innate's Lunch N' Learn faxes. Plaintiff contends that Innate contracted with defendant ProFax to send tens of thousands of unsolicited fax advertisements to persons with whom Innate had no preexisting relationship.

Plaintiff claims that the subject faxes run afoul of the TCPA.  The TCPA makes it "unlawful for any person ... to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless," among other things, it satisfies all of the following conditions: (i) there is an "established business relationship" between the sender and the recipient, (ii) the information was obtained from a public source or provided directly by the recipient, and (iii) the advertisement contains certain required  disclosures to a telephone facsimile machine." 47 U.S.C.  §  227(b)(1)(C).  Plaintiff alleges that  the subject faxes did not satisfy any of Section 227(b)(1)(C)'s requirements.  It appears undisputed that the subject faxes did not satisfy either (i) or (ii).  Because the subject faxes did not satisfy either (i) or (ii),

however, this Court need not address whether the faxes contained the required disclosures mentioned in (iii).

The TCPA creates a private right of action under which a party can bring "an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." *Id*. § 227(b)(3)(B). If the court determines "the defendant willfully or knowingly violated" the TCPA, the court may award treble damages. 47 U.S.C. § 227(b)(3).

On July 12, 2016, plaintiff initiated this action under the TCPA on behalf of itself and a purported nationwide class. Plaintiff alleges it was annoyed and disturbed by receiving the fax from Innate, that it lost employee time in reviewing and disposing of the junk fax, and that it wasted the use of its fax machine and ink and paper used to print the junk fax. The total number of Innate fax recipients is 10,031 according to plaintiff.

This Court granted plaintiff's motion to certify a class using the following definition:

> All persons who received a facsimile transmission sent by ProFax, Inc., on behalf of Innate Intelligence LLC or its chiropractic clinics between January 27, 2016 and July 13, 2016, as confirmed by either:
>
> (1) presence on a facsimile transmission log produced by Innate Intelligence LLC in this case showing one or more transmissions "sent" and complete"; or
>
> (2) presence on a list of those who opted out from receiving future faxes from Innate Intelligence LLC, produced by ProFax, Inc. in this case.

The plaintiff has filed motions for summary judgment against the three remaining defendants in the case. Only ProFax has responded in opposition. ProFax also moved for summary judgment and to decertify the class.

## II.     Motions for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

Here, plaintiff has moved for summary judgment against the remaining defendants Innate, Nepute, and ProFax.  ProFax also moved for summary judgment.  Each defendant is discussed in turn.

4

### A.    ProFax

Plaintiff brings its Count VIII against ProFax for violation of the TCPA in that it failed to include proper opt-out notices on unsolicited advertisements.  Fax broadcasters such as ProFax are liable under the TCPA for sending junk faxes, including the inclusion of opt-out notices on unsolicited advertisements, if they demonstrate "a high degree of involvement in or actual notice of the unlawful activity" and the fax broadcaster "fails to take steps to prevent such facsimile transmissions." 47 C.F.R. § 64.1200.

Here, it is undisputed that ProFax was the broadcaster of the subject faxes.  ProFax disputes two other aspects of plaintiff's claim:  that the faxes were advertisements and that ProFax had a high degree of involvement in the unlawful activity.

### 1.    Advertisements

Not all faxes are prohibited by the TCPA.  To be liable, the fax broadcaster must have sent an "unsolicited advertisement."  According to the TCPA, the term "unsolicited advertisement" means "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise."  47 U.S.C.A. § 227(a)(5). The Eighth Circuit does not provide much guidance in this regard.  Looking to the oft-cited *Sandusky* case, the Sixth Circuit relied on the statutory definition and concluded, "to be an ad, the fax must promote goods or services to be bought or sold, and it should have profit as an aim."  *Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, 788 F.3d 218, 221–22 (6th Cir. 2015).  *Sandusky* thus held that a list of medications covered by health insurance faxed by a pharmacy benefit manager to a chiropractic clinic was not an "advertisement."  The court so-held because the faxes "list the drugs in a purely

5

informational, non-pecuniary sense: to inform Sandusky what drugs its patients might prefer, based on Medco's formulary—a paid service already rendered not to Sandusky but to Medco's clients." *Id.* at 222.

