# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# (EASTERN DIVISION)

|  |  |
|---|---|
| **LEVINE HAT CO.**, on behalf of itself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>**INNATE INTELLIGENCE, LLC** et al.,<br><br>Defendants. | Case No. 4:16-cv-01132-SNLJ |

## PLAINTIFF'S MEMORANDUM PURSUANT TO THE COURT'S ORDER DATED MAY 11, 2021 (ECF Doc. 265)[1]

---

[1] Defendant ProFax filed a Notice of Bankruptcy with this Court on June 8, 2021. (ECF Doc. 266). Plaintiff acknowledges the stay under 11 U.S.C. §362. However, Plaintiff notes that the bankruptcy stay only applies to "the debtor" – Defendant ProFax. There are two co-defendants in this case, Innate Intelligence and Nepute Enterprises, who are not co-debtors, and therefore to whom the stay is not applicable. Plaintiff therefore files this brief, pursuant to the Court's May 11 Memorandum and Order. (ECF Doc. 265).

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

I.    INTRODUCTION ............................................................................................................. 1

II.   HISTORY AND PURPOSE OF THE TCPA ....................................................................... 1

III.  CERTIFICATION ............................................................................................................ 2

   A.   Burden for Decertification ............................................................................. 2

   B.   None of the Subject Faxes Were Sent as Email; Therefore, the TCPA Applies to all of the Subject Faxes. .................................................................... 3

   C.   The Defendants' Recipient Lists and Transmission Logs Show all the Subject Faxes were sent to Fax Numbers. ............................................... 6

   D.   *In re Amerifactors* does not Apply Retroactively ............................................. 8

   E.   Class Opt-Out Notice ...................................................................................... 12

IV.   CONVERSION CLAIM .................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988) .................................... 9

*City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 441–42 (3d Cir. 2017) ................................................................................................. 15

*Day v. Celadon Trucking Services, Inc.*, 827 F.3d 817, 831 (8th Cir. 2016) ..... 3

*Fray v. Omaha World Herald Co.*, 960 F.2d 1370, 1378 (8th Cir. 1992) ........ 10

*Good Samaritan Hosp. v. Sullivan*, 952 F.2d 1017, 1025 (8th Cir. 1991), *aff'd sub nom. Good Samaritan Hosp. v. Shalala*, 508 U.S. 402 (1993) ................ 9

*Hicks v. Brown Grp., Inc.*, 982 F.2d 295, 298 (8th Cir. 1992) ......................... 10

*In re Dial Complete Mktg. & Sales Pracs. Litig.*, 312 F.R.D. 36, 52 (D.N.H. 2015) .............................................................................................................. 14

*Lyngaas v. Ag*, 992 F.3d 412, 427 (6th Cir. 2021) ........................................... 11

*Lyngaas v. Curaden AG*, 436 F. Supp. 3d 1019, 1023–24 (E.D. Mich. 2020), *aff'd sub nom. Lyngaas v. Ag*, 992 F.3d 412 (6th Cir. 2021) ....................... 14

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812–13 (1985) ..................... 14

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 998 (8th Cir. 2016) .............................................................................................................. 15

**Statutes**

47 U.S.C. §227 ............................................................................................ 1, 4, 15

**Other Authorities**

3 Newberg on Class Actions § 9:48. *Disfavored approaches to exclusion—Opt-in class actions prohibited*, (5th ed.) .......................................................... 13

*Existence of identifiable class—Class must be definable by reference to objective criteria*, 1 McLaughlin on Class Actions § 4:2 (17th ed.) .............. 14

H.R. REP. 102-317, 2 ................................................................................. 1

*In re Amerifactors Fin. Group, LLC Pet. for Expedited Declaratory Ruling*, CG Docket Nos. 02-278, 05-338, Declaratory Ruling, 2019 WL 6712128 (CGAB Dec. 9, 2019) ...................................................................................... 8

*In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014 (2003) ....................................................................... 4, 5

*In the Matter of Westfax, Inc. Petition for Consideration & Clarification*, 30 F.C.C. Rcd. 8620 (2015) ......................................................................... 5, 6

**Rules**

Fed. R. Civ. P. 23 advisory committee's note (1966) ....................................... 13

## I.     INTRODUCTION

On May 11, 2021, this Court entered an Order granting Plaintiff's Motions for Summary Judgment against Defendants ProFax, Inc., ("ProFax") Innate Intelligence LLC, ("Innate") and Nepute Enterprises, LLC ("Nepute") (ECF Doc. 265). The Court directed the parties to submit further briefing on Plaintiff's Conversion claims against all Defendants (Count X), as well as briefing regarding the narrowing of the class to include only phone numbers that received the subject faxes on a telephone facsimile machine.