*Sandusky* recognized, however, that "a fax need not be an explicit sale offer to be an ad. It's possible for an ad to promote a product or service that's for sale without being so overt, as in the free-seminar example.  The best ads sometimes do just that." *Id.* at 225 (internal citations to *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, 71 Fed. Reg. 25967, 25973 (May 3, 2006) (the "2006 FCC Order") and *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 688 (7th Cir. 2013) omitted).

The subject faxes here carried the header "Stressed employees cost your business. Want to know how much $?"  Then the fax provided two options:  the recipient could choose to "get the answer" by downloading a "cost of stress article" or "schedule a FREE Lunch N' Learn on Stress Management for your employees."  The fax identified the sender "Innate Wellness Centers" as a "group of wellness consultants and clinicians dedicated to improving the health of a business one employee at a time.  Our offices around the country offer the highest quality, proactive wellness education and care on the planet, both on-site and in our offices."  The fax stated that a "FREE Lunch N' Learn" would be provided only one time.

ProFax insists that the fax should be viewed like that in *Robert W. Mauthe, M.D., P.C. v. Millennium Health LLC*, No. CV 18-1903, 2020 WL 2793954, at *20 (E.D. Pa. May 29, 2020), in which the court found that an invitation to a free seminar lacked the commercial element necessary to render it an advertisement.  The court's determination was not, however, a blanket statement pertaining to faxes and free seminars.  Rather, the

6

court discussed the appropriate Third Circuit test it should use and ultimately found dispositive that the fax did not discuss the availability of the defendant's drug testing services. Instead, the fax was nothing more than an invitation to a free educational seminar. The court held that the fax was "not an advertisement on its face" and discussed whether it needed to apply a "pretext analysis."

The parties devote very little briefing to the matter of any "pretext analysis," likely because to do so implicates weighing "the effect (if any) of the Federal Communication Commission's interpretation on this case." *Sandusky*, 788 F.3d at 225. The TCPA charges the FCC with implementing the Act and gives it "the authority to promulgate binding legal rules." *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs*., 545 U.S. 967, 980-81 (2005). The FCC's rules include, for example, the definition of "advertisement" at 47 C.F.R. § 64.1200(f)(1). The FCC's 2006 Order expounded on that definition, noting that

> The Commission concludes that <u>facsimile messages that promote goods or services even at no cost, such as</u> free magazine subscriptions, catalogs, or <u>free consultations or seminars, are unsolicited advertisements</u> under the TCPA's definition. In many instances, "free" seminars serve as a pretext to advertise commercial products and services.

2006 FCC Order, 71 Fed. Reg. at 25973 (emphasis added). The Sixth Circuit observed that there "is a circuit split on whether to defer to the Commission's explanation of its definition." 788 F.3d at 223 (citing, *e.g.*, *N.B. Indus., Inc. v. Wells Fargo & Co*., 465 Fed.Appx. 640, 642 (9th Cir. 2012), and *Turza*, 728 F.3d at 687-88). But the *Sandusky* court concluded that because its "'construction follows from the unambiguous terms of the statute,'" the court need "not defer to the agency's interpretation." *Id.* (quoting *Brand X*, 545 U.S. at 982). On the other hand, the court also recognized that the 2006

FCC Order would only "bolster" its conclusion because the Order states that faxes "that contain only information, such as industry news articles, legislative updates, or employee benefit information" are not advertisements.  *Id.* (quoting 71 Fed. Reg. at 25973).

Whether lower courts must adopt the "pretext theory" has not been conclusively established.  *See, e.g.*, *PDR Network, LLC. v. Carlton & Harris Chiropractic, Inc.* ("*PDR Network I*"), 139 S. Ct. 2051 (2019); *Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC* ("*PDR Network II*"), 982 F.3d 258 (4th Cir. 2020). Ultimately, the Fourth Circuit advised that courts must decide whether to afford the 2006 FCC Order "*Skidmore* deference" under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).  *PDR Network II*, 982 F.3d at 264.

However, this Court "need reach the deference question only if … the statutory language is ambiguous."  *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 295 (3d Cir. 2012).  The *Sandusky* court, for example, ultimately determined that the statutory definition of "advertisement" "any material advertising the commercial availability or quality of any property, goods, or services…" was not ambiguous and thus no deference was needed.  788 F.3d at 225.