## II.    HISTORY AND PURPOSE OF THE TCPA

The Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 ("TCPA") was passed by Congress in 1991 with the intent of restricting "intrusive, nuisance" telemarketing via phone calls and fax machines. H.R. REP. 102-317, 2. Unrestricted telemarketing constituted an "intrusive invasion of privacy". *Id.* In the mid-1980's, fax machines presented a unique, new opportunity for advertisers. *Id.* at 10. Fax advertisers took advantage of the design of fax machines to send unsolicited fax advertisements, knowing they would be received and printed by the recipients' fax machines. *Id.* Congress found this type of telemarketing problematic for two reasons: "[f]irst, it shifts some of the costs of advertising from the sender to the recipient. Second, it occupies the recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax."

1

*Id.* Thus, the TCPA and its restrictions were born.

Over the last thirty years, the technology of business communication has changed and been modernized, but the principles that informed the TCPA's enactment still apply. Companies and individuals have the right to be free from "intrusive invasions of privacy" via their communication mediums. However, businesses continue to be harassed by unscrupulous advertisers who flaunt restrictions. Cases, like the instant one, seek to curtail these offenders, and provide a remedy for those who have had their printers and inboxes filled with unwanted advertising.

### III.   CERTIFICATION

**A. Burden for Decertification**

On February 2, 2018, this Court granted Plaintiff's Motion for Class Certification and certified a class comprised of 10,031 members who all verifiably received one of the Subject Faxes sent by Innate and broadcast by ProFax. (ECF Doc. 120). ProFax subsequently moved this Court to decertify the class. (ECF Doc. 214). As ProFax now comes before this Court as the proponent of decertification, it bears the burden of showing that certain class members should be excluded from the already certified class. It cannot do this, and therefore the class should remain as previously certified by this Court.

The Eighth Circuit addressed which party bears the burden on a motion to decertify a class in *Day v. Celadon Trucking Services, Inc.* In *Day*, the

defendant moved the court to decertify a class years after certification, and after partial summary judgment was granted in favor of the class. *Day v. Celadon Trucking Services, Inc.*, 827 F.3d 817, 831 (8th Cir. 2016). The district court judge held that the defendant "has the burden to show that specific class members, identified by [defendant], should be excluded from the class." *Id*. The defendant's motion was denied when the district court judge ruled that the defendant did not meet this burden. *Id*. The Eighth Circuit affirmed, finding that the district court did not abuse its discretion in placing such a burden on the defendant. *Id*. at 831-32.  The Court of Appeals held that a "defendant bears a more onerous burden in challenging certification" where "the initial certification decision was carefully considered". *Id*. at 832.

Accordingly, ProFax, as the proponent of decertification, bears the burden of showing that some portion of the class are not covered by the reach of the TCPA. As the Eighth Circuit has stated in *Day*, it is not Plaintiff's burden here to "re-prove" their class, rather it is now incumbent upon ProFax, as the movant, to prove that the broadcast of the Subject Faxes falls outside the scope of TCPA prohibitions. ProFax cannot meet this burden, and therefore the class of 10,031, as certified, should remain unaltered.

### B. None of the Subject Faxes Were Sent as Email; Therefore, the TCPA Applies to all of the Subject Faxes.

The TCPA makes it unlawful for any person to use a fax machine,

3

computer, or any other device, to send an unsolicited advertisement to a telephone facsimile machine. 47 U.S.C. §227. The TCPA defines "telephone facsimile machine" as "equipment which has the **capacity** ... to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." 47 U.S.C. §227(a)(3) (emphasis added).