This Court finds that the subject faxes here are "commercial in nature" based on the plain language of the statute.  *See Sandusky*, 788 F.3d at 224.  The fax offers a free lunch seminar, but it also makes clear that it was sent by a "group of wellness consultants and clinicians dedicated to improving the health of a business one employee at a time." These "wellness consultants and clinicians" have "offices around the country," and they "offer the highest quality, proactive wellness education and care on the planet, both on-site and in our offices."  That information alone—notwithstanding the "free lunch" aspect of the fax—suffices to render the fax an advertisement.  It clearly promotes the services

8

provided by Innate Wellness Centers, which are in the business of wellness care and education.  Thus, the subject faxes are advertisements within the definition of 47 U.S.C. § 227(a)(5).

### 2.    High degree of involvement

A facsimile broadcaster such as ProFax is liable under the relevant TCPA provision "if it demonstrates a high degree of involvement in, or actual notice of, the unlawful activity and fails to take steps to prevent such facsimile transmissions."  47 C.F.R. § 64.12(a)(4)(v).  ProFax disputes that the evidence shows it had a high degree of involvement.

Caselaw offers little guidance regarding what constitutes a high degree of involvement on the part of a fax broadcaster.   This Court was able to find no applicable Eighth Circuit law.  Further, there is no statute or regulation that defines "high degree of involvement."  However,

> the FCC has issued orders and rules finding that a fax broadcaster demonstrates a high degree of involvement in the transmission of fax advertisements when it 1) supplies the fax numbers used to transmit the advertisement or a source of fax numbers; 2) makes representations about the legality of faxing to those numbers; 3) advises a client about how to comply with the fax advertising rules; or 4) reviews, assesses, or determines the content of a fax message.

*Paldo Sign & Display Co. v. Unified Mktg., LLC*, 13 C 1896, 2017 WL 951313, at *7 (N.D. Ill. Mar. 10, 2017) (citing *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 (Report and Order and Third Order on Reconsideration)*, 21 FCC Rcd. 3787, 3808 (Apr. 6, 2006); *Rules and Regulations Implementing the Tel. Consumer Prot. Act (TCPA) of 1991*, 68 Fed. Reg. 44144, 44169 (July 25, 2003)).[2]

---

[2] Neither the parties nor any court decisions apparently discuss the level of deference due these FCC Orders, unlike the ample discussion surrounding the 2006 FCC Order at issue in the "is it an advertisement?" query.

District courts also have stated that a "'high degree of involvement' exists where the broadcaster (1) controls the recipient lists; and/or (2) controls the content of the transmissions." *Id.* (citing *Rinky Dink, Inc. v. Elec. Merch. Sys.*, No. C13-1347-JCC, 2015 WL 778065, at *7 (W.D. Wash. Feb. 24, 2015); *Selou v. Integrity Sol. Servs. Inc.*, Civil Case No. 15-10927, 2016 WL 612756, at *5, n.6 (E.D. Mich. Feb. 16, 2016)).  One district court held that a fax broadcaster had met its burden of demonstrating it lacked a high degree of involvement, for example, where it showed it was merely acting as a "conduit for fax broadcasting."  *Id.* at *10.  In that case, the broadcaster did not offer advice regarding the legality of the faxes, did not make changes to or create content for the faxes, and supplied neither the fax numbers nor a source of those numbers.  *Id.* at *8-10.

Here, Innate's representative stated that he trusted ProFax to provide the legally-required opt-out language. There is no dispute that ProFax provided not just the opt-out provision's details, but also provided the entire opt-out mechanism for the subject faxes. ProFax managed the list of opt-outs for Innate, including maintaining a website and phone number to receive opt-out requests and assigning a unique PIN to identify those that had submitted opt-out requests in response to the faxes ProFax sent for Innate. ProFax's conduct in setting up the opt-out service, with its tollfree number, website, and PIN, was essential to meet the required disclosures under the statute, and constitutes a high degree of involvement as a matter of law.

### 3.  Constitutional challenge

ProFax argues that the TCPA should be declared unconstitutional because it violates the Fifth and Eighth Amendments to the United States Constitution.  This Court recently rejected a similar challenge:

> In cases across the United States, defendants have challenged the TCPA's damages provision under the due process clause of the Fifth Amendment and as an excessive fine under the Eighth Amendment of the United States Constitution. District courts have rejected Eighth Amendment challenges to the TCPA's damages provision, because the Eighth Amendment applies to civil damages only when the government is prosecuting the case or will receive a share of the damages. The Eighth Amendment pertains to payment to a sovereign, not a private party, as punishment for an offense.