In 2003, the FCC sought to clarify what types of developing technology fit the definition of "telephone facsimile machine". The FCC concluded that "telephone facsimile machine" "broadly applies to any equipment that has the capacity to send or receive text or images." *In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14133 (2003) ("the 2003 Ruling"). This included more devices than just the stereotypical standalone fax machine:

> We conclude that faxes sent to **personal computers equipped with, or attached to, modems and to computerized fax servers are subject to the TCPA's prohibition on unsolicited faxes**. ... The record confirms that a conventional stand-alone telephone facsimile machine is just one device used for this purpose; that developing technologies permit one to send and receive facsimile messages in a myriad of ways. Today, a modem attached to a personal computer allows one to transmit and receive electronic documents as faxes. "Fax servers" enable multiple desktops to send and receive faxes from the same or shared telephony lines.

*Id*. (emphasis added). This was consistent with the intent of Congress:

> Congress could not have intended to allow easy circumvention of its prohibition when faxes are (intentionally or not) transmitted to personal computers and fax servers, rather than to traditional

4

stand-alone facsimile machines.

*Id*. Under the 2003 Ruling, individuals who received one of the Subject Faxes on their computer in 2016 would still be members of the class. Likewise, anyone who received one of the Subject Faxes on a standalone fax machine or an all-in-one scanner/printer/copier/fax machine would be a member of the class. Any device with the "capacity to send or receive text or images" is subject to the TCPA's prohibitions.

The 2003 Ruling made but a single exclusion: "we clarify that the prohibition does not extend to facsimile messages ***sent*** as email over the internet." *Id*. (emphasis added). The key word in that exclusion applicable here is "sent"; it does not read "received". For the reasons discussed below, we know that none of the Subject Faxes at issue here were "sent as email over the internet", and thus the already-defined class does not require modification.

This exclusion was elaborated upon by the FCC's Consumer and Governmental Affairs Bureau ("the Bureau") in 2015. In 2009, Westfax, Inc. filed a Petition with the FCC "seeking clarification of the TCPA ... as it applies to the transmission of efaxes"; specifically, it asked "whether an efax is a fax, an email, or both" and "whether the restrictions on unsolicited fax advertisements apply to efaxes, and, if so, to what extent." *In the Matter of Westfax, Inc. Petition for Consideration & Clarification*, 30 F.C.C. Rcd. 8620, 8621 (2015) ("Westfax Ruling"). Westfax specifically focused on the "sent as

5

email over the internet" language from the 2003 Ruling questioning whether the conversion of a fax to email after it is sent removes it from the TCPA's reach. *Id*. at 8623. The Bureau held it did not:

> The TCPA applies to a fax that is sent as a fax over a telephone line to a device that meets the statutory definition of "telephone facsimile machine," which, as discussed above, is the case here. There is an end-to-end communication that starts when the faxed document is sent over a telephone line and ends when the converted document is received on a computer. Just so, citing the statute in the 2003 TCPA Order, the Commission stated that, "the TCPA makes it unlawful for any person to use any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine," including sending an unsolicited advertisement to a computer attached to a fax server or modem. Efaxes are sent as a fax over a telephone line to a telephone facsimile machine and are thus subject to TCPA and the Commission's rules. <u>By contrast, a fax sent as an email over the Internet — e.g., a fax attached to an email message or a fax whose content has been pasted into an email message — is not subject to the TCPA.</u>

*Id*. at 8623-24 (emphasis added). As detailed below, **all** of the Subject Faxes were broadcast to fax numbers[2]; **none of the Subject Faxes were "attached to an email address" or "pasted into an email message"** as discussed in the Westfax Ruling above. Thus, all the Subject Faxes implicated in this case violate the TCPA, regardless of what equipment they were received on.

### C. The Defendants' Recipient Lists and Transmission Logs Show all the Subject Faxes were sent to Fax Numbers.

During the discovery phase of this case, Innate produced transmission

---

[2] See attached Exhibits A and B, and Section C herein.

logs and recipient lists which contained the fax numbers for all broadcasts of the Subject Faxes which took place between January and July 2016. The fax recipient lists[3] that Innate purchased contained fax numbers, telephone numbers, names, company information, and company addresses. These recipient lists were provided to ProFax as the list of numbers to which ProFax broadcast the Subject Faxes. ProFax then provided to Innate transmission logs[4] which reflect each fax broadcast. The logs show the number to which the faxes were broadcast, the date of the broadcast, the duration of the broadcast, and whether the fax broadcast was successful. There are no email addresses provided for any of the recipients.