> Numerous courts have also rejected challenges under the due process clause and have held the statutory damages provision in the TCPA, on its face, is constitutional. Courts routinely cite to St. Louis, *I. M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66–67 (1919), for the standard that statutory penalties violate due process "only where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." Courts are hesitant to declare a statutory damages provision unconstitutional, because Congress possesses "a wide latitude of discretion to prescribe penalties for violations of [its] laws, and those penalties, which often serve a deterrent effect, are to be considered with due regard for the interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence." Specifically in relation to the TCPA, the $500 per violation damages provision is meant to address harms that are otherwise unquantifiable such as invasions of privacy, unwanted disruptions, tied-up phone lines, and wasted time spent answering unwanted phone calls.

*Golan v. Veritas Entm't, LLC*, No. 4:14CV00069 ERW, 2017 WL 3923162, at *1 (E.D. Mo. Sept. 7, 2017), *aff'd sub nom. Golan v. FreeEats.com, Inc.*, 930 F.3d 950 (8th Cir. 2019) (internal citations omitted).  Notably, ProFax appears to have abandoned this argument, as it did not take up this issue in its reply brief.  This Court will not entertain it further.

#### 4.    Conversion claim

Defendant ProFax seeks summary judgment on plaintiff's conversion claim. Plaintiff's conversion claim against defendants hinges on the allegation the defendants "permanently" misappropriated the class members' fax machines, toner, paper and employee time to defendants' own use.  Conversion requires proof of three elements:  (1) the plaintiff owned the property or was entitled to possess it, (2) the defendant took possession of the property with the intent to exercise some control over it, and (3) the defendant thereby deprived the plaintiff of the right to possession.  *Massood v. Fedynich*, 530 S.W.3d 49, 57 (Mo. App. 2017).  ProFax argues that no class member actually lost possession or use of its fax machine and that plaintiff's paper, ink, and toner never came into ProFax's possession.  ProFax cites one case, *Rossario's Fine Jewelry, Inc. v. Paddock Publ'ns*, 443 F. Supp.2d 976 (N.D. Ill. 2006), in support.  That court held that sending an unauthorized fax does not constitute conversion because the recipient's paper, ink, and toner never came into the defendant's possession.  *Id.*  That decisions and others like it are based in part, too, on "the maxim de minimis non curat lex, or 'the law does not concern itself with trifles.'" *Brodsky v. HumanaDental Ins. Co*., 10-C-3233, 2011 WL 529302, at *7 (N.D. Ill. Feb. 8, 2011). Other Illinois courts have disagreed.  *See Centerline Equipment Corp. v. Banner Personnel Service, Inc*., 545 F.Supp.2d 768, 782 (N.D.Ill. 2008).  Plaintiff points out that, in the aggregate, the plaintiff class's losses involve the waste of over 10,000 sheets of paper—comprising 100 to 120 pounds of paper.  *See id*. (noting that "a class claim could be more substantial, and class treatment is regularly afforded in cases where no individual plaintiff has suffered any great loss").

Neither party cites Missouri law.  This Court has before observed, in the context of TCPA and conversion claims,

> Under Missouri law, where a conversion is established plaintiff is entitled to her actual damages, is entitled to nominal damages, and may recover punitive damages if the conversion is malicious. *Jackson v. Engert*, 453 S.W.2d 615, 617 (Mo. Ct. App. 1970). Additionally, even where no actual loss is shown, Defendant may be liable for nominal damages if technical conversion has been shown. *Schulte v. Florian*, 370 S.W.2d 623, 626.

*Radha Geismann, M.D., P.C. v. Byram Healthcare Centers, Inc.*, 4:09CV01980 HEA, 2010 WL 1930060, at *3 (E.D. Mo. May 10, 2010).

Thus, it appears that Missouri law still recognizes plaintiff's claim, even for just nominal damages.