While it is impossible to tell what type of device received the Subject Faxes, that distinction is unnecessary based on the 2003 Ruling and the Westfax Ruling. As detailed above, the only fax broadcasts to which the TCPA does not apply are those <u>sent as email over the internet</u>. As the recipient lists and transmission logs reflect, none of the Subject Faxes were transmitted to email addresses; <u>all were sent to ten-digit fax numbers</u>. To wit, the named Plaintiff in this case testified that he received one of the Subject Faxes on a standalone fax machine, not via email. Thus, the evidence in this case is

---

[3] A sample page of the recipient list is attached hereto as Exhibit A. Personal information for the recipients (fax number, telephone number, name, company name, and address) have been redacted.
[4] A sample page of one of the transmission logs is attached hereto as Exhibit B. Personal information for the recipients (fax number, name, company, and address) have been redacted.

unassailable that all of the Subject Faxes were broadcast to fax numbers, not email addresses, and the device upon which the faxes were received plays no part in the analysis.

### D. *In re Amerifactors* does not Apply Retroactively

By introducing the *In re Amerifactors* decision into the discussion of certification, ProFax has attempted to insert uncertainty into the size of the class because of how the ruling purports to place a previously non-existent limitation on what constitutes a "telephone facsimile machine". *See In re Amerifactors Fin. Group, LLC Pet. for Expedited Declaratory Ruling*, CG Docket Nos. 02-278, 05-338, Declaratory Ruling, 2019 WL 6712128 (CGAB Dec. 9, 2019) ("*Amerifactors* Ruling"). In sum, the *Amerifactors* Ruling held that faxes sent to "online fax services" are "effectively an email". *Id.* at *3. Therefore, an unsolicited fax advertisement sent to such an online fax service is not prohibited by the TCPA. *Id.* ProFax has used this as grounds to suggest decertification in stating that there is no way to determine whether any of the 10,031 class members received their respective Subject Fax via one of these online fax services. Analyzing this is unnecessary, because it is not in accord with the law to retroactively apply the *Amerifactors* Ruling to this case.

The *Amerifactors* Ruling should not apply in this case because it would be retroactive rulemaking which is forbidden under U.S. Supreme Court precedent, a position which has been widely adopted by the Eighth Circuit. The

8

operative complaint in this case, Plaintiff's First Amended Class Action Complaint was filed in January 2017 (ECF Doc. 27). The class was certified on February 2018 (ECF Doc. 120). The *Amerifactors* Ruling was issued December 2019. Therefore, application of the ruling in *Amerifactors* to the notion of class certification is retroactive and is thusly prohibited.

The U.S. Supreme Court addressed retroactivity in *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988). There, the Supreme Court expressed a disfavor of retroactivity.[5] The Eighth Circuit has adopted the *Georgetown* principles regarding retroactivity and has likewise refused to retroactively apply administrative orders to cases. In *Good Samaritan Hosp. v. Sullivan*, an appellant challenged the Secretary of Health and Human Service's reclassification of a hospital. *Good Samaritan Hosp. v. Sullivan*, 952 F.2d 1017, 1025 (8th Cir. 1991), *aff'd sub nom. Good Samaritan Hosp. v. Shalala*, 508 U.S. 402 (1993). The reclassification would have been based on years old census data. *Id.* The Eighth Circuit affirmed the district court's finding that the reclassification constituted a prohibited retroactive modification, and "would amount to retroactive rulemaking which is forbidden under *Georgetown*." *Id.*

---

[5] Plaintiff's Response in Opposition to Defendant ProFax's Motion to Decertify the Class and Motion for Summary Judgment, pp. 16-17 (ECF Doc. 222) talks at length about the Supreme Court's analysis in *Bowen v. Georgetown Univ. Hosp.* For the sake of brevity, Plaintiff will not restate here arguments the Court has already considered and addressed.

9

Likewise, in *Fray v. Omaha World Herald Co.*, the Eighth Circuit held that provisions of 28 U.S.C. §1981, and related interpretation by the EEOC, could not be applied to "pending cases or pre-enactment conduct". *Fray v. Omaha World Herald Co.*, 960 F.2d 1370, 1378 (8th Cir. 1992). The Court held the *Georgetown* principle of presumptive non-retroactivity was the "better rule" when a change in guidance occurs after suit is filed. *Id.*

In *Hicks v. Brown Group, Inc.*, the Eighth Circuit again addressed the conflicting provisions of the Civil Rights Act. *Hicks v. Brown Grp., Inc.*, 982 F.2d 295, 298 (8th Cir. 1992). There, the Court acknowledged the distinction between prospective and retrospective application of the law:

> [T]he presumption against retroactive application best preserves the distinction between courts and legislatures: the former usually act retrospectively, settling disputes between persons, the latter usually act prospectively, setting the general rules for future conduct.