Regardless, the conversion claim has been mostly ignored by plaintiff throughout the course of this lawsuit.  The class definition is not limited to Missouri, and it is not clear what consideration should be given to the fact that multiple states' conversion laws are likely in play.  In addition, it seems possible that neither the individual plaintiff nor the class could not recover for both conversion and TCPA claims, but the claims are not pleaded in the alternative.  Further, as discussed more below, class members who received the subject faxes via email (rather than on an actual fax machine) may not have a conversion claim at all because those class members were not out the use of their paper and toner.   This Court will thus order further briefing on the conversion claim and the matters raised here, should plaintiff even choose to pursue this claim further in light of its success on the TCPA claim.

The summary judgment motion on this count will be held in abeyance pending the additional briefing.

13

### B.    Innate and Nepute

Each of the three remaining defendants has a distinct role:  ProFax was the fax broadcaster, Innate was the fax's developer, sender, and the party for whom the advertisement directed recipients for service, and Nepute was a partner with Innate and one of the hopeful chiropractors who looked to Innate to broker arrangements between businesses and themselves for on-site wellness visits.

Plaintiff moves for summary judgment against Innate and Nepute on its claim that both are liable for the violations of the TCPA regarding the subject faxes.  Plaintiff contends that Innate and Nepute sent the subject fax advertisements which violated the TCPA because of the faxes' improper opt-out notice as discussed above.  Defendants also had no prior relationship with the owners of the fax numbers they purchased, so no exclusion for an existing business relationship exists.  Further, this Court has already concluded that the faxes were advertisements. Plaintiff has also offered uncontroverted evidence that Innate was the "sender" of the fax based on the information on the face of the document.

Plaintiff contends that, despite the absence of Nepute's name on the face of the fax, Nepute is liable for the TCPA violation because of its Partnership Agreement with Innate. Missouri defines a "partnership" as an "association of two or more persons to carry on as co-owners a business for profit. § 358.060 RSMo. Under Missouri law, "partners are liable for everything chargeable to the partnership." *Blanks v. Fluor Corp.*, 450 S.W.3d 308, 402 (Mo. Ct. App. 2014). *See also* § 358.150 RSMo ("[A]ll partners are liable jointly and severally for everything chargeable to the partnership pursuant to sections 358.130 and 358.140, and for all other debts and obligations of the partnership"). If the alleged partners make a definite and specific

14

agreement, that is enough to prove partnership. *Grissum v. Reesman*, 505 S.W.2d 81, 85 (Mo. 1974). The subject faxes clearly relate to the business enterprise to which Nepute and Innate partnered.

Plaintiff has offered evidence to support its claims against Innate and Nepute. Neither Innate nor Nepute responded to the motions for summary judgment. The motions for summary judgment will be granted.

## III.    Motion to Decertify Class

This Court granted plaintiff's motion to certify the class in February 2018.  Now, ProFax has moved to decertify the class. "Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).  "In considering a defendant's motion for decertification, the Court follows the legal standard required for class certification." *E. Maine Baptist Church v. Union Planters Bank, N.A*., 244 F.R.D. 538, 541 (E.D. Mo. 2007).  Rule 23(a) establishes four prerequisites for class certification: (1) the class is so <u>numerous</u> that joinder of all members is impracticable; (2) there are questions of law and fact <u>common</u> to the class; (3) the claims or defenses of the representative parties are <u>typical</u> of the claims or defenses of the class; and (4) the representative parties will fairly and <u>adequately</u> protect the interests of the class. Fed. R. Civ. P. 23(a).  Plaintiff is also required to qualify under one of the subdivisions of Rule 23(b), and, here, plaintiff sought certification under Rule 23(b)(3).  Plaintiff therefore must demonstrate that the "questions of law or fact common to the members of the predominate over any questions affecting only individual members" and that the class action is a "superior method of adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

ProFax argues that ProFax's dire financial circumstances mean that plaintiff cannot satisfy Rule 23(b)(3), requiring that a class action is the superior method of adjudication.  ProFax cites *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 673-74 (D. Wyo. 2011), which held that class action was not superior to the other available methods of adjudication because "Defendants have limited financial ability to pay a recovery" and "there is little chance of recovery by individual class members." This Court found no cases making similar pronouncements, but ProFax argues that its circumstances are the same.  Rather than respond to ProFax's position that class members are better off filing individual claims, plaintiff goes on an ad hominin tangent, attempting to show ProFax's CEO lives a life of luxury and so ProFax must have the ability to pay a judgment.  But ProFax is a distinct entity from its CEO. Regardless, although ProFax argues that plaintiff's case has caused financial ruin for it and the two remaining other defendants, those are the defendants plaintiff is left with.  Should the defendants be unable to satisfy a judgment, then plaintiff will have to face that result. The questions of law and fact common to class members still predominate in this matter, whatever the outcome, and this Court is reluctant to decertify a class based only on the financial position of the defendant.