*Id.* at 298 (quoting *Simmons v. Lockhart*, 931 F.2d 1226 (8th Cir. 1991).

As this Court has already acknowledged, only one federal Court of Appeals, the Sixth Circuit, has directly addressed the application of the *Amerifactors* Ruling to a pending TCPA claim. There, the Sixth Circuit held that the ruling could not be retroactively applied to the pending TCPA claims in the case at issue:

> For the sake of completeness on this issue, we note our awareness that the Bureau issued a declaratory ruling in December 2019 that efaxes sent through an "online fax service" are not covered by the

10

> TCPA. *In re Amerifactors Fin. Group, LLC Pet. for Expedited Declaratory Ruling*, CG Docket Nos. 02-278, 05-338, 2019 WL 6712128, *1, *3 ¶¶ 2, 11 (Dec. 19, 2019). But an application for review of the Bureau's ruling is currently pending before the FCC, *see Applicant Career Counseling Services, Inc.'s Application for Review*, CG Docket Nos. 02-278, 05-338 (Jan. 8, 2020), the *Amerifactors* ruling is not mentioned by either party, **and the ruling in any event would have no bearing on the case before us because the operative facts here took place more than three years earlier**, *see Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) ("Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."); *see also Maple Drive Farms Ltd. P'ship v. Vilsack*, 781 F.3d 837, 857 (6th Cir. 2015) (holding that because, "[g]enerally, [r]etroactive application of policy is disfavored," the federal agency had to apply the version of its guidance that was in effect at the time of the incident in question) (citation and internal quotation marks omitted).

*Lyngaas v. Ag*, 992 F.3d 412, 427 (6th Cir. 2021) (emphasis added). Given how the Eighth Circuit has similarly ruled on retroactively and incorporated *Georgetown*, it is reasonable to presume that the Eighth Circuit would rule similarly to the Sixth Circuit if presented with the same question regarding the *Amerifactors* Ruling and its application to pendent litigation.

In the instant case, there is no question that the acts which violated the TCPA occurred prior to the *Amerifactors* Ruling. The case was filed more than two years prior to the *Amerifactors* Ruling. The class was certified more than a year prior to the *Amerifactors* Ruling. Since retroactivity in the law is disfavored, the *Amerifactors* Ruling should not be applied to this case and the

11

class should remain certified as-is.

### E. Class Opt-Out Notice

Should this Court ultimately decide that *Amerifactors* should apply retroactively and there is a need to differentiate between those who received one of the Subject Faxes on a telephone facsimile machine covered by the TCPA versus an online fax service, Plaintiff proposes in the alternative an opt-out mechanism to narrow the class. Since the class has already been certified, this Court should start with the proposition that 10,031 class members exist, and then allow the members to exclude themselves by voluntary response to a class notice. This procedure is consistent with the requirements of Rule 23.

The simplest way to achieve the opt-out procedure is by sending notice to the class members inviting them to make a declaration by affidavit which would either include them in the class or exclude them. Plaintiff proposes that such a declaration would provide the recipient with three options: A) the recipient utilized an online fax service to receive fax transmissions between January and July 2016; B) the recipient did not utilize an online fax service to receive fax transmissions between January and July 2016; or C) the recipient cannot recall whether they utilized an online fax service to receive fax transmissions between January and July 2016. If the recipient of the notice responds with either answer B or C, then they remain in the class. If the recipient responds with answer A, then they are excluded from the class. If the

12

recipient does not respond to the notice at all, then they remain in the class due to the prior grant of class certification.

The concept of an opt-out class is consistent with Rule 23. "Put simply, Rule 23 is an opt-out, not an opt-in, mechanism." 3 Newberg on Class Actions § 9:48. *Disfavored approaches to exclusion—Opt-in class actions prohibited*, (5th ed.). *See* Fed. R. Civ. P. 23 advisory committee's note (1966) ("Thus the court is required to direct notice to the members of the class of the right of each member to be excluded from the class upon his request. A member who does not request exclusion may, if he wishes, enter an appearance in the action through his counsel; whether or not he does so, the judgment in the action will embrace him.") (emphasis added). The U.S. Supreme Court has explicitly rejected the notion that class actions should be opt-in rather than opt-out:

> We reject petitioner's contention that the Due Process Clause of the Fourteenth Amendment requires that absent plaintiffs affirmatively "opt in" to the class, rather than be deemed members of the class if they do not "opt out." We think that such a contention is supported by little, if any precedent, and that it ignores the differences between class-action plaintiffs, on the one hand, and defendants in nonclass civil suits on the other. Any plaintiff may consent to jurisdiction. The essential question, then, is how stringent the requirement for a showing of consent will be.
>
> We think that the procedure followed by Kansas, where a fully descriptive notice is sent first-class mail to each class member, with an explanation of the right to "opt out," satisfies due process. Requiring a plaintiff to affirmatively request inclusion would probably impede the prosecution of those class actions involving an aggregation of small individual claims, where a large number of claims are required to make it economical to bring suit. The

13

> plaintiff's claim may be so small, or the plaintiff so unfamiliar with the law, that he would not file suit individually, nor would he affirmatively request inclusion in the class if such a request were required by the Constitution. If, on the other hand, the plaintiff's claim is sufficiently large or important that he wishes to litigate it on his own, he will likely have retained an attorney or have thought about filing suit, and should be fully capable of exercising his right to "opt out."

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812–13 (1985) (internal citations omitted). Thus, should this Court decide that participation on the part of class members be required to define the class, then doing so via an opt-out notice is the only permissible method. Once judgment is entered, Plaintiff would be amenable to revising the language of such an opt-out notice with the consultation of the Court and Defendant.

Because this proposed opt-out notice is so simple, it does not create challenges to the ascertainability to of the class. Self-identification of class members is permissible where it is administratively feasible. *Existence of identifiable class*, 1 McLaughlin on Class Actions § 4:2 (17th ed.). "The use of affidavits as a mechanism for establishing class membership has been approved by many courts." *Lyngaas v. Curaden AG*, 436 F. Supp. 3d 1019, 1023–24 (E.D. Mich. 2020); *See In re Dial Complete Mktg. & Sales Pracs. Litig.*, 312 F.R.D. 36, 52 (D.N.H. 2015) ("Indeed, the leading treatise on class action lawsuits has confirmed that a 'simple statement or affidavit may be sufficient where claims are small or are not amenable to ready verification.'") (quoting

14

Newberg on Class Actions (4th ed.)); *see City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 441–42 (3d Cir. 2017) ("Affidavits, in combination with records or other reliable and administratively feasible means, can meet the ascertainability standard."); *see Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 998 (8th Cir. 2016) ("[F]ax logs showing the numbers that received each fax are objective criteria that make the recipient clearly ascertainable.").

## IV. CONVERSION CLAIM

In light of Plaintiff prevailing on the TCPA claims (Counts I, II, and VIII of Plaintiff's First Amended Class Action Complaint, ECF Doc. 27) against Defendants, Plaintiff's conversion claims have arguably been rendered moot. Any recovery under a theory of conversion for actual damages incurred may be duplicative of, and subsumed by, the amount each class member would receive under the statutory penalty imposed by the TCPA. Further, the TCPA authorizes claimant to pursue private rights of action to recover "actual monetary loss from such a violation, <u>or</u> to receive $500 in damages for each such violation, whichever is greater". 47 U.S.C. § 227(b)(3)(B) (emphasis added). As such, Plaintiff will agree to voluntarily dismiss Count X of the First Amended Complaint, thereby rendering ProFax's Motion for Summary Judgment on that count moot.

15

Respectfully submitted,

KEANE LAW LLC

*/s/ Steven Duke*
Ryan A. Keane, #MO62112
Steven W. Duke #MO68034
7777 Bonhomme Ave, #1600
St. Louis, MO 63105
Phone: (314) 391-4700
Fax: (314) 244-3778
ryan@keanelawllc.com
steve@keanelawllc.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed via the Court's Electronic Filing System this 11th day of June, 2021, which will send a notice of electronic filing to all counsel of record.

*/s/ Steven Duke*