ProFax's primary argument for decertifying the class hinges on the FCC's recent declaratory ruling, *In the Matter of Amerifactors Fin. Grp., LLC Petition for Expedited Declaratory Ruling Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prot. Act of 2005*, CG 2019 WL 6712128, Docket Nos. 02-278 (Dec. 9, 2019).  The *Amerifactors* decision, authored by the Consumer and Governmental Affairs Bureau, stated:

By this declaratory ruling, we make clear that an online fax service that

16

> effectively receives faxes 'sent as email over the Internet' and is not itself
> 'equipment which has the capacity ... to transcribe text or images (or both)
> from an electronic signal received over a regular telephone line onto paper'
> is not a 'telephone facsimile machine' and thus falls outside the scope of
> the statutory prohibition.

2019 WL 6712128, at *1 ¶ 3 (quoting the 2003 FCC Order and § 227(a)(3)).  ProFax thus

argues that the 10,000-member class would require 10,000 mini-trials to determine

whether the fax they received was received over the Internet by email as opposed to on a

physical fax machine.  This, ProFax says, is not appropriate for a class action.

The *Amerifactors* decision was issued by the Consumer & Governmental Affairs

Bureau and does not appear to constitute a "final order" of the FCC under the Hobbs Act,

28 U.S.C. § 2342(1).  *See Mussat v. IQVIA Inc*., 17 C 8841, 2020 WL 5994468, at *3

(N.D. Ill. Oct. 9, 2020); *but see Advanced Rehab & Med., P.C. v. Amedisys Holding,*

*LLC*, 117CV01149JDBJAY, 2020 WL 4937790, at *3 (W.D. Tenn. Aug. 24, 2020)

(finding that, although not a final FCC order, the *Amerifactors* decision was entitled to

Chevron deference and modified the class definition accordingly), and *True Health*

*Chiropractic Inc. v. McKesson Corp*., 13-CV-02219-HSG, 2020 WL 7664484, at *7

(N.D. Cal. Dec. 24, 2020) (holding that under Ninth Circuit precedent, "*Amerifactors* is a

final, binding order for purposes of the Hobbs Act").   Regardless, the Sixth Circuit in

*Lyngaas v. Ag*, 992 F.3d 412, 427 (6th Cir. 2021), recently held that the *Amerifactors*

decision was not retroactive.

The *Amerifactors* decision does not require reconsideration of this Court's

certification decision.  However, independent of *Amerifactors* and although no party

raised this issue when class certification was first raised, the Court is mindful that the

TCPA makes it "unlawful for any person ... to use any telephone facsimile machine,

computer, or  other device to send, <u>to a telephone facsimile machine</u>, an unsolicited

advertisement….” 47  U.S.C.  §  227(b)(1)(C) (emphasis added).  As indicated above in

the discussion of plaintiff’s conversion claim, some of the 10,000-plus  members of the

class likely received the subject faxes via email and not on “a telephone facsimile

machine.”  Accordingly, the parties are ordered to submit additional briefing on this issue

that may include possibility of narrowing the class to include only phone numbers that

received the subject faxes on a standalone telephone facsimile machine.


Accordingly,

**IT IS HEREBY ORDERED** that the trial setting of May 17, 2021 is VACATED.

**IT IS FURTHER ORDERED** that plaintiff’s motions for summary judgment

against ProFax, Inc., Innate Intelligence LLC, and Nepute Enterprises LLC [#199, #209,

#204] are GRANTED.

**IT IS FURTHER ORDERED** that ProFax, Inc.’s motion for summary judgment

and to decertify class [#214] is DENIED in part and HELD IN ABEYANCE.

**IT IS FINALLY ORDERED** that the parties shall submit further briefing on the

matters regarding plaintiff’s conversion claim and class certification as described herein

by June 11, 2021.

Dated this  11th  day of May, 2021.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE